# United States Court of Appeals
# For the Eighth Circuit

MICHAEL J. LINDELL,
MYPILLOW, INC.,

*Plaintiffs-Appellants,*

v.

UNITED STATES OF AMERICA,
MERRICK GARLAND,
in his official capacity as
Attorney General of the United States,
THE UNITED STATES ATTORNEY
FOR THE DISTRICT OF MINNESOTA, and
CHRISTOPHER WRAY,
in his official capacity as
Director of the Federal Bureau
of Investigation,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Minnesota
No. 22-cv-2290

## BRIEF OF PLAINTIFFS-APPELLANTS

PATRICK M. MCSWEENEY
CHRISTOPHER I. KACHOUROFF
LYNDSEY L. BISCH
McSweeney, Cynkar &
Kachouroff, PLLC
13649 Office Place, Suite 101
Woodbridge, Virginia 22192
(804) 937-0895

*Counsel for Plaintiffs-Appellants*

## SUMMARY OF THE CASE

Appellants Michael J. Lindell and MyPillow, Inc. (collectively "Lindell") appeal an order denying his Motion for a Preliminary Injunction and Return of Property. The relief sought is based on asserted violations of the First and Fourth Amendments involving a search and seizure warrant for Lindell's cellphone. The warrant was issued during a federal investigation of the making and publishing of a forensic image of election software used in the 2020 election in Mesa County, Colorado. The local election official arranged for the imaging after receiving a directive from the Colorado Secretary of State to install new software that would delete records of the 2020 election. That directive violated the federal statute mandating the preservation of election records for 22 months. The Government has not prosecuted the Secretary of State for that violation, but instead has launched an investigation of those who participated in preserving that record and making and publishing the forensic image. Lindell challenges the investigation and warrant on the basis that they were actions undertaken in bad faith to punish those involved in making and publishing the forensic image in violation of the First Amendment and that the warrant is a general warrant in violation of the Fourth Amendment.

Lindell requests oral argument based upon the significance of the constitutional issues involved and the complexity of the record. He urges the Court to allow his counsel 20 minutes to present the argument in support of his appeal.

**i**

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and this Circuit's Rule 26.1A, the undersigned counsel for My Pillow, Inc., hereby certifies that My Pillow, Inc is not a subsidiary of any other corporation, and that no publicly held corporation owns 10% or more of its stock.

Appellate Case: 22-3510    Page: 3    Date Filed: 01/26/2023 Entry ID: 5239399

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF THE ISSUES...........................................................1

STATEMENT OF THE CASE........................................................4

SUMMARY OF THE ARGUMENT ........................................6

ARGUMENT ............................................................9

I.   LINDELL IS LIKELY TO SUCCEED ON HIS FIRST AND FOURTH AMENDMENT CLAIMS. ....................................9

    A. The District Court Mischaracterized Lindell's First Amendment Claims and Ignored Most of His Allegations............................10

    B. The District Court Rejected Lindell's First Amendment Claims Based on an Erroneous Legal Conclusion.................................12

    C. The District Court Refused to Consider Lindell's Lewellen Argument...16

    D. Lindell Has Standing to Assert His First Amendment Claim of a Violation of His Association Rights.........................18

    E. The District Court's Decision Rejecting His Fourth Amendment Claim Was Clearly Erroneous.................................19

        1. The Warrant Is a General Warrant.................................19

        2. The Government failed to assure safeguards for the search. .........21

        3. Reliance on a filter team does not satisfy the Fourth Amendment. ...................................23

        4. The heightened standard is not met here where the seizure implicates records protected by the First Amendment. ................24

    F. The First and Fourth Amendments Are Self-Executing. .........................25

    G. The Abstention Doctrine Does Not Apply to Lindell's Claims...............26

Appellate Case: 22-3510     Page: 4     Date Filed: 01/26/2023 Entry ID: 5239399

II.  LINDELL WILL SUFFER IRREPARABLE INJURY UNLESS THE PRELIMINARY INJUNCTION IS GRANTED ..........................................27

III.  THE BALANCE OF INTERESTS TILTS IN FAVOR OF LINDELL. ........28

IV.  LINDELL ESTABLISHED HIS RIGHT TO HAVE THE SEIZED PROPERTY RETURNED.................................................................29

    A.  Callous Disregard of Constitutional Rights Has Been Shown. ...............29

    B.  Lindell Will Experience Irreparable Injury Without Its Return. .............30

    C.  Lindell Has No Adequate Remedy at Law Other Than a Return............30

    D.  Lindell Has an Interest In, and Need For, The Seized Property..............30

CONCLUSION ...............................................................................31

CERTIFICATE OF COMPLIANCE.......................................................32

iv

# TABLE OF AUTHORITIES

**CASES**

*ACLU v. Alvarez,*
    679 F.3d 588 (7th Cir. 2018) ...............................................................10

*Amato v. Elicker,*
    534 F.Supp.3d 196 (D. Conn. 2021)....................................................18

*Americans for Prosperity Found. v. Bonta,*
    141 S. Ct. 2373 (2021)........................................................................27

*Bell v. Hood,*
    327 U.S. 678 (1946)........................................................................4, 25

*Camelot Banquet Rooms, Inc. v. U.S. Small Business Admin.,*
    24 F.4th 640 (7th Cir. 2022) ...........................................................2, 28

*Christian Action League of Minn. v. Freeman,*
    31 F.4th 1068 (8th Cir. 2022) .................................................................3

*City of Boerne v. Flores,*
    521 U.S. 507 (1997)........................................................................4, 25

*Cullen v. Fliegner,*
    18 F.3d 96 (2d Cir. 1994)....................................................................12

*Deaver v. Seymour,*
    822 F.2d 66 (D.C. Cir. 1987) ..............................................................17

*Durham v. Jones,*
    737 F.3d 291 (4th Cir. 2012) ..............................................................16

*Elder v. Burns,*
    427 U.S. 347 (1976)............................................................................27

*Ex parte Young,*
    209 U.S. 123 (1908)............................................................................26

*Fitzgerald v. Peek,*
    636 F.2d 943 (5th Cir.1981) ...............................................................12

Appellate Case: 22-3510    Page: 6    Date Filed: 01/26/2023 Entry ID: 5239399

*Gelco Corp. v. Coniston Partners*,
811 F.2d 414 (8th Cir. 1987) ................................................................................4

*Giovani Carandola, Ltd. v. Bason*,
303 F.3d 507 (4th Cir. 2002) ................................................................................28

*Home Instead, Inc. v. Florance*,
721 F.3d 494 (8th Cir. 2013) ................................................................................9

*In re Grand Jury Proceedings*,
716 F.2d 493 (8th Cir. 1983). .................................................................. 3, 4, 20

*In re Quarles*,
158 U.S. 532 (1895).............................................................................................13

*In re Search of Apple iPhone*,
31 F.Supp.3d 159 (D.D.C. 2014)......................................................... 21, 22, 23

*Keating v. City of Miami*,
598 F.3d 753 (11th Cir. 2010) ............................................................................13

*Lewellen v. Raff*,
843 F.2d 1103 (8th Cir. 1988) ................................................................. passim

*Louisiana v. Becerra*,
577 F.Supp. 3d 483, 494 (W.D.La. 2022) .........................................................29

*Madison v. Marbury*,
5 U.S. (1 Cranch) 137 (1803)..............................................................................25

*Manafort v. U.S. DOJ*,
311 F.Supp.3d 22 (D.D.C. 2018).......................................................................17

*Marcus v. Iowa Pub. Television*,
97 F.3d 1137 (8th Cir. 1996) .................................................................... passim

*NAACP v. Button*,
371 U.S. 415 (1973)............................................................................................12

*Nken v. Holder*,
556 U.S. 416 (2009).........................................................................................2, 28

vi

*Obergefell v. Hodges,*
   576 U.S. 644 (2015)................................................................26

*Pickering v. Bd. of Educ.,*
   391 U.S. 563 (1968)................................................................13

*Planned Parenthood of Minn., N.D., S.D. v. Rounds,*
   530 F.3d 724 (8th Cir. 2008) .................................................10

*Progressive Techs., Inc. v. Chaffin Holdings, Inc.,*
   33 F.3d 481 (8th Cir. 2022) ........................................ 1, 2, 3, 26

*Richey v. Smith,*
   515 F.2d 1239 (5th Cir. 1975) ............................................4, 29

*Richland/Wilkins Joint Powers Auth. v. U.S. Army Corps of Eng'rs,*
   826 F.3d 1030 (8th Cir. 2016) ..................................................9

*Roberts v. U.S. Jaycees,*
   468 U.S. 609 (1984)................................................................19

*Roman Cath. Diocese v. Cuomo,*
   141 S. Ct. 63 (2020)................................................................27

*Ruscavage v. Zuratt,*
   593 F.Supp. 1078 (E.D. Pa. 1993) ..........................................12

*Sibbach v. Wilson & Co., Inc.,*
   312 U.S. 1 (1941)....................................................... 20, 21, 23

*Stamler v. Willis,*
   415 F.2d 1365 (7th Cir.1969) ..................................................26

*Superior Oil Co. v. Transco Energy Co.,*
   616 F.Supp.3d 94 (W.D.La. 1984) ...........................................28

*United States v. Beckman,*
   783 F.3d 672 (2015)................................................................21

*United States v. Cartier,*
   543 F.3d 442 (8th Cir. 2008) .................................................22

Appellate Case: 22-3510     Page: 8     Date Filed: 01/26/2023 Entry ID: 5239399

*United States v. Gleich,*
    397 F.3d 608 (8th Cir. 2006) ...............................................................19

*United States v. Jackson,*
    466 U.S. 109 (1984)........................................................................20

*United States v. Moulder,*
    2022 WL 3644893 (D.Minn. 8/24/2022).......................................3, 20

*United States v. Schesso,*
    730 F.3d 1040 (9th.2013)................................................................22

*Warden v. Hayden,*
    387 U.S. 294 (1967).......................................................................19

*Winter v. NRDC,*
    555 U.S. 7 (2008)..............................................................................9

*Wynn v. Vilsack,*
    545 F.Supp.3d 1271 (M.D. Fla. 2021)...........................................29

*Younger v. Harris,*
    401 U.S. 37 (1971)........................................................................9, 26

## STATUTES

18 U.S.C. §1030 (a) (2) (A) ...................................................................16

28 U.S.C. § 1292 (a) (1).........................................................................1

28 U.S.C. § 1331 ...................................................................................1

28 U.S.C. § 1343 ...............................................................................1, 25

52 U.S.C. § 20701 ........................................................................5, 13, 16

F.R.Crim.P. 41 (e) (2) (B)............................................................8, 20, 21

F.R.Crim.P. 41(a)(2)(B)........................................................................20

The Espionage Act of 1917, Pub. L. No. 65-24, 40 Stat. 217 (1917) ......................14

Appellate Case: 22-3510    Page: 9    Date Filed: 01/26/2023 Entry ID: 5239399

The Sedition Act of 1798, ch. 74, 1 Stat. 596 (1798) .............................................14

The Sedition Act of 1918, Pub. L. No. 65-150, 40 Stat. 553 (1918).......................14

U.S. Const. amend I .............................................................................. 1, 2, 3, 6

U.S. Const. amend IV ...............................................................................4, 6

U.S. Const. amend. V...................................................................................6

## OTHER AUTHORITIES

A. SCHLESINGER, ROBERT KENNEDY AND HIS TIMES 252 (2002) ............................14

C. Wright, A. Miller, & M. Kane, 11A Federal Practice and Procedure § 2948.3 (2014) ..........................................................................................................10

D. J. Hudson, Jr., *Free Speech During Wartime*, THE FIRST AMENDMENT ENCYCLOPEDIA (2009) ..............................................................................13

D. PAGUE, FREEDOM UNDER LINCOLN 29 (1965).....................................................14

J. DEAN, BLIND AMBITION: THE WHITE HOUSE YEARS 386 (1976).........................14

Appellate Case: 22-3510    Page: 10    Date Filed: 01/26/2023 Entry ID: 5239399

## JURISDICTIONAL STATEMENT

The district court exercised jurisdiction over this action to vindicate violations of federal constitutional rights pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction under 28 U.S.C. § 1292 (a) (1) to review the district court's November 3, 2022, Order denying the Motion for Preliminary Injunction and Return of Property. A Notice of Appeal was filed on December 2, 2022.

## STATEMENT OF THE ISSUES

1.     Whether the district court erred in denying Lindell's motion for preliminary injunctive relief when:

(a) Lindell demonstrated the likelihood of success on the merits that the Government violated his First Amendment rights of freedom of speech, freedom of association, freedom of the press, and the right to petition for the redress of grievances by retaliating against him for participating in the making and publishing of the forensic image of the deleted election software through a law enforcement effort to punish him for exercising his First Amendment rights and to deter him and his associates from continuing to do so. U.S. Const. amend I; 52 U.S.C. § 20701; *Progressive Techs., Inc. v. Chaffin Holdings, Inc.,* 33 F.4th 481, 485 (8th Cir. 2022). **Standard of Review:** Regarding preliminary injunction: fact findings reviewed for clear error; legal conclusions *de novo*; ultimate decision reviewed for abuse of discretion.

(b) Lindell established that he has no adequate remedy at law and would suffer irreparable injury if an injunction were not granted. U.S. Const. amend I; 52 U.S.C. § 20701; *Progressive Techs., Inc.,* 33 F.4th at 485; *Marcus v. Iowa Pub. Television*, 97 F.3d 1137, 1140 (8th Cir. 1996) (First Amendment violation constitutes irreparable injury). **Standard of Review:** Abuse of discretion review.

(c) Lindell established that the balance of interests tilted in his favor. U.S. Const. amend I; 52 U.S.C. § 20701; *Nken v. Holder,* 556 U.S. 416, 435 (2009) (when government is a party, third and fourth factors considered together); *Progressive Techs., Inc.,* 33 F.4th at 485; *Lewellen v. Raff,* 843 F.2d 1103,1109 (8th Cir. 1988) (retaliation for exercise of constitutional rights justifies enjoining of criminal proceedings); *Camelot Banquet Rooms, Inc. v. U.S. Small Business Admin.,* 24 F.4th 640, 646 (7th Cir. 2022) (prevention of constitutional violation serves the public interest). **Standard of Review:** Regarding preliminary injunction: fact findings reviewed for clear error; legal conclusions *de novo*; ultimate decision reviewed for abuse of discretion.

2.    Whether the district court erred by declining to exercise its equitable jurisdiction to enjoin the federal criminal investigation of constitutionally protected activity, including the issuance and execution of a search and seizure warrant, because Lindell demonstrated extraordinary circumstances justifying an exception to the abstention doctrine in that the Government's decisions to launch the

**2**

investigation and issue the search and seizure warrant were made in bad faith to retaliate against Lindell for exercising his First Amendment rights and to discourage the exercise of his First Amendment rights in the future. U.S. Const. amend I; *Progressive Techs., Inc.,* 33 F.3d at 485; *Lewellen,* 843 F.2d at 1109.

**Standard of Review:** Regarding preliminary injunction: fact findings reviewed for clear error; legal conclusions *de novo*; ultimate decision reviewed for abuse of discretion.

3.      Whether Lindell has standing to raise the issue of a violation of his First Amendment right of freedom of association. U.S. Const. amend I; *Christian Action League of Minn. v. Freeman,* 31 F.4th 1068, 1072 (8th Cir. 2022). **Standard of Review:** Question of standing reviewed *de novo*; jurisdictional findings reviewed for clear error.

4.      Whether the district court erred by declining to conclude that Lindell is likely to succeed on his Fourth Amendment claim where he established a *prima facie* case that the warrant served on him constituted a general warrant. *In re Grand Jury Proceedings,* 716 F.2d 493, 499-502 (8th Cir. 1983); *United States v. Moulder,* 2022 WL 3644893 (D. Minn. 8/24/2022); *Progressive Techs., Inc.,* 33 F.3d at 485. **Standard of Review:** Fact findings reviewed for clear error; legal conclusions *de novo*; ultimate decision regarding preliminary injunctive relief for abuse of discretion.

Appellate Case: 22-3510     Page: 13     Date Filed: 01/26/2023 Entry ID: 5239399

5.      Whether Lindell has demonstrated the Government's callous disregard of his constitutional rights. U.S. Const. amend IV; *Richey v. Smith,* 515 F.2d 1239, 1243 (5th Cir. 1975); *In re Grand Jury Proceedings*, 716 F.2d 493, 495-96, 502 (8th Cir. 1983); *Marcus*, 97 F.3d at 1140. **Standard of Review:** Test for return of property and callous disregard reviewed for abuse of discretion.

6.      Whether Lindell may assert a claim for declaratory and injunctive relief directly on a provision in any of the first eight amendments to the United States Constitution. U.S. Const. amend IV; *City of Boerne v. Flores,* 521 U.S. 507, 524 (1997); *Bell v. Hood,* 327 U.S. 678, 684 (1946) (action brought directly on a provision of the Constitution permissible). **Standard of Review:** Reviewed *de novo*.

7.      Whether the district court erred by holding that the speculative possibility of a future criminal prosecution provided Lindell with an adequate remedy at law to remedy the violations of his constitutional rights. U.S. Const. amend IV; *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir. 1987). **Standard of Review:** Reviewed *de novo*.

## STATEMENT OF THE CASE

In the spring of 2021, the Colorado Secretary of State directed all local election officials to install a Dominion Trusted Build Software Upgrade on election

**4**

management system ("EMS") servers. (App. 38-39; R. Doc. 39-1, at 9-10.)[1] The

effect of that directive was to require local election officials to participate in

violating federal law, which prohibits the deletion of election records. The record

to be deleted was unauthorized software used in the 2020 and 2021 elections that

allowed for the manipulation of data in election files. *Id*. Experts have verified that

assertion in a forensic report. *Id*. Tina Peters, the election official in Mesa County,

understood that she was obligated by law to preserve that election record and

complied with the directive only after arranging to have a forensic image made of

the EMS server before and after the deletion occurred. *Id.* The Secretary's directive

violated the federal statute mandating that "[e]very officer of election shall retain

and preserve, for a period of twenty-two months from the date of any general,

special or primary election [involving a candidate for federal office]." 52 U.S.C. §

20701 (emphasis added).

The Secretary of State initiated an investigation of the making and

publishing of the forensic images, claiming that there had been a security breach.

(App. 40-41; R. Doc. 39-1, at 11-12.) The Government launched a joint

investigation into those activities with the Colorado Attorney General and the

Mesa County, Colorado District Attorney. *Id.* The Federal Bureau of Investigation

("FBI") raided several private residences of individuals suspected of involvement

---

[1] Citations to the Addendum are to "Add-" and to Appellants' Appendix as "App.".

Appellate Case: 22-3510     Page: 15     Date Filed: 01/26/2023 Entry ID: 5239399

in making and publishing the forensic images. *Id.*

On September 13, 2022, FBI agents detained Lindell for 40-45 minutes at a fast-food restaurant, served him with a search and seizure warrant, and forced him to surrender his cellphone. (App. 29, ¶ 13; R. Doc. 10-4, at ¶ 13.) He filed his Complaint challenging the issuance and execution of the warrant as violating his rights under the First, Fourth, and Fifth Amendments and requesting the return of his property on September 20, 2022 (App. 1; R. Doc. 1.) and a Motion for a Temporary Restraining Order on September 21, 2022. (App. 211; R. Doc. 9.) The district court denied that Motion on September 22, 2022. The district court then treated that Motion as a Motion for Preliminary Injunction and Return of Property. (App. 88; R. Doc. 75, at 45.) On October 4, 2022, Lindell filed a Motion to Obtain Access to Warrant Application Materials and a Motion to Expedite Hearing on that Motion. A hearing was held on all pending Motions on October 19, 2022. (App. 44; R. Doc. 75.) On November 3, 2022, the district court entered an Opinion and Order denying all pending Motions. (Add-1; R. Doc. 68.) Lindell has appealed the denial of his Motion for Preliminary Injunction and Return of Property. (App. 127; R. Doc. 69.)

## SUMMARY OF THE ARGUMENT

The district court's denial of Lindell's Motion for Preliminary Relief and Return of Property violated the First and Fourth Amendments and the standard for

determining whether property seized pursuant to a warrant must be returned. Lindell satisfied the factors he must meet to secure that preliminary relief.

Lindell showed that he was likely to succeed on his First Amendment claim. Given the binding effect of the *Lewellen* decision, which held that a criminal investigation may be enjoined when it is undertaken in retaliation for, or to discourage, the exercise of constitutional rights (843 F.2d at 1109-10), it was an abuse of discretion for the district court to deny Lindell's request for preliminary relief. The district court failed altogether to address Lindell's First Amendment argument based on *Lewellen.* Lindell asserts that the warrant and the investigation that prompted it were intended to punish Lindell for his involvement in the making and publishing of forensic images of software used in the 2020 and 2021 elections in Mesa County, Colorado. The images were made after an unlawful directive was issued by the Colorado Secretary of State to install new software that deleted software that was a record of those elections. The Secretary has not been prosecuted for violating the federal statute that mandates preservation of election records for 22 months following the election. Yet, those involved in preserving the records and refusing to participate in a violation of federal law have been targeted.

The district court limited its consideration of the First Amendment claim to a single allegation in the Complaint and ignored allegations related to the retaliatory investigation and warrant. It compounded that error by concluding erroneously that

7

the action could not be brought directly on a provision of the Bill of Rights and that, despite the *Lewellen* decision, the claim is barred because a judicially obtained warrant had been issued within the bounds of the Fourth Amendment.

Lindell also established the likelihood that he would prevail on his Fourth Amendment claim, but the district court rejected his argument. It was error to do so because the warrant violates the requirements of the Fourth Amendment that "the things to be seized" must be particularly described and that there must be a showing of probable cause for the seizure of all things taken by the Government. The district court relied in error on the two-step procedure prescribed by F.R.Crim.P. 41 (e) (2) (B), which allows the Government to seize all data collected on Lindell's cellphone over a two-year period without particularly describing the items to be seized and demonstrating probable cause for all items seized. Rules adopted by the Supreme Court cannot sanction violations of the Fourth Amendment.

The warrant does not assure the required safeguards to prevent the Government from accessing data for which no probable cause has been demonstrated, as well as data protected by the attorney-client privilege and the First Amendment freedom of association. The filter team procedure also does not satisfy the requirements of the Fourth Amendment.

The district court also erred as a matter of law by concluding that the

**8**

*Younger v. Harris* abstention doctrine prohibited Lindell's action. The *Lewellen* decision, however, allowed the court to enjoin the investigation.

The district court abused its discretion in denying preliminary relief, including its refusal to order the return of property, because Lindell satisfied each of the factors of the applicable tests of whether a preliminary injunction should be granted and whether the seized property should be returned.

## ARGUMENT

## I.   LINDELL IS LIKELY TO SUCCEED ON HIS FIRST AND FOURTH AMENDMENT CLAIMS.

The request for preliminary injunctive relief must be evaluated under the four-factor test of *Winter v. NRDC,* 555 U.S. 7, 20 (2008). Whether the movant is likely to succeed on the merits is the most significant among the four factors. *Home Instead, Inc. v. Florance,* 721 F.3d 494, 497 (8th Cir. 2013). The district court abused its discretion and erred as a matter of law in concluding that Lindell had not established a likelihood of success on the merits of his First and Fourth Amendment claims. (Add-20; R. Doc. 68, at 20.) Lindell needed only to demonstrate that he is merely likely to prevail on one of his claims. *Richland/Wilkins Joint Powers Auth. v. U.S. Army Corps of Eng'rs,* 826 F.3d 1030, 1040 (8th Cir. 2016). It is not necessary to show that such likelihood constitutes a preponderance. *Jet Midwest Int'l Co.,* 953 F.3d at 1044-45. It is enough to show "a

9

fair chance of prevailing." *Planned Parenthood of Minn., N.D., S.D. v. Rounds,* 530 F.3d 724, 731-32 (8th Cir. 2008). The likelihood-of-success factor is satisfied when the movant presents a *prima facie* case. C. Wright, A. Miller, & M. Kane, 11A Federal Practice and Procedure §2948.3 (2014)("All courts agree that plaintiff must present a prima facie case but need not show a certainty of winning"). Lindell has done so. "In First Amendment cases, the likelihood-of-success factor is usually determinative." *ACLU v. Alvarez,* 679 F.3d 588, 589-90 (7th Cir. 2018).

## A. The District Court Mischaracterized Lindell's First Amendment Claims and Ignored Most of His Allegations.

The evaluation of Lindell's First Amendment claim was an abuse of discretion because the district court failed to consider the most significant allegations in the Complaint. Lindell presented facts that supported an actionable *Lewellen* claim when the Complaint is read as a whole. Pointing to a single paragraph (¶49), the district court concluded that the Government had not discouraged speech or affiliation. (Add-26; R. Doc. 68, at 26.) The allegation in that paragraph is that "Attorney General Merrick Garland threatened criminal and civil actions against those who pursue audits of voting tabulations."

The district court ignored all allegations other than paragraph 49. For example, paragraphs 47 and 48 allege that the Director of National Intelligence and the Secretary of Homeland Security publicly characterized those who advance "a narratives of fraud in the recent general election" as domestic terrorists. (App. 1; R.

**10**

Doc. 1.) Paragraph 50 states:

> These official pronouncements were intended to intimidate Americans, including Mr. Lindell and his associates, who are actively involved in supporting audits of elections. They function to chill the exercise of Mr. Lindell's First Amendment freedoms of speech, association, the press, and the right to petition the Government for the redress of grievances.

Paragraph 44 alleges that "[m]any of the Americans who have associated with Mr. Lindell in his efforts insist on remaining anonymous out of their reasonable fear of being subjected to harassment, intimidation, investigation, and possible prosecution for their participation in protected activities regarding such as discussing alleged election fraud and making election systems transparent and safer from manipulation." (App. 1; R. Doc. 1.)

Lindell's *Lewellen* claim was focused principally on the investigation and the warrant, which the district court did not take into consideration. (Add-20, 25-26; R. Doc. 68, at 20, 25-26.) Lindell alleged: "The Warrant is simply another technique employed by Defendants to deter Plaintiff and those who act in concert with him from exercising their constitutional rights guaranteed by the First Amendment." (App. 1, ¶ 52; R. Doc. 1, at ¶ 52.)

By ignoring the allegations in paragraphs 44, 47, 48, 50, and particularly 52, the district court committed reversible error by failing to acknowledge the systematic and repressive effort being waged by the Government that was calculated to punish Lindell and to intimidate citizens who might dare to raise

questions about the conduct of elections, particularly the 2020 presidential election. The purpose and effect of launching the investigation and obtaining the warrant were to discourage citizens from exercising their First Amendment rights to bring to the public's attention examples of election irregularities and to advocate for the elimination of computerized voting machines in U.S. elections. The First Amendment "protects vigorous advocacy, certainly of lawful ends, against governmental intrusion." *NAACP v. Button,* 371 U.S. 415, 429 (1973).

**B. The District Court Rejected Lindell's First Amendment Claims Based on an Erroneous Legal Conclusion.**

The district court concluded erroneously that Lindell's First Amendment claims cannot be asserted when "a judicially obtained warrant [has been] obtained within the bounds of the Fourth Amendment." (Add-26; R. Doc. 68, at 26.) That conclusion ignored Lindell's argument (App. 84-85; R. Doc. 75, at 41-42.) based on the binding *Lewellen* decision and well-established precedents that an investigative activity can be enjoined when it is undertaken "in retaliation for or to discourage the exercise of constitutional rights." *Lewellen,* 843 F.2d at 1109-10; *accord Cullen v. Fliegner,* 18 F.3d 96, 103-04 (2d Cir. 1994); *Fitzgerald v. Peek,* 636 F.2d 943, 945 (5th Cir.1981); *Ruscavage v. Zuratt,* 593 F.Supp. 1078, 1082 (E.D. Pa. 1993). Lindell contends that the Government, in bad faith, launched the investigation that prompted the warrant for the purpose of punishing Lindell and others for making the image of the election record and publishing it. (App. 84-85,

**12**

116; R. Doc. 75, at 41-42, 73.) It is telling that they have been targeted while the Secretary of State has not been prosecuted for her obvious violation of 52 U.S.C. § 20701.

Lindell, the Mesa County election official, and others who participated in making and publishing the forensic images were engaged in expressive advocacy protected by the First Amendment. *See Pickering v. Bd. of Educ.,* 391 U.S. 563, 571-72 (1968) (citizens enjoy a constitutional right to speak on matters of public interest). They also have a right and a duty to preserve the election software that the Secretary unlawfully directed to be deleted. *See In re Quarles,* 158 U.S. 532, 536 (1895); *Keating v. City of Miami,* 598 F.3d 753, 763-64 (11th Cir. 2010). The Mesa County election official who arranged for the making of the forensic image was assuring compliance with the mandate of 52 U.S. § 20701.

This case raises issues of the most serious concern about the threat to the value of expressive advocacy protected by the First Amendment. The misuse of governmental power to intimidate and punish citizens who oppose an administration in power has a long history in America.[2] This case involves yet

---

[2] That history predates the Revolutionary War. *See* D. J. Hudson, Jr., *Free Speech During Wartime*, THE FIRST AMENDMENT ENCYCLOPEDIA (2009), https://www.mtsu.edu/first-amendment/article/1597/free-speech-during-wartime., which can be found at https://www.mtsu.edu/first-amendment/article/1597/free-speech-during-wartime. President John Adams proposed and Congress enacted the Sedition Act of 1798, which criminalized speech critical of the government.

Appellate Case: 22-3510     Page: 23     Date Filed: 01/26/2023 Entry ID: 5239399

another example of such abuse.

Upon assuming power in 2021, the Biden Administration issued a number of public statements through cabinet officials that characterized Americans who questioned the regularity of the 2020 presidential election as enablers of domestic violent extremism.[3] Attorney General Merrick Garland publicly decried "baseless"

---

Sedition Act of 1798, ch. 74, 1 Stat. 596 (1798). President Abraham Lincoln defied Chief Justice Roger Taney's ruling and arrested members of the Maryland legislature to prevent them from voting for secession. D. PAGUE, FREEDOM UNDER LINCOLN 29 (1965). President Woodrow Wilson threatened punishment for anti-government speech and urged Congress to enact the Espionage Act of 1917, which penalized speech that undermined the war effort. The Espionage Act of 1917, Pub. L. No. 65-24, 40 Stat. 217 (1917). The Sedition Act followed the next year. The Sedition Act of 1918, Pub. L. No. 65-150, 40 Stat. 553 (1918). President Franklin Roosevelt gave FBI Director J. Edgar Hoover emergency power to censor news during World War II. A. SCHLESINGER, ROBERT KENNEDY AND HIS TIMES 252 (2002). Congressional committees issued subpoenas during the McCarthy era that chilled the exercise of speech and associational rights. *See Watkins v. United States,* 354 U.S. 178, 197-98 (1957). The Senate Watergate Committee discovered an August 16, 1971, memorandum by Counsel to the President John Dean that urged the use of "available federal machinery to screw our political enemies." J. DEAN, BLIND AMBITION: THE WHITE HOUSE YEARS 386 (1976). In 2017, the Department of Justice settled actions brought by dozens of non-profit organizations which asserted that the Internal Revenue Service had discriminated against them for partisan reasons when they applied for tax exempt status. *See* Press Release, Attorney General Jeff Sessions, Department of Justice, Department of Justice has Settled with Plaintiff Groups Improperly Targeted by IRS, https://www.justice.gov/opa/pr/attorney-general-jeff-sessions-announces-department-justice-has-settled-plaintiff-groups.
[3] *See* Office of the Director of National Intelligence, *Domestic Violent Extremism Poses Heightened Threat in 2021* (Mar. 1, 2021), https://www.dni.gov/files/ODNI/documents/assessments/UnclassSummaryofDVE Assessment-17MAR21.pdf; Dep't of Homeland Security, Office of the Chief Security Officer, *Domestic Violent Extremism Internal Review: Observations,*

Appellate Case: 22-3510     Page: 24     Date Filed: 01/26/2023 Entry ID: 5239399

voter fraud claims[4] and threatened anyone who supported audits of the 2020 presidential election with criminal and civil actions if they violated the Justice Department's view of federal law.[5] The decisions to launch the investigation and to request the warrant, coupled with the threatening public statements by cabinet officials, are evidence of a broad campaign to punish, threaten, and intimidate those who exercise their First Amendment rights to oppose the policies and activities of the Government. But it is the launching of the investigation and the application for the warrant that are the principal focus of Lindell's First Amendment challenge and sufficient in themselves to support his *Lewellen* claim.

In *Watkins v. United States,* 354 U.S. 178 (1957), the Court noted:

> Abuses of the investigative process may imperceptibly lead to abridgement of protected freedoms. The mere summoning of a witness and compelling him to testify, against his will, about his beliefs, expressions or associations is a measure of governmental interference. And when those forced revelations concern matters that are unorthodox, unpopular, or even hateful to the general public, the reaction in the life of the witness may be disastrous . . . . Nor does the witness alone suffer the consequences. Those who are identified by witnesses and thereby placed in the same glare of publicity are equally subject

---

*Findings, and Recommendations* (Mar. 11, 2021), https://www.dhs.gov/sites/default/files/2022-03/Report%20to%20the%20Secretary%20of%20Homeland%20Security%20Domestic%20Violent%20Extremism%20Internal%20Review%20Observations%2C%20Findings%2C%20and%20Recommendations.pdf.

[4] Alex Woodward, *Merrick Garland Vows to Challenge GOP Threats to Voting Rights*, INDEPENDENT, https://www.independent.co.uk/news/world/americas/us-politics/merrick-garland-voting-rights-audit-b1864454.html.

[5] *See* Press Release, U.S. Dep't of Justice, Federal Law Constraints on Post-Election 'Audits (July 28, 2021), https://www.justice.gov/opa/press-release/file/1417796/download.

**15**

to public stigma, scorn and obloquy. Beyond that, there is the more subtle and immeasurable effect upon those who tend to adhere to the most orthodox and uncontroversial views and associations in order to avoid a similar fate at some future time.

*Id.* at 197-98. The Government's retaliatory investigation and warrant have a similar chilling effect.

The seizure of Lindell's cellphone enabled the Department of Justice to access information about Lindell's communications with many individuals who have associated with him anonymously in their common pursuit of election irregularities, particularly involving electronic voting systems. (App. 30, ¶ 21; R. Doc. 10-4, at ¶ 21.) Given the Department's refusal to prosecute the Colorado Secretary of State for directing the deletion of election system software used in the 2020 and 2021 elections in violation of 52 U.S.C. § 20701 , the inference is unavoidable that the investigation of actions taken to preserve the deleted software was launched to punish and intimidate those who participated in making an image of and publishing the deleted election record. Alerting the public to that violation of law is constitutionally protected. *See Durham v. Jones,* 737 F.3d 291, 304 (4th Cir. 2012).

**C. The District Court Refused to Consider Lindell's *Lewellen* Argument**

The district court also abused its discretion by failing to consider Lindell's *Lewellen* argument. The Government's reliance on 18 U.S.C. §1030 (a) (2) (A) as a justification for investigating Lindell demonstrates a retaliatory intent. That

**16**

statute prohibits causing damage to a computer protected under the Computer Fraud and Abuse Act. The damage to the election software was not caused by making forensic images, but by Dominion's insertion of unauthorized software and the Secretary's directive to delete it. (App. 27, ¶ 7; R. Doc. 10-4, at ¶ 7.)

As noted in Section I.B, *supra*, making and publishing an image of an election record despite the Secretary's unlawful attempt to delete that record was constitutionally protected. Alerting the public to the evidence of vote tampering is a matter of public concern that is also protected under the First Amendment. *See Pickering,* 391 U.S. at 571-72. The effect of the directive of the Secretary of State to delete software used in the 2020 election was to compromise and damage the software in the election management system, which in fact had already been compromised and damaged by the insertion by Dominion Voting Systems of an unauthorized program on the EMS sever that permitted vote tampering and ballot manipulation. (App. 27, ¶ 7; R. Doc. 10-4, at ¶ 7.)

It was also error as a matter of law for the district court to conclude (Add-19 n. 5; R. Doc. 68, at 19 n. 5) that there can be no violation of the freedoms of speech and association where the claimed First Amendment violation is the result of a retaliatory investigation or prosecution. This ignores *Lewellen,* 843 F.2d at 1109-10. The district court's reliance on *Manafort v. U.S. DOJ,* 311 F.Supp.3d 22, 30 (D.D.C. 2018) and *Deaver v. Seymour,* 822 F.2d 66,71 (D.C. Cir. 1987) was

17

misplaced because in neither case was a First Amendment claim asserted, unlike this case, to prevent a criminal proceeding from continuing.

### D. Lindell Has Standing to Assert His First Amendment Claim of a Violation of His Association Rights.

The opinion below contends that Lindell may only assert his own First Amendment rights, not those of individuals who are not named parties. (Add-25, n.7; R. Doc. 68, at 25 n.7.)  But Lindell is asserting his own associational right. He has a personal stake in the chilling effect of the Government's investigation on those individuals who would be discouraged from associating with him in his advocacy or would be discouraged from continuing to do so. In challenging the investigation and the issuance of the warrant, he is seeking to redress an injury that he himself is experiencing, *NAACP v. Button,* 371 U.S. at 428 (NAACP allowed to assert an associational right on its own behalf because "it is directly engaged in those activities"); *see Amato v. Elicker,* 534 F.Supp.3d 196, 207 (D. Conn. 2021) (lack of standing where plaintiff failed to allege attempts to associate and defendants' thwarting of those attempts). The Complaint alleges that Lindell himself will be injured by the violations of his associational right, that others who associate with him in pursuit of a shared political objective fear harassment, intimidation, investigation, and possible prosecution for their association, and that the Government has taken actions to threaten and investigate Lindell and his associates to chill his exercise of First Amendment rights. (App. 1, ¶¶ 43-44, 47-

**18**

54; R. Doc. 1, at ¶¶ 43-44, 47-54.) In *Roberts v. U.S. Jaycees,* 468 U.S. 609 (1984), the Court observed that the right to speak freely and to petition for redress of grievances would not be effective without the right to engage in a group effort to support those rights. *Id.* at 622. Lindell's objective cannot be achieved without his ability to associate with individuals who share his beliefs. The investigation is calculated to punish and discourage those who associate with him.

### E. The District Court's Decision Rejecting His Fourth Amendment Claim Was Clearly Erroneous.

#### 1. The Warrant Is a General Warrant.

The warrant is at odds with the text of the Fourth Amendment, which requires that it describe with particularity "the things to be seized." *See United States v. Gleich,* 397 F.3d 608, 611 (8th Cir. 2006). The particularity requirement must be read together with the probable cause requirement. Probable cause cannot be demonstrated for an entire category of items that have not been particularly identified. There must also be "a nexus…between the items to be seized and criminal behavior." *Warden v. Hayden,* 387 U.S. 294, 307 (1967).

The warrant is a general warrant because it seized all data collected on Lindell's cellphone over a period of two years without a particularized description of what items are to be seized and a demonstration of probable cause as to all items. (App. 66-70; R. Doc. 75, at 23-27.) It allows the Government to rummage through that massive volume of data reviewing privileged attorney-client

communications, communications with Lindell's anonymous associates, and other business and personal communications that are utterly unrelated to the subject of the investigation that prompted the warrant. (App. 1, ¶¶ 62-63; R. Doc. 1, at ¶¶ 62-63.)

Seizure occurred when the Government "asserted dominion and control over" the cellphone and denied Lindell access to it, not later when the Government decides what items in the data collected on Lindell's cellphone are within the description of those items for which probable cause had been shown. *United States v. Jackson,* 466 U.S. 109, 110 (1984). The language of F.R.Crim.P. 41(a)(2)(B) affirms that construction of "seizure": "The time for executing the warrant . . . refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review." *See In re Grand Jury Proceedings,* 716 F.2d 493, 498-99 (8th Cir. 1983) (Items to be seized must be identified.).

The Government contends that F.R.Crim.P. 41 (e) (2) (B) enabled it to seize all data collected on Lindell's cellphone and subsequently review those data to determine which items meet the description of what can be searched. That two-step procedure is also at odds with the text of the Fourth Amendment. Rule 41 cannot alter the requirements of the Fourth Amendment. *Sibbach v. Wilson & Co., Inc.,* 312 U.S. 1, 9-10 (1941).

In *United States v. Moulder,* 2022 WL 3644893 (D.Minn. 8/24/2022), the

**20**

court concluded that a warrant issued pursuant to Rule 41 allows the Government to "request that an entire database of information be turned over to them and the government can then parse through that data in order to seize the records that are supported by probable cause." *Id.* at * 3. The *Moulder* opinion observed that this Court "has implicitly approved of the rule though it has not fully analyzed the implications of it. *United States v. Beckman,* 783 F.3d 672, 680 n. 6 (2015)." It concluded that acceptance of this Court's construction of Rule 41 in *Beckman* would amount to "a modern-day general warrant, granting the government access to arguably some of the most sensitive pieces of information in an individual's life. It is hard to imagine that such a warrant would not be abhorred by the Founding Fathers." *Id.*

The Government relied on numerous decisions upholding the legality of the two-step procedure, but none of those decisions addresses the conflict of Rule 41 (e) (2) (B) with the text of the Fourth Amendment. That procedure cannot be justified given the explicit language of the Amendment. *Sibbach,* 312 U.S. at 9-10.

2. *The Government failed to assure safeguards for the search.*

In *In re Search of Apple iPhone,* 31 F.Supp.3d 159 (D.D.C. 2014), the court concluded that the potential for abuse "has never been greater" when "thousands of millions of documents" obtained after seizing a cellphone can be examined. *Id.* at 167. This allows the Government "to gain access to a larger pool of data that it has

no probable cause to collect." *Id.* at 168 (quoting *United States v. Schesso,* 730 F.3d 1040, 1042 (9th.2013). The court in that case rejected the warrant application, concluding that it did not explain how the search would be conducted to minimize the risk of over-seizing. 31 F.Supp.3d at 168. To assure Fourth Amendment protections and to mitigate potential abuses allowed by a seizure of a cellphone or similar electronic device, the court requested "a sophisticated technical explanation of how the government intends to conduct the search so that the Court may conclude that the government is making a genuine effort to limit itself to a particularized search," *Id.* at 168. No such explanation has been provided to Lindell without which the court below could not conclude that the Government was making a genuine effort to limit its search, as the Fourth Amendment requires.

Without conceding that the warrant is not a general warrant, Lindell claims that it lacks the necessary procedural safeguards to assure that his rights guaranteed by the First and Fourth Amendments will not be violated. The district court misapplied *United States v. Cartier,* 543 F.3d 442 (8th Cir. 2008), which concluded that there is no *per se* rule invalidating a search warrant for a cellphone or computer for absence of a search methodology. *Id.* at 448. (Add-25; R. Doc. 68, at 25.) After recognizing this Court's statement that "there may be times that a search methodology or strategy may be useful or necessary" (543 F.3d at 447-48), the district court should have examined whether, in the circumstances of this case,

22

such a methodology or strategy was required. Instead, it applied a blanket rule that such a measure is never required. This case is distinguishable from *Cartier* because that case, unlike the instant case, involved a claim that "the absence of a search strategy renders a search warrant invalid per se." 543 F.3d at 447. In addition, Cartier did not allege that he was prejudiced by any search of unrelated data and did not suggest "how the search would have been different with a scripted search protocol." *Id.* Here, Lindell has asserted that there was a need to limit the examination of data collected on his cellphone because it contains privileged communications with his attorneys, communications privileged under the First Amendment, and business and personal been authorized for seizure by a showing of probable cause as to that data. (App. 30-31, ¶¶ 16-17, 26; R. Doc. 10-4, at ¶¶ 16-17, 26; App. 68-72; R. Doc. 75, at 25-29.)

### 3. *Reliance on a filter team does not satisfy the Fourth Amendment.*

The Government contends that its filter team can review data even though they have not been particularly described and for which probable cause for their seizure has not been shown, and which are not within its focus on privileged items. A filter team cannot cure a violation of the Fourth Amendment's particularity and probable cause requirements. *See Sibbach,* 312 U.S. at 9-10. The district court did not address Lindell's objection to the use of a filter team. (Add-24, 25; R. Doc. 68, at 25-26.) The Government contends that its filter team can review data which

Appellate Case: 22-3510    Page: 33    Date Filed: 01/26/2023 Entry ID: 5239399

have not been particularly described and for which probable cause for their seizure has not been shown, and which are not within its focus on privileged items. This procedure is in violation of the unambiguous language of the Fourth Amendment, which violation invalidates the seizure of Lindell's cellphone.

    4.  *The heightened standard is not met here where the seizure implicates records protected by the First Amendment.*

The Fourth Amendment's requirements are to be accorded the most scrupulous exactitude when the "'things' are books, and the basis for their seizure is the ideas which they contain." *Stanford v. Texas*, 379 U.S. 476, 485 (1965). The same principle must apply with no less force to data on Lindell's cellphone, which contains "the sum of an individual's private life." *Riley v. California,* 573 U.S. 373, 394 (2014). The communications concern matters protected by the First Amendment. *Stanford,* 379 U.S. at 485.

In summary, the warrant violated the Fourth Amendment because: (1) it failed to describe the things to be seized with particularity; (2) it authorized the seizure of items for which probable cause had not been demonstrated; (3) it relied on a filter team that cannot cure the Government's failure to meet the requirements of the Fourth Amendment; (4) it did not provide the necessary protocols to prevent the Government from accessing data to which it had not right to review; and (5) it failed to satisfy the heightened standard imposed when information protected by the First Amendment is implicated. Lindell showed that he is likely to succeed on

the merits of his Fourth Amendment claim.

### F. The First and Fourth Amendments Are Self-Executing.

The district court erred as a matter of law in concluding that Lindell cannot assert a claim directly on the Constitution. (Add-31 n.9; R. Doc. 58, at 31 n.9.) Lindell's challenge based on the First and Fourth Amendments does not seek damages. Actions for injunctive or declaratory relief may be brought directly on a provision of those provisions of the Bill of Rights. *Bell v. Hood,* 327 U.S. 678, 684 (1946) (It is "established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect the rights guaranteed by the Constitution . . . ."). [6] "The first eight Amendments set forth self-executing prohibitions on governmental action . . . ." *City of Boerne v. Flores,* 521 U.S. 507, 524 (1997). *See* 28 U.S.C. § 1343 (jurisdiction over constitutional challenges). [7]

The rule should be followed here that has been applied since *Madison v. Marbury,* 5 U.S. 137, 163 (1803) ("The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws

---

[7]  *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971) authorized **a damages action** against federal agents for violations of the Fourth Amendment. Although the impact of that decision has been limited, most recently by *Egbert v. Boule,* 142 S. Ct. 1793 (2022), *Bivens* has not been overruled. Lindell's action, unlike *Bivens,* seeks injunctive relief, not damages.

Appellate Case: 22-3510     Page: 35     Date Filed: 01/26/2023 Entry ID: 5239399

whenever he receives an injury."). In *Ex parte Young,* 209 U.S. 123 (1908), the

Court answered the following question in the affirmative:

> whether there is a remedy that the parties interested may resort to, by going into a Federal court of equity, in a case involving a violation of the Federal Constitution, and obtaining a judicial investigation of the problem, and pending its solution, obtain freedom from suits, civil or criminal, by a temporary injunction, and, if the question be finally decided favorably to the contention of the company, a permanent injunction restraining all such actions or proceedings.

*Id.* at 149. "The judiciary has always borne the basic responsibility for protecting

individuals against unconstitutional invasions of their rights by all branches of the

Government." *Stamler v. Willis,* 415 F.2d 1365, 1369-70 (7th Cir.1969); *see*

*Obergefell v. Hodges,* 576 U.S. 644, 677 (2015) (individuals allowed to vindicate

violations of the Constitution).

## G. The Abstention Doctrine Does Not Apply to Lindell's Claims.

*Younger v. Harris,* 401 U.S. 37 (1971), does not apply in this case. It is well-

established that a court may enjoin a criminal investigation "brought in retaliation

for or to discourage the exercise of constitutional rights." *Lewellen,* 843 F.2d at

1109-10. The opinion of the district court does not mention *Lewellen* or address the

rule for which Lindell cited it. Its failure to consider Lindell's argument based on

*Lewellen* was clearly erroneous and an abuse of its discretion. *Progressive Techs.,*

*Inc.,* 33 F.3d at 485.

26

## II. LINDELL WILL SUFFER IRREPARABLE INJURY UNLESS THE PRELIMINARY INJUNCTION IS GRANTED.

The second *Winter* factor is whether Lindell has shown that, unless he is granted preliminary relief, he will suffer irreparable injury. The very violation of the First Amendment constitutes irreparable injury. *Marcus,* 97 F.3d at 1140. The chilling effect on the exercise of Lindell's freedom of speech, freedom of association, freedom of the press, and the right to petition for the redress of grievances is a violation of the First Amendment. *See Americans for Prosperity Found. v. Bonta,* 141 S. Ct. 2373, 2388 (2021). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese v. Cuomo,* 141 S. Ct. 63, 67 (2020); a*ccord, Elder v. Burns,* 427 U.S. 347. 373 (1976). The district court concluded that Lindell's claim regarding the Government's access to attorney-client and other privileged communications stored on his cellphone was defeated by the Government's guarantee that those communications would be safeguarded by its filter protocols. (Add-29; R. Doc. 68, at 29.) That conclusion was unwarranted. *See* discussion in Section I.E.4, *supra*.

The district court also concluded erroneously that Lindell had an adequate remedy at law if he is ever indicted because he can then challenge the warrant and its execution and, if successful, suppress the use of any evidence obtained through the warrant. (Add-29-30; R. Doc. 68, at 29-30.) This ignores the fact that Lindell

27

has already suffered a First Amendment injury, which negates the availability of an adequate remedy at law. *See Superior Oil Co. v. Transco Energy Co.,* 616 F.Supp.3d 94, 96 (W.D.La. 1984); *Marcus,* 97 F.3d at 1140. Suppression of evidence, therefore, could not provide an adequate remedy.

The district court acknowledged that if the seizure and refusal to return Applicants' cell phone violated the First Amendment freedom of association, they would suffer irreparable injury. (Add-28; R. Doc. 68, at 28.) Lindell has demonstrated that his First Amendment rights have been and continue to be violated. There can be no adequate remedy at law where a party is already suffering irreparable injury because of a First Amendment violation. *See Marcus,* 97 F.3d at 1140.

## III.    THE BALANCE OF INTERESTS TILTS IN FAVOR OF LINDELL.

When the Government is a defendant, the balance-of-equities factor and the public-interest factor are considered together. *Nken,* 556 U.S. at 435. The protection of individual constitutional rights serves the public interest. *Camelot Banquet Rooms, Inc.,* 24 F.4th at 646 (the public interest is served by enforcing constitutional rights); *Giovani Carandola, Ltd. v. Bason,* 303 F.3d 507, 521 (4th Cir. 2002) ("[Government] is in no way harmed by issuance of a preliminary injunction which prevents [the government] from enforcing restrictions likely to be found unconstitutional."); *Wynn v. Vilsack,* 545 F.Supp.3d 1271, 1293 (M.D. Fla.

Appellate Case: 22-3510     Page: 38     Date Filed: 01/26/2023 Entry ID: 5239399

2021).

The Government's interest is in preserving the effectiveness of its investigation. The public has an interest in efficient law enforcement, but the Government suggested only in a conclusory manner that such an interest would be "materially harmed" by a grant of injunctive relief. It failed to explain how the investigation would be harmed. The interest in protecting freedom of speech and association in this case plainly outweighs the Government's interest. *See Louisiana v. Becerra,* 577 F.Supp. 3d 483, 494 (W.D.La. 2022), *aff'd in part* 20 F.4th 260 (5th Cir. 2021) (partial stay of nationwide effect of district court's preliminary injunction granted; application declined as to effect in fourteen States.)

## IV. LINDELL ESTABLISHED HIS RIGHT TO HAVE THE SEIZED PROPERTY RETURNED.

Lindell has satisfied the four-pronged test to require the return of the seized property. *Richey,* 515 F.2d at 1243.

### A. Callous Disregard of Constitutional Rights Has Been Shown.

The gravity of the Government's retaliation against Lindell for exercising his First Amendment rights and its broader campaign to punish and intimidate citizens who have associated with Lindell to expose election fraud and to advocate for the elimination of computerized voting systems is a compelling example of callous disregard of constitutional rights. As shown at 9-17, supra, the district court's consideration of the First Amendment claims was based on erroneous legal

29

conclusions, a failure to address the argument based on *Lewellen*, and a disregard of overwhelming evidence of violations of Lindell's freedom of speech, association, the press, as well as his right to redress grievances. The Government's disregard of his Fourth Amendment rights by the over-seizing of sensitive data, which it has refused to return, compounds its callousness.

**B. Lindell Will Experience Irreparable Injury Without Its Return**.

Lindell will suffer irreparable injury if the government retains his cellphone and the data collected on it. The return of attorney-client and other privileged communications with his network of associates, and business records for the period in which there was no back-up are essential to the efficient operation of his businesses and for the pursuit of his objective to publicize the need to address election fraud and to eliminate computerized voting systems.

**C. Lindell Has No Adequate Remedy at Law Other Than a Return.**

When there is irreparable injury resulting from a First Amendment violation, there can be no adequate remedy at law. *See Marcus,* 97 F.3d at 1140.

**D. Lindell Has an Interest In, and Need For, The Seized Property.**

Lindell is both the owner of the property seized and the individual who uses the cellphone. His need for the property is explained in the discussion in the preceding paragraph of his likely irreparable injury if it is not returned. He needs the communications with his attorneys and associates to continue his advocacy.

It was an abuse of discretion to refuse to order the property returned.

## CONCLUSION

The Court should enter an Order enjoining the investigation, prohibiting any use of the data seized pursuant to the warrant, and requiring the Government to return the seized property to Lindell or, alternatively, reverse the order of the district court denying Lindell's Motion for Preliminary Injunction and Return of Property and remand the case for further proceedings.

By_____/s/_____
    Patrick M. McSweeney
    Christopher I. Kachouroff
    Lyndsey L. Bisch
    MCSWEENEY, CYNKAR & KACHOUROFF, PLLC
    13649 Office Place, Suite 101
    Woodbridge, Virginia 22192
    (804) 937-0895
    patrick@mck-lawyers.com
    Attorneys for Plaintiffs-Appellants

## CERTIFICATE OF COMPLIANCE

I hereby certify that the following statements are true:

1.    This document complies with the type-volume limit of Fed. R. App. P. 32
      (a) (7) B because, excluding the parts of the document exempted by Fed. R.
      App. P. 32(f), this document contains 7,421 words.

2.    This document also complies with the typeface requirements of Fed. R. App.
      P. 32 (a) (5) and (6) because this document has been prepared in a
      proportionally spaced typeface using Microsoft Word in 14 point, Times
      New Roman font.

3.    This brief complies with the electronic filing requirements of Eighth Circuit
      Rule 28A(h). The latest version of Windows Defender has been run on the
      files containing the electronic version of this brief and the addendum and no
      virus has been detected.

Executed this 25th day of January 2023.


                        By_____/s/_____
                              Patrick M. McSweeney

Appellate Case: 22-3510    Page: 42    Date Filed: 01/26/2023 Entry ID: 5239399

## CERTIFICATE OF SERVICE

I certify that on the date indicated below, I filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will automatically send notification and a copy of the brief to the counsel of record for the parties. I further certify that all parties to this case are represented by counsel of record who are CM/ECF participants.

Executed this 25th day of January 2023.

By_____/s/_____

Patrick M. McSweeney

Appellate Case: 22-3510     Page: 43     Date Filed: 01/26/2023 Entry ID: 5239399