# United States Court of Appeals
# For the Eighth Circuit

MICHAEL J. LINDELL,
MYPILLOW, INC.,

*Plaintiffs-Appellants,*

v.

UNITED STATES OF AMERICA,
MERRICK GARLAND,
in his official capacity as
Attorney General of the United States,
THE UNITED STATES ATTORNEY
FOR THE DISTRICT OF MINNESOTA, and
CHRISTOPHER WRAY,
in his official capacity as
Director of the Federal Bureau of Investigation,

*Defendants-Appellees.*

**On Appeal from the United States District Court
for the District of Minnesota
No. 22-cv-2290**

**ADDENDUM PURSUANT TO EIGHTH CIRCUIT RULE 28A(g) TO
OPENING BRIEF OF PLAINTIFFS-APPELLANTS**

PATRICK M. MCSWEENEY
CHRISTOPHER I. KACHOUROFF
LYNDSEY L. BISCH
McSweeney, Cynkar &
Kachouroff, PLLC
13649 Office Place, Suite 101
Woodbridge, Virginia 22192
(804) 937-0895

*Counsel for Plaintiffs-Appellants*

# ADDENDUM TABLE OF CONTENTS

OPINION AND ORDER.........................................................................Add-1

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Michael J. Lindell and MyPillow, Inc.,

        Plaintiffs,

v.

United States of America; Merrick Garland,
*in his official capacity as Attorney General
of the United States*; The United States
Attorney for the District of Minnesota; and
Christopher Wray, *in his official capacity as
Director of the Federal Bureau of
Investigation*,

        Defendants.

File No. 22-cv-2290 (ECT/ECW)

**OPINION AND ORDER**

Andrew D. Parker, Parker Daniels Kibort LLC, Minneapolis, MN; Patrick M. McSweeney, Patrick M. McSweeney, Attorney at Law, Powhatan, VA; and Alan Dershowitz, Harvard Law School, Cambridge, MA, for Plaintiffs Michael J. Lindell and MyPillow, Inc.

Jonathan Edward Jacobson and Frank Lin, DOJ-Crm, Washington, DC; Ana H. Voss and Craig R. Baune, United States Attorney's Office, Minneapolis, MN; and Aaron Teitelbaum, DOJ-USAO, Denver, CO, for Defendants United States of America, Merrick Garland, The United States Attorney for the District of Minnesota, and Christopher Wray.

Plaintiffs Michael J. Lindell and MyPillow, Inc., allege in this case that federal agents violated their rights under the First, Fourth, and Fifth Amendments to the United States Constitution when—pursuant to a search warrant—they seized a cellphone from Lindell in the drive-through lane of a Hardee's restaurant in Mankato, Minnesota, on September 13, 2022. Two motions require adjudication. First, under multiple constitutional and rule-based legal theories, Plaintiffs seek access to warrant-application

Appellate Case: 22-3510     Page: 3     Date Filed: 01/25/2023 Entry ID: 5239142

materials the Government filed to secure the search warrant. Second, pursuant to Federal Rule of Criminal Procedure 41(g), Plaintiffs seek a preliminary injunction that would, if issued, require the Government to return the seized cellphone and prohibit the Government from using any information retrieved from the cellphone. Plaintiffs' motion for access to the search-warrant materials will be denied because the Government has demonstrated a compelling interest in the ongoing criminal investigation that outweighs Plaintiffs' right of access. Plaintiffs' motion for a preliminary injunction will be denied because Plaintiffs have not met their burden to support the exercise of equitable powers to enjoin an ongoing criminal investigation and have otherwise failed to satisfy the showing necessary to justify such extraordinary relief.

I

*Execution of the warrant.* On September 13, 2022, federal agents executed a search warrant on Lindell in the drive-through lane of a Hardee's restaurant in Mankato, Minnesota, as Lindell returned from duck hunting in Iowa with a friend. Compl. [ECF No. 1] ¶¶ 12–28. Agents surrounded his vehicle and prevented him from leaving the drive-through lane. *Id.* ¶¶ 14–18, 22. The federal agents then questioned Lindell for approximately 25 to 30 minutes about the following topics: "Dominion Voting Systems, Tina Peters, Colorado incidents, Doug Frank, information posted on Plaintiff's media platform, FrankSpeech.com, Dominion's Trusted Build software update that destroyed election records, his travel on his airplane throughout the Country and to Colorado, and other matters." *Id.* ¶ 21. Plaintiffs allege that it was only after this questioning that the agents told Lindell about the search warrant. *Id.* ¶ 22. After initially refusing Lindell's

Add–2

Appellate Case: 22-3510   Page: 4   Date Filed: 01/25/2023 Entry ID: 5239142

request to call his lawyer, the agents eventually allowed Lindell to do so.  Lindell then gave

the cellphone to the agents.  *Id.* ¶¶ 11, 25–27.  Lindell asked to back up the cellphone to a

cloud service; however, after determining that the phone had been backed up five days

earlier, the lead agent denied this request.  *Id.* ¶ 27.  The agents spent approximately 40 to

45 minutes total with Lindell.  *Id.* ¶ 28.

     *Plaintiffs' alleged injuries from the warrant's execution.*  Plaintiffs raise a number

of complaints regarding the search warrant's execution.  First, Plaintiffs allege that the

Government must have improperly used cell site location information or a device to track

Lindell without a warrant; in Plaintiffs' view, the Government would have had no other

way of knowing Lindell's whereabouts.  *Id.* ¶ 15.  Second, Plaintiffs complain about the

circumstances of Lindell's questioning—namely, that the agents restricted Lindell's

movement by blocking him into the drive-through lane, making him "fear[] for his and his

friend's lives," *id.* ¶¶ 16–19, failed to give Lindell a *Miranda* warning or advise him of his

right to have a lawyer present during questioning, and failed to tell Lindell about the search

warrant for 25 to 30 minutes into the stop, until after the agents had already questioned

him, *id.* ¶ 22.  Third, Plaintiffs protest the delay in allowing Lindell to call his lawyer.  *Id.*

¶¶ 25–26.  Fourth, Plaintiffs complain that the agents did not allow Lindell to back up the

cellphone when it was seized.  *Id.* ¶ 27.  Finally, Plaintiffs allege harm from the phone

being taken from Lindell.  In particular, Plaintiffs allege that the cellphone is Lindell's

"exclusive method of operating his [five] businesses."  *Id.* ¶¶ 24, 31, 38.  Plaintiffs also

allege that the cellphone contains "attorney-client information" as well as "other

information protected by the First Amendment's freedom of association from disclosure to

Appellate Case: 22-3510     Page: 5     Date Filed: 01/25/2023 Entry ID: 5239142

the Government." *Id.* ¶¶ 32, 38.  And Plaintiffs allege that the cellphone is "programmed to operate Mr. Lindell's hearing aids." *Id.* ¶ 31.

*Procurement and issuance of the search warrant.*  The Government applied for and obtained the warrant on September 7, 2022.  *See* Case No. 22-mj-742 (TNL).  The warrant authorized federal agents to seize a cellphone used by Lindell and owned by MyPillow to obtain "[a]ll records and information . . . that constitute fruits, evidence, or instrumentalities of violations of 18 U.S.C. §§ 1028(a)(7) (identity theft), 1030(a)(5)(A) (intentional damage to a protected computer), and/or 371 (conspiracy to commit identity theft and/or to cause intentional damage to a protected computer)" involving Lindell and other named individuals.  ECF No. 6 at 4; *see* Compl. ¶¶ 11, 29–30.  That same day, Magistrate Judge Tony N. Leung issued an order sealing the search-warrant materials pursuant to the Government's petition.  Case No. 22-mj-742 (TNL), ECF Nos. 1–2 (filed under seal).  I have reviewed the search-warrant materials *in camera*.  *See* ECF No. 67.  That review confirmed the Government's representations regarding the nature of the materials filed in support of the search-warrant application.  The Government's 80-page affidavit describes in considerable detail the nature, scope, and direction of the Government's investigation and includes references to individuals and confidential informants who are not the subject of the warrant, as well as references to recorded communications obtained during the course of the investigation.

## II

*The Complaint.*  Plaintiffs filed their Complaint on September 20, 2022.  The Complaint asserts that the Government violated Lindell's rights under the First, Fourth,

Appellate Case: 22-3510   Page: 6   Date Filed: 01/25/2023 Entry ID: 5239142

and Fifth Amendments to the United States Constitution.[1]  Compl. ¶¶ 1, 41–81 & at 17.  In

Count I, Plaintiffs allege that "the Warrant" violates and chills Lindell's First Amendment

freedoms of association, speech, the press, and to petition the government for the redress

of grievances.  *Id.* ¶¶ 41–54.  Lindell describes various media platforms where he advances

election-fraud theories and claims that the search warrant was "simply another technique

employed by [the Government] to deter [Lindell] and those who act in concert with him

from exercising their [First Amendment rights]."  *Id.* ¶¶ 41–52.  In Count II, Plaintiffs

allege that the "issuance of the Warrant" violated the Fourth Amendment's warrant

provision, which Plaintiffs allege required that a warrant first have been issued to justify

the surveillance of Lindell by cell-site-location information, or a tracking device attached

to his vehicle.  *Id.* ¶¶ 55–58.  In Count III, Plaintiffs assert that the search warrant was an

unconstitutional "general warrant" in violation of the Fourth Amendment because it was

overly broad and because it swept in Lindell's private communications with associates, as

well as his privileged "communications with numerous attorneys over a period of years."

*Id.* ¶¶ 61–62. In Count IV, Plaintiffs assert that the federal agents violated Lindell's Fourth

Amendment rights by restricting his movement while executing the search warrant, and by

initially refusing Lindell's request to call his attorney.  *Id.* ¶¶ 67–76.  Finally, in Count V,

Plaintiffs assert that "the Warrant" violates Lindell's Fifth Amendment rights to due

process because the federal agents withheld material information from the warrant

---

[1]    Though the Complaint includes a passing reference to a Sixth Amendment violation,
no specific counts or allegations advance a claim premised on a Sixth Amendment
violation. *See* Compl. ¶¶ 1, 41–81 & at 17.

Appellate Case: 22-3510     Page: 7     Date Filed: 01/25/2023 Entry ID: 5239142

application, and because they used the warrant to obtain access to data they intend to use for improper purposes; Plaintiffs also allege that the same data could have been gathered through a subpoena the Government also served on Lindell. *Id.* ¶¶ 77–81. In addition, Count V asserts that the Government executed the warrant in an abusive manner. *See id.* ¶ 81. On these grounds, Plaintiffs seek, among other relief: a declaration that the Government's actions violated Lindell's First, Fourth, and Fifth Amendment rights; a declaration that the warrant is invalid; return of the cellphone and any data that may have been accessed; and a copy of the affidavit used to obtain the warrant. *See* Compl. at 17–18.

*The TRO motion.* The day after filing their Complaint, Plaintiffs filed a motion for a temporary restraining order ("TRO") and for return of property pursuant to Fed. R. Civ. P. 41(g). ECF No. 9. The TRO motion sought to have Defendants: "(1) return to Mr. Lindell the cell phone seized from Mr. Lindell on September 13, 2022; (2) cease all attempts to access data stored on the cell phone; and (3) refrain from accessing any information already taken from the cell phone." *Id.* at 1. The TRO motion did not request production of the application materials for the search warrant.

*The TRO motion's denial.* The next day, on September 22, 2022, Plaintiffs' TRO motion was denied "to the extent that it [sought] an *ex parte* temporary restraining order directing Defendants to refrain from accessing or taking any action with respect to the seized cellphone" until a preliminary injunction hearing could be held. ECF No. 14 at 5. When the TRO motion was denied, Plaintiffs had not yet served Defendants with the Complaint, or at least had not filed proof of service. *See id.* at 1. The TRO motion was

Add–6

denied for three reasons: (1) Plaintiffs failed to file an attorney certification under Fed. R. Civ. P. 65(b)(1)(B); (2) Plaintiffs failed to provide any authority to explain why the cellphone's return was appropriate under Fed. R. Civ. P. 41(g), their requested basis for relief; and (3) whether Rule 41(g) required the cellphone's return was "not obvious," especially in light of the factors the Eighth Circuit has set forth to determine suits in equity for pre-indictment motions seeking the return of property. *See* ECF No. 14 at 3–5. Plaintiffs filed returned, executed summonses later that day. ECF Nos. 17–20. On September 23, 2022, a briefing order was issued, and a hearing was scheduled on the motion for October 19, 2022. ECF No. 25. On September 30, 2022, a telephone status conference was held during which the parties agreed to unseal the redacted search warrant that Plaintiffs had filed along with their Complaint.[2] *See* ECF Nos. 33, 10-3.

*Motion to obtain access to the warrant materials.* On October 4, 2022, Plaintiffs filed a motion to obtain access to the warrant materials, along with a separate motion to expedite the hearing on that particular motion. ECF Nos. 36, 42.   In an order dated October 6, 2022, Magistrate Judge Elizabeth Cowan Wright denied the motion to expedite. ECF No. 48. Magistrate Judge Wright found that Plaintiffs had not demonstrated good cause to justify expedited handling of the motion to obtain access to the warrant materials because Plaintiffs waited two weeks after their Complaint and TRO were filed to raise the issue but had not explained their delay. *Id.* at 6–7. Magistrate Judge Wright further ordered

---

[2]     The Government does not concede that the version of the search warrant filed at ECF No. 10-3 is a genuine copy of the search warrant. *See* ECF No. 49 at 18 n.4.

Appellate Case: 22-3510     Page: 9     Date Filed: 01/25/2023 Entry ID: 5239142

Add-7

CASE 0:22-cv-02290-ECT-ECW   Doc. 68   Filed 11/03/22   Page 8 of 36

that the motion to obtain warrant materials would be heard with Plaintiffs' motion for a preliminary injunction. *Id.* at 7–8.

*What's left for decision.* On October 19, 2022, a hearing was held on Plaintiffs' motion to obtain access to warrant materials and Plaintiffs' motion for preliminary injunction. In the motion to obtain access to the warrant materials, Plaintiffs seek essentially a copy of the affidavit filed to obtain the search warrant. *See* Compl. at 17; ECF No. 36. In their motion for a preliminary injunction, Plaintiffs seek return of the cellphone, an order forbidding the Government from further accessing any data stored on the cellphone, and an order prohibiting the Government from accessing any information already taken from the cellphone. ECF No. 9; *see* Compl. at 17; ECF No. 54 at 4. The Government opposes both motions. *See* ECF Nos. 49, 56.

III

First up is the motion to obtain access to the warrant materials. Plaintiffs argue that they are entitled to the warrant application materials based on four different sources of law: the First Amendment, a common law right of access to judicial records, the Fourth Amendment, and Federal Rule of Criminal Procedure 41. On this case's facts, however, none of these sources justify granting Plaintiffs' request for access to the affidavit underlying the warrant.

A

1

The Eighth Circuit has long recognized a qualified First Amendment right of access to documents filed in support of search warrant applications. *See In re Search Warrant for*

8

Appellate Case: 22-3510   Page: 10   Date Filed: 01/25/2023 Entry ID: 5239142

*Secretarial Area Outside Off. of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988) (*Gunn I*). This right is "not absolute"; rather, "documents may be sealed if specific, on the record findings are made demonstrating that [sealing] is essential to preserve higher values and is narrowly tailored to that interest." *Id.* (cleaned up). "The party seeking . . . sealing must show that such a restriction on the first amendment right of public access is necessitated by a compelling interest." *Id.* If a district court decides to seal certain documents, "it must explain why . . . sealing was necessary and why less restrictive alternatives were not appropriate." *Id.*

In *Gunn I*, the Eighth Circuit affirmed the district court's denial of a newspaper's motion for access to materials underlying warrants served on employees of McDonnell Douglas, related to alleged widespread fraud and bribery in the defense industry. *Id.* at 570. The district court determined that unsealing the affidavits "would prejudice the government's ongoing investigation by identifying as-yet-unnamed targets, by revealing the scope, status and direction of the investigation, by affording individuals the opportunity to tailor their testimony and destroy documents and other evidence, and by prematurely disclosing the existence of wiretaps and other investigatory tools." *Id.* at 571. The Eighth Circuit agreed, finding that the Government had demonstrated that "restricting public access to these documents [was] necessitated by a compelling government interest—the ongoing investigation." *Id.* at 574. Of particular note, the Eighth Circuit explained:

> These documents describe in considerable detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved.   Many of the specific allegations in the documents are supported by verbatim excerpts of telephone conversations obtained through

> court-authorized electronic surveillance or information
> obtained from confidential informants or both. There is a
> substantial probability that the government's on-going
> investigation would be severely compromised if the sealed
> documents were released.

*Id.* The Eighth Circuit also affirmed the district court's determination that redaction of these materials was impractical because of the complex nature of the allegations and the number of individuals and activities involved. *Id.* at 571, 575. The upshot is that under *Gunn I*, the Government may overcome the First Amendment right of access if it can demonstrate that a restriction on access is "necessitated by a compelling government interest" and "narrowly tailored" to serve that interest. *Id.* at 574.

2

There is also a well-established common-law right of access to judicial records. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978); *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013). The Supreme Court has explained that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon*, 435 U.S. at 597. "This right of access bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings, and to keep a watchful eye on the workings of public agencies." *IDT*, 709 F.3d at 1222 (citations and quotations omitted). It also "provides a measure of accountability to the public at large, which pays for the courts." *Id.* Like the First Amendment right of access, this common law right of access to inspect and copy judicial records also is "not absolute." *Id.* (quoting *Nixon*, 435 U.S. at 597-98). When the common-law right of access attaches, a court must decide "whether

10

Add–10

there [are] sufficient grounds to override the common-law right of access" that justify sealing the judicial record:

> Where the common-law right of access is implicated, the court must consider the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed.

*IDT*, 709 F.3d at 1223.  The decision whether to provide access is "left to the sound discretion of the trial court . . . in light of the relevant facts and circumstances of the particular case." *Id.* (quoting *Nixon*, 435 U.S. at 599).

In view of these rules, it is clear that the common law right of access provides Plaintiffs with no greater right to access the warrant materials than the right of access under the First Amendment.  *See Webster Groves School Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1374–5 (8th Cir. 1990) (denying press access to proceedings between school district and child who brought a gun to school, stating that "our decision must be the same whether the case is governed by a First Amendment qualified right of access or a common law right of access"); *see also Gunn I*, 855 F.2d at 575 (Bowman, J., concurring) ("[t]he common law right of access to judicial records—a qualified right with the decision as to access left to the sound discretion of the trial court . . . would yield in this case precisely the same result that [the court] ha[s] reached by" the First Amendment right of access).

3

Plaintiffs also point out that some courts have recognized a pre-indictment right to access search warrant materials grounded in the Fourth Amendment and argue that those

decisions should be followed here.  Under this line of cases, some district courts have found "a private 'right of access under the Fourth Amendment to the affidavit in support of the search warrant' during the pre-indictment stage, which vests in the individual or entity whose property was seized."  *Societe d'Equipments Internationaux Nigeria, Ltd. v. Dolarian Capital, Inc.*, No. 15-cv-1553-DAD-SKO, 2016 WL 4191887, at **1–2 (E.D. Cal. Aug. 8, 2016); *see also In re Up North Plastics, Inc.*, 940 F. Supp. 229 (D. Minn. 1996) ("[A] person whose property has been seized pursuant to a search warrant has a right under the Fourth Amendment to inspect and copy the affidavit upon which the warrant was issued."); *In re Offs. & Storage Areas Utilized by Stephen P. Amato, D.C., P.C.*, No. 05-MJ-05-B, 2005 U.S. Dist. LEXIS 6870, at **16–23 (D. Me. Apr. 14, 2005) (holding that Fourth Amendment right that warrants not issue except upon probable cause "implies a right, in a person whose property has been subjected to search and/or seizure pursuant to a warrant, to challenge whether the warrant was in fact predicated on probable cause," which "in turn, implies a right to view the underlying materials that purportedly established probable cause for the search") (citations omitted); *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584, 587–91 (D. Md. 2004) (affirming magistrate judge's determination that Fourth Amendment confers pre-indictment right of access to redacted search warrant affidavit on target of search, where government failed to demonstrate compelling governmental interest in keeping affidavit sealed); *In re Search Warrants Issued on Aug. 29, 1994*, 889 F. Supp. 296, 299 (S.D. Ohio 1995) (holding that Fourth Amendment right to be free of unreasonable searches and seizures includes right to examine the search warrant affidavit after the search has been conducted, absent

government showing of compelling governmental interest and the unavailability of less restrictive means, such as redaction).[3]

Neither the Eighth Circuit nor any district court in the Eighth Circuit has adopted or endorsed *Up North Plastics*, and other courts have rejected a Fourth Amendment right to access search warrant materials. *See In re EyeCare Physicians of Am.*, 100 F.3d 514, 517 (7th Cir. 1996) ("[N]o provision within the Fourth Amendment grants a fundamental right of access to sealed search warrant affidavits before an indictment."); *see also In re Grand Jury Proc.*, 115 F.3d 1240, 1246 (5th Cir. 1997) (following *In re EyeCare*); *In re Search of Fair Fin.*, 692 F.3d 424, 431 (6th Cir. 2012) ("[A]s it relates to warrants, the Fourth Amendment establishes only that the government must obtain one (based on probable cause) before conducting a search. . . . The Fourth Amendment has no bearing on the question of whether documents related to the issuance of search warrants must be made

---

[3]      Plaintiffs' reliance on *United States v. Oliver*, No. 99-4231, 2000 WL 263954, at *2 (4th Cir. Mar. 9, 2000), is misplaced.  According to the underlying criminal docket in that case, Oliver's motion to unseal the affidavit was filed approximately one month after his initial appearance.  *See United States v. Oliver*, 98-cr-304-REP-RCY, ECF Nos. 1, 2, 10 (E.D. Va. Sept. 25, 1998).  After he was convicted, Oliver challenged the district court's denial of Oliver's motion to unseal the search warrant affidavit.  2000 WL 263954, at *1.  The Fourth Circuit affirmed the district court's determination.   The court acknowledged that "a *defendant* is entitled under the Fourth Amendment to examine the affidavit that supports a warrant after the search has been conducted," but also that "this right is not absolute" and may be overridden "when it is shown that precluding access is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at *2 (cleaned up) (emphasis added).  The Fourth Circuit affirmed that a "compelling interest required that the original affidavit be kept under seal" because "release of the full affidavit would jeopardize the Government's ongoing investigation and place the lives of important witnesses in danger." *Id.*  In other words, *Oliver* involved a post-indictment request for access to a warrant-supporting affidavit—we have no indictment here—and it affirmed the denial of that request.

Appellate Case: 22-3510     Page: 15     Date Filed: 01/25/2023 Entry ID: 5239142

available for public inspection."); *see also In re Search of S&S Custom Cycle Shop*, 372 F. Supp. 2d 1048, 1051–52 (S.D. Ohio 2003) (rejecting *Up North Plastics*, explaining that "[t]he better reasoned cases have held that no right to inspect sealed affidavits for search warrants exists under the Constitution or the Criminal Rules, prior to the initiation of a criminal proceeding against the movant").

If it mattered, the better answer would be to follow the cases that reject a Fourth Amendment right to access warrant materials pre-indictment. But it doesn't really matter. Even those district courts that have recognized a Fourth Amendment right to pre-indictment access to search warrant materials have found that this right is "not absolute," and "may be denied where a compelling governmental interest is demonstrated requiring that the materials be kept under seal." *E.g.*, *Societe*, 2016 WL 4191887, at *2; *Up North Plastics*, 299 F. Supp. at 233. "In this regard, it has generally been recognized that in order to prevent the search subject from inspecting the contents of the supporting affidavit, the government must demonstrate to the court that a compelling government interest requires the materials to be kept under seal and that there is no less restrictive means, such as redaction, capable of serving that interest." *Societe*, 2016 WL 4191887, at *2 (collecting cases); *see also Up North Plastics*, 940 F. Supp. at 233 ("Where the government asserts a need to seal the information from the eyes of the person whose property was searched, it must make a specific showing of compelling need and must establish that there is no less restrictive alternative to sealing the records."). In other words, just as with the First Amendment and common-law access rights, a putative Fourth Amendment right must yield in the face of a compelling government interest.

4

Finally, Plaintiffs assert a right to the warrant materials that derives from their right to seek return of property under Federal Rule of Criminal Procedure 41. Plaintiffs again point to *Up North Plastics*, where the court determined that, for a person whose property is seized pursuant to a search warrant to effectively move for return of their property under Rule 41, they must "know the basis upon which the search warrant was issued." 940 F. Supp. at 233. Specifically, the court explained:

> To permit an affidavit or any documents in support of a search warrant to remain sealed against examination by the person whose property was searched deprives him of the right secured by Rule 41 to challenge that search. There is nothing in Rule 41 to suggest that such evidence is to be taken in secret or without a full opportunity for the aggrieved person to argue that probable cause was lacking.

*Id.* Again, however, even the court in *Up North Plastics* recognized that this right is "not absolute." *Id.* The court explained that if "the government can make a showing of a compelling need to keep the contents of the affidavit secret for some reasonable period of time, then the person's right to examine the affidavit must yield." *Id.*

There are three problems with Plaintiffs' Rule 41 argument. First, it is essentially a re-packaging of Plaintiffs' assertion of a Fourth Amendment right. In *Up North Plastics*, the court merely found that the Fourth Amendment right of access was "supported by the terms of [Rule] 41([g])," not that Rule 41(g) conveyed an independent right of access itself. *See id.* Second, any such hypothetical right would yield to the very same compelling Government interest in restricting such access, just as with the First Amendment, common-law, and Fourth Amendment rights Plaintiffs assert. *See id.* Third, Plaintiffs' litigation

conduct seriously undermines their suggestion that access to the warrant materials is necessary here to support their Rule 41(g) return-of-property motion.  Plaintiffs requested the return of their property, purportedly under Rule 41(g), in their motion for a TRO filed some two weeks before moving for access to the search warrant materials.[4]  *See* ECF Nos. 1, 36.

B

Though Plaintiffs have identified four different sources for the right of access, all lead to the same place.  The dispositive question here boils down to determining whether the Government has shown a compelling interest to keep the search warrant materials under seal.

I have carefully reviewed *in camera* the materials filed in support of the search warrant, *see* ECF No. 67, and this review has substantiated the compelling nature of the Government's interest in continued sealing, *see* ECF No. 56 at 8.  The Government has

---

[4]     Plaintiffs also assert that they have a "litigation need to see the affidavit" because they need to "gather evidence to show the necessity for a *Franks* hearing."  ECF No. 38 at 5.  Plaintiffs cite no authority for the proposition that a warrant target can request (or is entitled to) a pre-indictment hearing to set aside a search warrant under *Franks v. Delaware*, and the cases Plaintiffs cite arise in a very different posture.  *See id.* (citing *Z.J. by and through Jones v. Kansas Bd. of Police Commrs.*, 931 F. 3d 672, 686 (8th Cir. 2019) (finding no *Franks* violation in § 1983 action brought by minor traumatized after flash-bang grenade was thrown into her house when SWAT team executed warrant for what they mistakenly believed was a homicide suspect's residence); *United States v. Randle*, 39 F.4th 533, 537 (8th Cir. 2022) (affirming district court's denial of request for *Franks* hearing brought by defendant who conditionally pleaded guilty to offense); *Hartman v. Bowles*, 39 F.4th 544, 546 (8th Cir. 2022) (affirming district court's dismissal of § 1983 claim because detective's omission of information that he did not actually know from a warrant application, even if due to an allegedly reckless investigation, did not give rise to a clearly established *Franks* violation)).

16

Add-16

demonstrated a compelling interest in preventing the premature disclosure of search-warrant materials during its ongoing federal criminal investigation. *See Gunn I*, 855 F.2d at 574 (finding that the Government "demonstrated that restricting public access to these documents is necessitated by a compelling government interest—the on-going investigation."). Multiple factors here justify keeping the search warrant materials under seal. The extensive, 80-page search warrant affidavit describes in considerable detail "the nature, scope, and direction of the government's investigation and the individuals and specific [activities] involved," including information obtained from recorded communications, confidential informants, and cooperating witnesses. *See id.* at 574. Premature disclosure of these materials would significantly undermine the Government's ongoing criminal investigation, giving Plaintiffs (and potentially, other targets of the investigation) a window into the Government's investigation that could compromise the investigation as a whole. In addition, the search warrant materials reveal information about individuals who are not targets of the search warrant. The significant governmental interest in the integrity of an ongoing criminal investigation, as well as the privacy interests of these associated, uncharged individuals, outweigh Plaintiffs' interest in access to these search warrant materials. Moreover, as in *Gunn I*, there is no less restrictive means available. This is because redaction of the detailed, 80-page warrant affidavit is impracticable. The warrant materials are extensive and contain references throughout to numerous individuals and activities, including recordings and statements from individuals who are not targets of the search warrants, all of which reveal the scope and direction of the Government's

Add–17

ongoing investigation.   Under these circumstances, there is no practical way to order redactions.

Plaintiffs say that there is no compelling government interest in restricting their access to these materials for two reasons, but neither of these is persuasive. *See* ECF No. 38 at 6–8. First, Plaintiffs point out that the Government did not strictly comply with Local Rule 49.1 to maintain sealing of these documents. Specifically, Plaintiffs contend that the search warrant materials should be unsealed because the warrant affidavit does not fall under the documents that "must be filed under seal" under Local Rule 49.1(c)(1), and because the Government failed to file a "publicly filed motion that does not disclose the information filed under temporary seal" as prescribed by Local Rule 49.1(d)(1)(A) for documents not listed in Local Rule 49.1(c). *See* ECF No. 38 at 7. Plaintiffs cite no authority for the proposition that the remedy for a violation of this rule is the unsealing of warrant materials. That remedy would seem at least disproportionate and at worst at odds with the recognized constitutional and common-law standards when, as here, the Government has demonstrated a compelling interest in restricting access to those materials. Second, Plaintiffs point to both the public nature of the Government's investigation and the execution of the search warrant, as well as the fact that the subject offenses listed in the warrant do not involve violent or drug-related crime. *See* ECF No. 38 at 7–8. Plaintiffs, however, do not identify any instance of the Government making public the details of this investigation or execution of the search warrant. And they offer no support for their arguments that a warrant's public execution or this case's non-violent, non-drug-related nature trigger disclosure of the sought-after materials.

In sum, restricting access to the search warrant materials will protect the Government's ongoing investigation as well as the interests of untargeted individuals associated with the investigation. Moreover, the absence of a federal indictment against Lindell at this time "weighs heavily in favor of . . . privacy interests and non-disclosure." *Certain Interested Individuals, John Does I-V, Who Are Emps. of McDonnell Douglas Corp. v. Pulitzer Pub. Co.*, 895 F.2d 460, 466 (8th Cir. 1990) (*Gunn II*) ("[T]he pre-indictment status of the government's criminal investigation tips the balance decisively in favor of the privacy interests and against disclosure of even the redacted versions of the search warrant affidavits at this time."). Because the Government has demonstrated a compelling interest in restricting access to the materials, Plaintiffs' motion for access to the search warrant materials will be denied.[5]

---

[5]     One other issue deserves mention. As discussed below, there is "a sound and well-established principle that a court should not exercise its equitable powers to interfere with or enjoin an ongoing criminal investigation when the defendant will have the opportunity to challenge any defects in the prosecution in the trial court or on direct appeal." *Manafort v. U.S. Dep't of Just.*, 311 F. Supp. 3d 22, 30 (D.D.C. 2018); *see also Deaver v. Seymour*, 822 F.2d 66, 70 (D.D.C. 1987). The Federal Rules of Criminal Procedure provide an avenue for a criminal defendant to bring a motion that raises "defect[s] in instituting the prosecution" after indictment, but before trial, *see* Fed. R. Crim. P. 12(b)(3)(A). *See Deaver*, 822 F.2d at 70 (holding that "Rule 12(b)(1) [now (b)(3)] of the Federal Rules of Criminal Procedure permits any defendant to raise by motion, after indictment but before trial, a defense based on 'defects in the institution of the prosecution.'"). Plaintiffs will have "a federal forum in which to assert their defenses—including those based on the Constitution" in the event that they, or either of them, are indicted in federal court. Their attempt to receive pre-indictment access to the search warrant materials is essentially an impermissible effort to use a federal civil injunction to direct and restrain the natural course of the ongoing federal criminal investigation. *See Deaver*, 822 F.2d at 69–70 ("Deaver's challenge is essentially that—a contention that there would be a constitutional defect in the institution of any prosecution growing out of the independent counsel's investigation. By implication, the existence of Rule 12(b)(1) suggests that appellant's constitutional challenge is not to be raised in a preindictment civil injunctive action.").

IV

Next up is Plaintiffs' motion for a preliminary injunction and return of property. ECF No. 9. In this motion, Plaintiffs seek return of the cellphone seized from Lindell and to enjoin the Government from accessing any data stored on the cellphone or information already retrieved from the cellphone.

A

A preliminary injunction is an "extraordinary remedy." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008); *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). "In deciding whether to issue a preliminary injunction, the district court considers four factors: '(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest.'" *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). The core question is whether the equities "so favor[] the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. "The burden of establishing the four factors lies with the party seeking injunctive relief." *CPI Card Grp., Inc. v. Dwyer*, 294 F. Supp. 3d 791, 807 (D. Minn. 2018) (citing *Watkins*, 346 F.3d at 844). Here, Plaintiffs have not met their burden to warrant such extraordinary injunctive relief because they cannot demonstrate a likelihood of success on the merits of their claims for return of property under Fed. R. Crim. P. 41(g), or on their freestanding constitutional claims.

20

Add-20

B

"While no single factor is determinative, the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citations and internal quotation marks omitted); *Sleep No. Corp.*, 33 F.4th at 1016.  Although this factor uses the term "probability," the movant need not show a greater than fifty percent likelihood of success. *Dwyer*, 294 F. Supp. 3d at 807.  "[T]he absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied." *CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009).

1

First, Plaintiffs are unlikely to succeed on the merits of their claim for return of property brought pursuant to Fed. R. Crim. P. 41(g).  Rule 41(g) provides:

> **Motion to Return Property.**  A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return.  The motion must be filed in the district where the property was seized.  The court must receive evidence on any factual issue necessary to decide the motion.  If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g).  A motion for return of property brought "prior to the filing of criminal charges, is more properly considered a suit in equity rather than one under the Rules of Criminal Procedure." *Black Hills Inst. of Geol. Rsch. v. U.S. Dept. of Just.*, 967 F.2d 1237, 1239 (8th Cir. 1992).  In such circumstances, an independent cause of action exists for the return of the property "based on the general equitable jurisdiction of the federal courts." *Id.*; *accord Wilansky v. United States*, 326 F. Supp. 3d 784, 790 (D. Minn.

Add-21

Appellate Case: 22-3510     Page: 23     Date Filed: 01/25/2023 Entry ID: 5239142

2018); *see also In re Search of 4801 Fyler Ave.*, 879 F.2d 385, 389 (8th Cir. 1989). But a district court's exercise of such "anomalous jurisdiction" is proper only upon a showing of (a) callous disregard of constitutional rights; (b) irreparable injury if relief is not granted; (c) lack of an adequate remedy at law; and (d) an individual interest in and need for the property. *4801 Fyler Ave.*, 879 F.2d at 387; *Black Hills Inst.*, 967 F.2d at 1239–41. "This remedy should be exercised cautiously and subject to general equitable principles." *Black Hills Inst.*, 967 F.2d at 1239 (citations omitted); *see also 4801 Fyler Ave.*, 879 F.2d at 389 ("These remedies are extraordinary, and they must be used with restraint."). The burden is on the movant to demonstrate that the relative factors are satisfied. *Wilansky*, 326 F. Supp. 3d at 790 (citing *4801 Fyler Ave.*, 967 F.2d at 1240). As Plaintiffs have not met their burden in establishing that the first, second, and third factors are satisfied, the Court will not exercise its equitable jurisdiction over the Rule 41(g) motion.

a

Plaintiffs have not demonstrated that the Government acted in callous disregard of their constitutional rights, "the 'foremost consideration' in determining whether a court should exercise its equitable jurisdiction." *See Trump v. United States*, No. 22-13005, 2022 WL 4366684, at *7 (11th Cir. Sept. 21, 2022), *motion to vacate stay denied*, --- S. Ct. ---, 2022 WL 7255980 (Oct. 13, 2022). Plaintiffs assert that the Government violated their rights under the First, Fourth, and Fifth Amendments. Each is addressed in turn.

i

"The Fourth Amendment requires that search warrants be issued only 'upon probable cause, supported by Oath or affirmation, and particularly describing the place to

22

be searched, and the persons or things to be seized.'" *Dalia v. U.S.*, 441 U.S. 238, 255 (1979). The Supreme Court has distilled this into three requirements: (1) "warrants must be issued by neutral, disinterested magistrates"; (2) "those seeking the warrant must demonstrate to the magistrate their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense"; and (3) the warrant must "particularly describe the things to be seized, as well as the place to be searched." *Id.* (quotations omitted).

All of these elements are present on this record. The federal agents who seized the cellphone first obtained a warrant from a detached and neutral United States Magistrate Judge, who reviewed a sworn affidavit and determined that there was probable cause to search the cellphone for evidence related to the three specified crimes—evidence that was identified with particularity in the warrant. *See* ECF No. 10-3 Ex. 1 (Warrant). Magistrate Judge Leung then decided that the affidavit "establish[ed] probable cause to search and seize the person or property" described. *Id.* Relying on that search warrant, the agents responsible for its execution acted in objective good faith, rather than with callous disregard. *See 4801 Fyler Ave.*, 879 F.2d at 388 (citing *United States v. Leon*, 468 U.S. 897, 923-25 (1984). Here, as in *4801 Fyler Ave.*, "[i]n view of the agents' efforts to comply with the warrant requirement, and the [magistrate] judge's approval of the search, we cannot say that [Lindell's] rights were callously disregarded . . . ." *Id.*

There also is no evidence that there was "callous disregard in the methods utilized in the search." *Id.* Lindell has acknowledged that the agents acted professionally and courteously during the execution of the warrant, and that he was never placed under arrest.

Appellate Case: 22-3510   Page: 25   Date Filed: 01/25/2023 Entry ID: 5239142

*See* ECF No. 50 Ex. 1 at 14:31–50, 13:14–25. And any brief detention of Lindell incident to the search was appropriate. *See Muehler v. Mena*, 544 U.S. 93, 98 (2005) ("An officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" (quoting *Michigan v. Summers*, 452 U.S. 692, 705 n.19 (1981)).

Finally, the search warrant was not an unconstitutional "general warrant," as Plaintiffs argue. *See* ECF No. 10 at 8–11. The warrant here specified the three offenses, specified the person (Lindell) and place (Plaintiffs' cellphone) to be searched, and the Government is following the familiar two-step process of Rule 41 to search the phone.[6] Contrary to Plaintiffs' arguments, the Eighth Circuit has declined to demand "hypertechnical" search strategies in order to comply with the Fourth Amendment. *See United States v. Cartier*, 543 F.3d 442, 447–48 (8th Cir. 2008) (holding that the "standard

---

[6]      Fed. R. Crim. P. 41(e)(2)(B) provides for a two-step process for the search and seizure of electronic storage media, as follows:

> **Warrant Seeking Electronically Stored Information.** A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.

Fed. R. Crim. P. 41(e)(2)(B). This allows officers to "seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant." *See United States v. Beckmann*, 786 F.3d 672, 680 n.6 (8th Cir. 2015) (quoting Fed. R. Crim. P. 41 Advisory Committee's Note on the 2009 Amendments).

Add–24

Appellate Case: 22-3510     Page: 26     Date Filed: 01/25/2023 Entry ID: 5239142

used to gauge the particularity requirement of a search warrant is one of 'practical accuracy' rather than a hypertechnical one," and "[w]hile we acknowledge that there may be times that a search methodology or strategy may be useful or necessary, we decline to make a blanket finding that the absence of a search methodology or strategy renders a search warrant invalid per se."). Plaintiffs have not shown, and are not likely to show, a Fourth Amendment violation.

ii

Plaintiffs generally argue that "the Warrant" violates Lindell's exercise of his First Amendment rights, including his rights to free speech and political expression, association, press, and his right to petition the government for the redress of grievances. ECF No. 10 at 8. Plaintiffs' only specific argument is that enforcement of the warrant "would inhibit and deter Mr. Lindell and his associates from continuing their public-interest First Amendment activity." *Id.*; *see also* ECF No. 54 at 13–14 (arguing that "the Warrant was executed as part of a systematic effort to intimidate Mr. Lindell and those who share his beliefs and have associated with him from exercising their First Amendment rights to express concern about the integrity of our voting system").[7] This is not like cases Plaintiffs cite involving the indiscriminate collection of charities' donor information, or member records of groups engaged in advocacy activities, amid threats of reprisal or violence for the members' or donors' affiliation. *See Americans for Prosperity Found. v. Bonta*, 141

---

[7]   Plaintiffs may only assert their own First Amendment rights—not the rights of unnamed associates who are not party to these proceedings. *See Tileston v. Ullman*, 318 U.S. 44, 46 (1943) (holding doctor had no standing to adjudicate his patients' constitutional rights, "which they do not assert on their own behalf").

Add–25

S.Ct. 2373, 2380, 2386 (2021); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460–62 (1958); *NAACP v. Button*, 371 U.S. 415, 430–31 (1963). At best, Plaintiffs allege that the Attorney General "threatened criminal and civil actions against those who pursue audits of voting tabulations *if those audits run afoul of federal laws*." Compl. ¶ 49 (emphasis added). This is not the Government threatening retaliation for speech or affiliation. It is the Government threatening criminal actions against people who are alleged to have violated federal law in their efforts to pursue audits of voting tabulations. Plaintiffs provide no support for their argument that the Government's interest in seizing and searching a cellphone pursuant to a judicially authorized warrant, obtained within the bounds of the Fourth Amendment, must yield to a search-warrant target's First Amendment right to associate.

iii

In Count V, Plaintiffs allege that the Government withheld information from the Magistrate Judge when it applied for the search warrant in violation of the Fifth Amendment's due process clause. Compl. ¶¶ 77–81; ECF No. 10 at 12. In briefing, Plaintiffs point to "[t]wo cyber expert reports" attached to their motion papers regarding forensic images of Mesa County, Colorado election system computers, along with several other matters that Plaintiffs believe "should have been presented in the [w]arrant application." ECF No. 10 at 12–13; *see also* ECF No. 54 at 12 (arguing that "if the Government had disclosed to the Magistrate Judge critical facts about the Colorado [voting] investigation . . . the Warrant would never have been issued").

26

Though Plaintiffs rely on the Fifth Amendment in Count V and do not cite the Fourth Amendment, it appears that they seek to show essentially a Fourth Amendment *Franks* violation.[8] *See Z. J. by and through Jones v. Kansas City Bd. of Police Commrs.*, 931 F.3d 672, 686 (8th Cir. 2019). Construed this way, the specific information that Plaintiffs have alleged does not meet the *Franks* standard. Proving a *Franks* violation based on the omission of material from a search warrant application requires Plaintiffs to show: "1) that facts were omitted with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading, and 2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *Id.* at 686 (quoting *Williams v. City of Alexander*, 772 F.3d 1307, 1312 (8th Cir. 2014); *United States v. Box*, 193 F.3d 1032, 1035 (8th Cir. 1999)).

Plaintiffs do not provide any allegations or information suggesting that the Government omitted information from the search warrant application with the intent to

---

[8]    The Eighth Circuit has described the basis for a *Franks* violation as follows:

> The U.S. Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and requires that warrants shall be supported by probable cause. U.S. Const. amend. IV. "A warrant based upon an affidavit containing 'deliberate falsehood' or 'reckless disregard for the truth' " — including . . . material omissions of fact — "violates the Fourth Amendment."

*Z.J. by and through Jones v. Kansas City Bd. of Police Commrs.*, 931 F.3d 672, 686 (8th Cir. 2019) (quoting *Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996); *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *see also Morris v. Lanpher*, 563 F.3d 399, 402–04 (8th Cir. 2009) (analyzing *Franks* claim involving alleged falsehoods and omissions)).

make, or in reckless disregard of whether the omissions would make, the affidavit misleading.   Nor do they provide any indication that the allegedly omitted information would not support a finding of probable cause.   Plaintiffs are thus unlikely to succeed on their claim that the Government withheld information from the search warrant, pleaded as a Fifth Amendment violation.

b

Plaintiffs will not suffer an irreparable injury if the cellphone is not returned to them. As in other contexts, "irreparable harm must be actual and not theoretical, and it must be certain and great and of such imminence that there is a clear and present need for equitable relief."  *Wilansky*, 326 F. Supp. 3d at 792 (internal quotations omitted) (citing *Brady v. Nat'l Football League*, 640 F.3d 785, 794 (8th Cir. 2011); *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011)).

Plaintiffs' argument in support of irreparable injury is that "[t]he violation of [their] constitutional rights, including [their] First and Fourth Amendment rights, constitute an immediate and irreparable injury" requiring injunctive relief.  ECF No. 10 at 14.  True, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971)).  But it has already been determined that Plaintiffs are unlikely to show a violation of their First (and Fourth and Fifth) Amendment rights.

Plaintiffs raise other assertions of irreparable injury.   They assert that the Government may not have access to Lindell's "privileged and constitutionally protected

28

Appellate Case: 22-3510     Page: 30     Date Filed: 01/25/2023 Entry ID: 5239142

communications" unless they are properly segregated from disclosure. ECF No. 10 at 2, 4; ECF No. 54 at 24. And Plaintiffs contend that Lindell "operate[s] five businesses" from his cellphone and that his businesses and health will be adversely affected by an inability to use his cellphone. Compl. ¶¶ 24, 81; ECF No. 10 at 3. These assertions are not persuasive. Lindell himself has admitted that the contents of his cellphone were backed up only days before the warrant was executed. *See* Lindell Decl. [ECF No. 10-4] Ex. 2 ¶ 11. He thus should have access via backup to all but a few days' worth of business information. Moreover, Lindell's "[s]imple unsupported allegations of business disruption or speculations as to future harm are not sufficient to establish irreparable injury." *4801 Fyler Ave.*, 879 F.2d at 388. As to his general claims of attorney-client privilege, the Government has implemented filter protocols to safeguard any attorney-client privileged materials that may exist on the cellphone, in order to segregate them from review by the investigated team. *See* ECF No. 49 at 3, 8, 25. Thus, "[a]s real as [any] potential harm may be," this is not the type of "irreparable injury that warrants bypassing the normal procedures for challenging the constitutionality of searches by resorting to [extraordinary] equitable remedies." *4801 Fyler Ave.*, 879 F.2d at 389.

c

Plaintiffs have an adequate remedy at law. If criminal proceedings are instituted against him, Lindell will have an adequate remedy to challenge the search, such as filing a motion to suppress any purportedly improperly seized evidence. *See 4801 Fyler Ave.*, 879 F.2d at 389; *Wilansky*, 326 F. Supp. 3d at 793 ("The Eighth Circuit has recognized that, in most situations, the remedy of a post-indictment motion to suppress is an adequate

29

remedy."). And unless the cellphone is subject to forfeiture, Plaintiffs will have access to the seized cellphone once any criminal proceedings conclude. *See United States v. Willson*, 8 F. App'x 593, 594 (8th Cir. 2001) ("After criminal proceedings have concluded, seized property should be returned to its owner unless it is 'subject to forfeiture.'"); *see also United States v. Christie*, 717 F.3d 1156, 1167 (10th Cir. 2013) ("After the government executed its first search warrant and found incriminating evidence, it was presumptively entitled to retain the computer through trial. '[T]he general rule is that' lawfully seized property bearing evidence relevant to trial 'should be returned to its rightful owner once the criminal proceedings have terminated,' not before.").

d

Finally, when deciding whether to exercise equitable jurisdiction over a claim for the return of seized property, the Court may consider "whether the party seeking return has an individual interest in and need for the property." *See Black Hills Inst.*, 967 F.2d at 1240. This is the only factor that somewhat favors Plaintiffs. Plaintiffs have both an ownership and possessory interest in the cellphone. And Plaintiffs have an interest in any private information the cellphone may hold. This factor alone, however, is not sufficient to support the exercise of equitable jurisdiction here.

The bottom line is that Plaintiffs have not met their burden to demonstrate that the Court should exercise equitable jurisdiction, and Plaintiffs' request for return of the cellphone pursuant to Fed. R. Crim P. 41(g) will be denied.

Add-30

2

Plaintiffs also are unlikely to succeed on the merits of their free-standing constitutional claims. Plaintiffs raise five free-standing constitutional claims, coupled with their Rule 41(g) request for return of the cellphone. Rule 41(g) permits a court to "return property to the movant," but it does not clearly authorize declaratory relief. *See United States v. Thomason*, No. 19-cr-05 (ECT/SER), 2020 WL 7041754, at \*5 (D. Minn. Dec. 1, 2020). Plaintiffs have not brought a motion to suppress evidence, nor could they, in the absence of a criminal indictment. And Plaintiffs have not stated claims under any other overarching legal theory that would allow them to vindicate their constitutional rights. For instance, Plaintiffs' claims do not fall within the statutory ambit of § 1983 because they are not against state actors; nor do Plaintiffs mention a *Bivens* action, but even if they did, that would have no traction here at least for the reason that Plaintiffs do not seek damages.[9] Plaintiffs' freestanding constitutional claims are not likely to succeed because of the familiar principle that "a party cannot assert a direct cause of action for a constitutional violation." *See Sanvee v. Hennepin Cnty. Hum. Servs.*, No. 10-cv-527 (RHK/JSM), 2012

---

[9]   *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971) (holding that "petitioner's complaint states a cause of action under the Fourth Amendment," entitling petitioner "to recover money damages for any injuries he has suffered as a result of the agents' violation of the Amendment."). Even so, the Supreme Court has "emphasized that recognizing a cause of action under *Bivens* is a 'disfavored judicial activity,'" and declined outright to extend it to numerous alleged Constitutional violations. *See Egbert v. Boule*, 142 S.Ct. 1793, 1803 (2022) (quoting *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017)); *id.* at 1809 (declining to extend *Bivens* to Fourth Amendment excessive-force claim and First Amendment retaliation claims); *see also id.* at 1799–1800 (collecting 11 other cases where Supreme Court has declined to imply a *Bivens* action for other alleged constitutional violations).

31

Add-31

WL 4128388, at *14 (D. Minn. Aug. 13, 2012), *R. & R. adopted*, 2012 WL 4120507 (D. Minn. Sept. 19, 2012), *aff'd*, 598 F. App'x 475 (8th Cir. 2015) (citing cases).  Plaintiffs cannot be said to succeed on claims that would not withstand a motion to dismiss.  *See Sanvee*, 2012 WL 4128388, at *14 (dismissing with prejudice stand-alone claims for Thirteenth and Fourteenth Amendment violations).

3

Plaintiffs cannot show a likelihood of success on the merits of their claims for another important reason—that Plaintiffs impermissibly seek to rely on this Court's equitable jurisdiction to enjoin a federal criminal investigation.  "It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions."  ECF No. 14 at 4 (quoting *Trump*, 2022 WL 4366684, at *9).  The Government aptly points to *Younger v. Harris*, in which the Supreme Court stated that it is a "basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."  401 U.S. 37, 43–44 (1971).  *Younger* involved a federal civil suit seeking to disrupt a state criminal proceeding, but courts have extended *Younger* to prohibit federal court intervention in federal investigations and criminal proceedings.  *See Deaver v. Seymour*, 822 F.2d 66, 69–71 (D.C. Cir. 1987) (affirming trial court's denial of preliminary injunction in federal civil suit sought to halt alleged investigation under Federal Ethics in Government Act, citing *Younger*); *Manafort*, 311 F. Supp. 3d. at 26 ("[A] civil case is not the appropriate vehicle for taking issue with what a prosecutor has done in the past or where he might be headed in the future.  It is a sound

32

and well-established principle that a court should not exercise its equitable powers to interfere with or enjoin an ongoing criminal investigation when the defendant will have the opportunity to challenge any defects in the prosecution in the trial court or on direct appeal."); *Broussard v. Hollenhorst*, No. 22-cv-0342 (SRN/ECW), 2022 WL 748470, at *5 (D. Minn. Mar. 11, 2022) (dismissing plaintiff's complaint to extent it sought to enjoin federal criminal prosecution), *aff'd*, No. 22-1774, 2022 WL 10557060 (8th Cir. Sept. 9, 2022). Here, as described above, Plaintiffs have an adequate remedy at law. They cannot use their civil suit to enjoin the federal criminal investigation.[10]

There are no "extraordinary circumstances" warranting an exception to application of this abstention principle. This case does not present the typical exception, where Plaintiffs are challenging their prosecution for violating a speech-restricting criminal statute. *Cf. United States v. Stone*, 394 F. Supp. 3d 1, 15 (D.D.C. 2019).[11] Rather, Plaintiffs

---

[10]    Plaintiffs argue that they do not seek to enjoin the criminal investigation. Not so. Plaintiffs seek three forms of relief in their motion: "that Defendants (1) return . . . the cellphone seized from Mr. Lindell on September 13, 2022; (2) cease all attempts to access data stored on the cell phone; and (3) refrain from accessing any information already taken from the cell phone." *See* ECF No. 54 at 4; ECF No. 9 at 1. Plainly, Plaintiffs seek to stop the criminal investigation into the contents of Lindell's cellphone. It's difficult to understand how that would not enjoin the criminal investigation to some significant degree.

[11]    The cases cited by Plaintiffs in support of their position that *Younger* abstention is not applicable to a pre-indictment motion for injunctive relief are not on point. *See* ECF No. 65. *In re Grand Jury Proceedings*, 716 F.2d 493, 500 (8th Cir. 1983), involved a request for return of property under Fed. R. Crim. P. 41(e) (now 41(g)), not a free-standing constitutional claim, where the affidavit at issue was "largely a broad, boilerplate statement" that "set[] forth no basis whatsoever" for the suspected criminal activity. *Xcentric Ventures v. Smith*, No. C15-4008-MWB, 2015 WL 4940812, at *1 (N.D. Iowa Aug. 19, 2015), *R. & R. adopted*, 2015 WL 5184114 (Sept. 4, 2015), was a § 1983 action involving allegations that a county attorney misused his powers as a prosecutor in retaliation for published comments that were critical of him, and the requested injunction

Appellate Case: 22-3510    Page: 35    Date Filed: 01/25/2023 Entry ID: 5239142

allege that the warrant itself violates the First Amendment because it may chill Lindell's associates' willingness to communicate their views. *See* Compl. ¶¶ 41–54; Lindell Decl. ¶ 26. But any collateral effect this may have could apply to any criminal investigation or proceeding. Besides, "[r]elevant extraordinary circumstances do not exist where a defendant has the ability to present a defense in his or her criminal prosecution." *Broussard*, 2022 WL 748470, at *6 (citations omitted). Plaintiffs cannot use this civil action to collaterally attack the criminal investigation.

## C

Irreparable harm "occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). "The movant must show that 'irreparable injury is *likely* in the absence of an injunction,['] not merely a 'possibility' of irreparable harm before a decision on the merits can be rendered." *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022) (quoting *Winter*, 555 U.S. at 20). "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins*, 346 F.3d at 844; *see also Gamble v. Minn. State*

---

only prohibited prosecution of state criminal charges of that particular county attorney. *Lambert v. Polk Cnty., Iowa*, 723 F. Supp. 128, 135 (S.D. Iowa 1989), involved the return of a *copy* of a videotape of a fatal street fight to a disinterested third party who filmed it. And *Entergy Arkansas, Inc. v. Nebraska*, 210 F.3d 887, 899 (8th Cir. 2000), involving a state's delay and wrongful denial of a license for a radioactive waste disposal facility in violation of a multi-state compact, recognized that the deference owed to ongoing state administrative proceedings "does not apply if they are used to harass or discourage the exercise of a federal right." But this does not apply here, where there are no plausible allegations of "abuse of the legal process, either to further a forbidden purpose or to discriminate against a particular group." *Id.*

Appellate Case: 22-3510     Page: 36     Date Filed: 01/25/2023 Entry ID: 5239142

*Indus.*, No. 16-cv-2720 (JRT/KMM), 2017 WL 6611570, at *2 (D. Minn. Dec. 1, 2017) (collecting cases). For the same reasons discussed above, Plaintiffs cannot establish irreparable harm.

D

The final two *Dataphase* factors also do not change things. The balance-of-harms factor "involves assessing the harm the movant would suffer absent an injunction, as well as the harm the other parties would experience if the injunction issued." *Prairie Field Servs., LLC v. Welsh*, 497 F. Supp. 3d 381, 404 (D. Minn. 2020) (internal quotations omitted). This factor and the public interest factor "merge" when a plaintiff seeks relief against the Government. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Against Plaintiffs' unsupported allegations of constitutional violations and conclusory assertions of harm, the Government has a significant interest in effective law enforcement and prompt resolution of criminal matters. These interests would be harmed significantly, and criminal investigations and proceedings would be delayed, if litigants were allowed to use civil litigation to collaterally attack ongoing criminal investigations and proceedings. These final two factors thus favor the Government.

Appellate Case: 22-3510     Page: 37     Date Filed: 01/25/2023 Entry ID: 5239142

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS**

**ORDERED THAT:**

1.  Plaintiffs' Motion to Obtain Access to Warrant Application Materials [ECF

No. 36] is **DENIED.**

2.  Plaintiffs' Motion for a Preliminary Injunction and for Return of Property

[ECF No. 9] is **DENIED.**

### **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  November 3, 2022                    s/ Eric C. Tostrud
                                            Eric C. Tostrud
                                            United States District Court

Add-36