No. 22-3510

# In the United States Court of Appeals for the Eighth Circuit

―――――――――――

**MICHAEL J. LINDELL and MYPILLOW, INC.,**

**Plaintiffs-Appellants,**

**v.**

**UNITED STATES OF AMERICA;**
**MERRICK B. GARLAND, United States Attorney General;**
**the UNITED STATES ATTORNEY FOR THE DISTRICT OF MINNESOTA;**
**and CHRISTOPHER WRAY, Director of the Federal Bureau of Investigation,**

**Defendants-Appellees.**

―――――――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MINNESOTA, D. CT. NO. 0:22-CV-2290 (HON. ERIC C. TOSTRUD)

―――――――――――

## APPELLEES' RESPONSE BRIEF

―――――――――――

KENNETH A. POLITE, JR.
  Assistant Attorney General

LISA H. MILLER
  Deputy Assistant Attorney General

JONATHAN E. JACOBSON
  Attorney, Public Integrity Section

FRANK LIN
  Attorney, Computer Crime and
    Intellectual Property Section

JOSHUA K. HANDELL
  Attorney, Appellate Section
  Criminal Division, Ste. 1515
  United States Department of Justice
  950 Pennsylvania Avenue N.W.
  Washington, DC 20530
  (202) 305-4244
  joshua.handell@usdoj.gov

## SUMMARY OF THE CASE AND
## STATEMENT RESPECTING ORAL ARGUMENT

In September 2022, federal agents seized plaintiff-appellant Michael Lindell's cell phone while executing a warranted search. A week later, Lindell and his business, co-plaintiff-appellant MyPillow, Inc., filed a civil complaint in the District of Minnesota alleging various violations of the First, Fourth, and Fifth Amendments. Lindell and MyPillow (collectively, "Lindell") thereafter sought (1) access to application materials underlying the warrant, (2) an order requiring the government to immediately relinquish Lindell's cell phone, and (3) a preliminary injunction circumscribing future investigative efforts and prohibiting the government from using certain information it had already gathered. In November, the district court (Tostrud, J.) denied Lindell's motions.

On appeal, Lindell renews his requests for an injunction halting an ongoing federal criminal investigation and for the return of evidence seized (pursuant to a warrant) as part of that investigation. In effect, Lindell is urging this Court to "write a rule that allows any subject of a search warrant to block government investigations after the execution of the warrant"—a rule that would represent "a radical reordering of [this Court's] caselaw limiting the federal courts' involvement in criminal investigations" and "violate bedrock separation-of-powers limitations." *Trump* v. *United States*, 54 F.4th 689, 701 (11th Cir. 2022). In the government's view, that extraordinary demand can be denied on the papers. We defer, however, to the Court's judgment as to whether oral argument would aid its decisional process.

Appellate Case: 22-3510     Page: 2     Date Filed: 03/15/2023 Entry ID: 5255159

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND STATEMENT RESPECTING ORAL ARGUMENT ............................................................................................i

TABLE OF CONTENTS ...................................................................................ii

TABLE OF AUTHORITIES ..............................................................................v

STATEMENT OF THE ISSUES .........................................................................1

STATEMENT OF THE CASE ............................................................................1

    A.    Factual Background ..........................................................................2

    B.    Procedural History ...........................................................................3

SUMMARY OF ARGUMENT ...........................................................................5

ARGUMENT ...................................................................................................7

    I.    The District Court Appropriately Denied Lindell's Extraordinary Request to Preliminarily Enjoin an Ongoing Federal Criminal Investigation. .........................................................................................7

    A.    Standard of Review ..........................................................................8

    B.    Pursuant to *Younger*, Lindell Cannot Use a Civil Action to Collaterally Attack an Ongoing Criminal Investigation. ..................9

        1.    Since *Younger*, Federal Courts Have Consistently Declined to Enjoin Ongoing Criminal Investigations and Prosecutions. ................................................................10

        2.    Because Lindell Will Have an Adequate Federal Forum to Raise Any Defects in the Institution of a Future Prosecution, the Present Litigation Falls Squarely Within the *Younger* Rule. .........................................12

        3.    No Exception Permits Pre-Indictment Equitable Relief Here. ............................................................................14

Appellate Case: 22-3510    Page: 3    Date Filed: 03/15/2023 Entry ID: 5255159

a.     Lindell Does Not Challenge the Constitutionality of Any Criminal Statute. ...............14

b.     As the District Court Correctly Determined, Lindell Has Not Plausibly Alleged—Much Less Established—That the Investigation Is Retaliatory. .................................................17

     i.     Lindell's Reliance on *Lewellen* Is Misplaced............................................17

     ii.     Lindell's Counterarguments Are Unpersuasive.......................................20

C.     Lindell Has Not Demonstrated a Likelihood of Prevailing on the Merits of Any of His Claims....................................23

    1.     The Warrant Complies with the Fourth Amendment.........24

     a.     Because Lindell Does Not Dispute That the Warrant Complies with Rule 41, He Has No Likelihood of Success on His Fourth Amendment Claim. ......................................27

     b.     The Government's Filter-Team Protocol Obviates Lindell's Stated Concerns with the Scope of Its Review, and He Is Not Entitled to Additional Unspecified "Procedural Safeguards." .................................................31

    2.     The Seizure of Lindell's Cell Phone Did Not Violate His First Amendment Rights...................................35

D.     The Remaining Preliminary-Injunction Factors Likewise Foreclose Relief. ..................................................38

    1.     Lindell Has Not Established That He Will Suffer Irreparable Injury Absent the Issuance of an Injunction. .................................................38

    2.     The Balance of Equities and the Public Interest Strongly Favor the Government.............................40

Appellate Case: 22-3510     Page: 4     Date Filed: 03/15/2023     Entry ID: 5255159

II.    The District Court Correctly Denied Lindell's Motion for the Return of Property Seized Pursuant to a Judicially Authorized Warrant and Relevant to an Ongoing Investigation..................................41

      A.    Standard of Review ..............................................................42

      B.    Lindell Has Not Demonstrated a Callous Disregard of His Constitutional Rights. ......................................................43

      C.    The Other Factors Also Favor the Government. ...........................45

CONCLUSION ....................................................................................48

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

Appellate Case: 22-3510    Page: 5    Date Filed: 03/15/2023 Entry ID: 5255159

# TABLE OF AUTHORITIES

**Cases**

*Alma Motor Co.* v. *Timken-Detroit Axle Co.*,
   329 U.S. 129 (1946)....................................................................................24

*Andresen* v. *Maryland*,
   427 U.S. 463 (1976)....................................................................................31

*Barnes* v. *Dormire*,
   251 F.3d 767 (8th Cir. 2001) .....................................................................40

*Black Hills Inst. of Geological Rsch.* v. *U.S. Dep't of Just.*,
   967 F.2d 1237 (8th Cir. 1992) ...............................................................41, 42

*Bordenkircher* v. *Hayes*,
   434 U.S. 357 (1978)....................................................................................21

*Broussard* v. *Hollenhorst*,
   No. 22-cv-0342, 2022 WL 748470 (D. Minn. Mar. 11, 2022), aff'd,
   No. 22-1774, 2022 WL 10557060 (8th Cir. Sept. 9, 2022) ...................11, 14

*CDI Energy Servs.* v. *W. River Pumps, Inc.*,
   567 F.3d 398 (8th Cir. 2009) .....................................................................24

*Ceglia* v. *Zuckerberg*,
   600 F. App'x 34 (2d Cir. 2015) ..................................................................12

*Cobbledick* v. *United States*,
   309 U.S. 323 (1940)....................................................................................40

*Dalia* v. *United States*,
   441 U.S. 238 (1979)................................................................................25, 32

*Dataphase Sys., Inc.* v. *C L Sys., Inc.*,
   640 F.2d 109 (8th Cir. 1981) .......................................................................7

*Deaver* v. *Seymour*,
   822 F.2d 66 (D.C. Cir. 1987) ..................................................1, 9-14, 37, 46

Appellate Case: 22-3510     Page: 6     Date Filed: 03/15/2023 Entry ID: 5255159

*Deaver* v. *United States*,
483 U.S. 1301 (1987) ................................................................11

*Dombrowski* v. *Pfister*,
380 U.S. 479 (1965)............................................................. 15, 16

*Douglas* v. *City of Jeannette*,
319 U.S. 157 (1943)...................................................................8

*Gen. Motors Corp.* v. *Harry Brown's, LLC*,
563 F.3d 312 (8th Cir. 2009) ......................................................7

*Gordon* v. *Warren Consol. Bd. of Educ.*,
706 F.2d 778 (6th Cir. 1983) ....................................................36

*Guest* v. *Leis*,
255 F.3d 325 (6th Cir. 2001) ....................................................29

*Home Instead, Inc.* v. *Florance*,
721 F.3d 494 (8th Cir. 2013) ....................................................24

*In re Al-Nashiri*,
835 F.3d 110 (D.C. Cir. 2016) ..................................................11

*In re Grand Jury Subpoenas*,
454 F.3d 511 (6th Cir. 2006) ............................................... 33, 34

*In re Sealed Case*,
829 F.2d 50 (D.C. Cir. 1987) ...................................................13

*In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*,
11 F.4th 1235 (11th Cir. 2021), cert. denied, 143 S. Ct. 88 (2022) ............................34

*In re Smith*,
656 F.2d 1101 (5th Cir. 1981) ..................................................22

*Iowa Right To Life Comm., Inc.* v. *Tooker*,
717 F.3d 576 (8th Cir. 2013) ....................................................39

*Iowa Utils. Bd.* v. *F.C.C.*,
109 F.3d 418 (8th Cir. 1996) ....................................................38

vi

*Jackson* v. *United States*,
    526 F.3d 394 (8th Cir. 2008) ...............................................................43

*Lewellen* v. *Raff*,
    843 F.2d 1103 (8th Cir. 1988) ................................................. 1, 8, 17-20

*Mahaney* v. *Warren County*,
    206 F.3d 770 (8th Cir. 2000) ...............................................................23

*Manafort* v. *U.S. Dep't of Just.*,
    311 F. Supp. 3d 22 (D.D.C. 2018)..........................................................9

*Matter of Search of 4801 Fyler Ave.*,
    879 F.2d 385 (8th Cir. 1989) .........................................................1, 42-47

*New York* v. *P.J. Video, Inc.*,
    475 U.S. 868 (1986)...............................................................................36

*Nken* v. *Holder*,
    556 U.S. 418 (2009)...............................................................................40

*Novus Franchising, Inc.* v. *Dawson*,
    725 F.3d 885 (8th Cir. 2013) .................................................................9

*Packard Elevator* v. *I.C.C.*,
    782 F.2d 112 (8th Cir. 1986) ................................................................45

*Pleasant* v. *Lovell*,
    876 F.2d 787 (10th Cir. 1989) ..............................................................35

*Plouffe* v. *Ligon*,
    606 F.3d 890 (8th Cir. 2010) .................................................................9

*Powell* v. *Noble*,
    798 F.3d 690 (8th Cir. 2015) ................................................................39

*Reps. Comm. for Freedom of Press* v. *Am. Tel. & Tel. Co.*,
    593 F.2d 1030 (D.C. Cir. 1978)............................................................35

*Roudachevski* v. *All-Am. Care Ctrs., Inc.*,
    648 F.3d 701 (8th Cir. 2011) ................................................................45

Appellate Case: 22-3510     Page: 8     Date Filed: 03/15/2023 Entry ID: 5255159

*Roviaro* v. *United States*,
353 U.S. 53 (1957).................................................................................40

*S.E.C.* v. *Rajaratnam*,
622 F.3d 159 (2d Cir. 2010).....................................................................34

*Safety-Kleen Sys., Inc.* v. *Hennkens*,
301 F.3d 931 (8th Cir. 2002) .....................................................................8

*Sanvee* v. *Hennepin Cnty. Hum. Servs.*,
No. 10-cv-527, 2012 WL 4128388 (D. Minn. Aug. 13, 2012),
aff'd, 598 F. App'x 475 (8th Cir. 2015).................................................24

*Search of Elec. Commc'ns in the Acct. of chakafattah@gmail.com at Internet Serv. Provider Google, Inc.*, 802 F.3d 516 (3d Cir. 2015)..........................................34

*Sleep No. Corp.* v. *Young*,
33 F.4th 1012 (8th Cir. 2022) ..................................................................17

*Steagald* v. *United States*,
451 U.S. 204 (1981)..................................................................................30

*Stolt-Nielsen, S.A.* v. *United States*,
442 F.3d 177 (3d Cir. 2006) ....................................................................12

*Trump* v. *United States*,
54 F.4th 689 (11th Cir. 2022) ...................................... i, 1, 42, 43, 47

*Trump* v. *United States*,
No. 22-13005, 2022 WL 4366684 (11th Cir. Sept. 21, 2022).......................46

*Turtle Island Foods, SPC* v. *Thompson*,
992 F.3d 694 (8th Cir. 2021) .....................................................................8

*United States* v. *Adjani*,
452 F.3d 1140 (9th Cir. 2006) ...........................................................26, 32

*United States* v. *Armstrong*,
517 U.S. 456 (1996).........................................................................22, 40, 41

*United States* v. *Ary*,
518 F.3d 775 (10th Cir. 2008) .................................................................34

Appellate Case: 22-3510     Page: 9     Date Filed: 03/15/2023 Entry ID: 5255159

*United States* v. *Bach,*
310 F.3d 1063 (8th Cir. 2002) ................................................................28

*United States* v. *Beckmann,*
786 F.3d 672 (8th Cir. 2015) ................................................................27

*United States* v. *Cartier,*
543 F.3d 442 (8th Cir. 2008) ........................................................ 32, 33

*United States* v. *Chemical Foundation, Inc.,*
272 U.S. 1 (1926) ................................................................................22

*United States* v. *Christensen,*
828 F.3d 763 (9th Cir. 2015) ................................................................34

*United States* v. *Christie,*
717 F.3d 1156 (10th Cir. 2013) ............................................................47

*United States* v. *Crespo-Ríos,*
645 F.3d 37 (1st Cir. 2011) ................................................................32

*United States* v. *Evers,*
669 F.3d 645 (6th Cir. 2012) ................................................................29

*United States* v. *Fiorito,*
640 F.3d 338 (8th Cir. 2011) ................................................................25

*United States* v. *Grimmett,*
439 F.3d 1263 (10th Cir. 2006) .................................................... 29, 31

*United States* v. *Grubbs,*
547 U.S. 90 (2006)................................................................................47

*United States* v. *Hanon,*
428 F.2d 101 (8th Cir. 1970) (en banc)................................................28

*United States* v. *Hay,*
231 F.3d 630 (9th Cir. 2000) ................................................................29

*United States* v. *Horn,*
187 F.3d 781 (8th Cir. 1999) ................................................................26

ix

*United States* v. *Howard,*
 540 F.3d 905 (8th Cir. 2008) ........................................................................34

*United States* v. *Jarman,*
 847 F.3d 259 (5th Cir. 2017) ........................................................................33

*United States* v. *Kelley,*
 652 F.3d 915 (8th Cir. 2011) ........................................................................28

*United States* v. *Kuc,*
 737 F.3d 129 (1st Cir. 2013) ........................................................................26

*United States* v. *Manzi,*
 No. 4:19-cr-3094, 2022 WL 874598 (D. Neb. Mar. 24, 2022) ....................34

*United States* v. *McIntosh,*
 833 F.3d 1163 (9th Cir. 2016) ......................................................................12

*United States* v. *Milk,*
 No. 16-cr-50149, 2020 WL 6255653 (D.S.D. Oct. 23, 2020) ......................34

*United States* v. *Moulder,*
 No. 23-cr-27, 2022 WL 3644893 (D. Minn. Aug. 24, 2022) ........................30

*United States* v. *Proano,*
 912 F.3d 431 (7th Cir. 2019) ........................................................................34

*United States* v. *Rubio,*
 727 F.2d 786 (9th Cir. 1983) ........................................................................36

*United States* v. *Schoenheit,*
 856 F.2d 74 (8th Cir. 1988) ..........................................................................28

*United States* v. *Search of Law Off., Residence, & Storage Unit Alan Brown,*
 341 F.3d 404 (5th Cir. 2003) ........................................................................37

*United States* v. *Stone,*
 394 F. Supp. 3d 1 (D.D.C. 2019) ..................................................................16

*United States* v. *Ulbricht,*
 858 F.3d 71 (2d Cir. 2017) ............................................................................32

Appellate Case: 22-3510    Page: 11    Date Filed: 03/15/2023 Entry ID: 5255159

*United States* v. *Ulbricht*,
No. 14-cr-68, 2014 WL 5090039 (S.D.N.Y. Oct. 10, 2014) ......................................... 31

*United States* v. *Upham*,
168 F.3d 532 (1st Cir. 1999) ..................................................................................... 29

*United States* v. *Williams*,
511 F.3d 1044 (10th Cir. 2007) ................................................................................. 40

*Wade* v. *Goodwin*,
843 F.2d 1150 (8th Cir. 1988) ................................................................................... 37

*Wheeler* v. *City of Lansing*,
660 F.3d 931 (6th Cir. 2011) ..................................................................................... 30

*Wilansky* v. *United States*,
326 F. Supp. 3d 784 (D. Minn. 2018) ........................................................................ 47

*Winter* v. *Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ......................................................................................................... 7

*Wooley* v. *Maynard*,
430 U.S. 705 (1977) ............................................................................................. 14, 15

*Younger* v. *Harris*,
401 U.S. 37 (1971) ................................................................................. 1, 5, 8, 10, 12

*Zurcher* v. *Stanford Daily*,
436 U.S. 547 (1978) ................................................................................................... 36

## Constitutional and Statutory Provisions

U.S. Const. art. II, § 3 ................................................................................................. 7

18 U.S.C. § 371 ........................................................................................................... 2

18 U.S.C. § 1028 ......................................................................................................... 2

18 U.S.C. § 1030 ......................................................................................................... 2

28 U.S.C. § 2072 ....................................................................................................... 28

Appellate Case: 22-3510     Page: 12     Date Filed: 03/15/2023 Entry ID: 5255159

**Rules**

Fed. R. Crim. P. 12.................................................................................1, 13

Fed. R. Crim. P. 41....................................................1, 5, 27, 41, 42, 48

**Other Authorities**

Cheryl Teh, *Mike Lindell called Ron DeSantis a 'Trojan Horse' for the left in a rant at CPAC*, BUSINESS INSIDER (Mar. 3, 2023) ......................................................39

Jared Gans, *Mike Lindell says 'God willing,' he will challenge Ronna McDaniel for RNC chair*, THE HILL (Nov. 25, 2022) ......................................................39

Jessica Garrison, *With unfounded fraud claims swirling, red California county dumps Dominion voting machines*, L.A. TIMES (Mar. 1, 2023).........................................39

Justice Manual § 9-27.760.........................................................22

## STATEMENT OF THE ISSUES

**1.** Whether the district court abused its discretion when it declined to take the extraordinary step of enjoining an ongoing federal criminal investigation.

- *Younger* v. *Harris*, 401 U.S. 37 (1971);

- *Deaver* v. *Seymour*, 822 F.2d 66 (D.C. Cir. 1987);

- *Lewellen* v. *Raff*, 843 F.2d 1103 (8th Cir. 1988);

- Federal Rule of Criminal Procedure 12(b)(3);

- Federal Rule of Criminal Procedure 41(e)(2)(B).

**2.** Whether the district court abused its discretion when it denied Lindell's motion for the return of evidence that was seized pursuant to a judicially authorized warrant and remains relevant to an ongoing federal criminal investigation.

- *Matter of Search of 4801 Fyler Ave.*, 879 F.2d 385 (8th Cir. 1989);

- *Trump* v. *United States*, 54 F.4th 689 (11th Cir. 2022).

## STATEMENT OF THE CASE

In connection with a civil lawsuit against the United States and several federal officials, Lindell moved to preliminarily enjoin an ongoing criminal investigation into his conduct and to compel, ostensibly under Federal Rule of Criminal Procedure 41(g), the return of a cell phone seized as part of a warranted search of his person. *See* App. 211; R. Doc. 9.[1]  The district court denied his motions.  Add-1; R. Doc. 68.

---

[1] Citations to the record are styled as "R. Doc. [Number], at [Page]," with parallel citations to Lindell's addendum as "Add-[Page]" and to his appendix as "App. [Page]."

## A.    Factual Background

On September 7, 2022, the government obtained a warrant from a magistrate judge in the District of Minnesota to search Lindell's person for his cell phone. App. 1 ¶ 11; R. Doc. 1, ¶ 11; *see* R. Doc. 10-3 (purported copy of the warrant).[2] The warrant authorized the seizure of that phone and "records and information" thereon "constitut[ing] fruits, evidence, or instrumentalities" of three enumerated offenses: 18 U.S.C. §§ 1028(a)(7) (identity theft), 1030(a)(5)(A) (intentional damage to a protected computer), and 371 (conspiracy to commit identity theft or to intentionally damage a protected computer). *Id.* at 4.

On September 13, federal agents executed the search by approaching Lindell outside a restaurant in Mankato, Minnesota. Add-2; R. Doc. 68, at 2. As Lindell would later recount on his online television network, the agents advised him that he was not under arrest and treated him respectfully. *See* R. Doc. 50-1 (video), at 13:14-13:25 ("I said, you know, you guys, I said, 'Are you gonna arrest me?' . . . They go, 'No, no, we're not gonna arrest you.'"); *id.* at 14:31-14:50 ("I wanna say this for the record, they were, they were pretty nice guys, okay? I mean, none of them had an attitude. . . . They were very, very gracious."). The agents provided Lindell with a copy of the warrant, Add-2; R. Doc. 68, at 2, and he handed over his cell phone, *id.* at 3.

---

[2] Lindell represented that an exhibit he filed on the public docket contained "[a] copy of the [w]arrant" served on him during the search. R. Doc. 10, at 3. Because the warrant remains under seal, the government cannot concede that this version is accurate but assumes as much for purposes of this litigation. *See* Add-7 n.2; R. Doc. 68, at 7 n.2.

Appellate Case: 22-3510    Page: 15    Date Filed: 03/15/2023 Entry ID: 5255159

**B.      Procedural History**

**1.**      On September 20, 2022, Lindell filed a civil complaint asserting that the government had violated his rights under the First, Fourth, and Fifth Amendments.[3] App. 1, ¶¶ 1, 41-81; R. Doc. 1, ¶¶ 1, 41-81.   Among his allegations was that "[t]he [w]arrant" issued by the magistrate judge was a "technique employed by [the government] to deter [Lindell] and those who act in concert with him from exercising their constitutional rights guaranteed by the First Amendment." *Id.* ¶ 52.  As evidence, Lindell cited statements by three Cabinet-level officials that conspiracy theories about the 2020 election could constitute a motivating factor for certain domestic extremists and that unlawful conduct undertaken in connection with such theories might trigger civil or criminal liability.  *Id.* ¶¶ 47-49.  None of the quotes mentioned Lindell.

**2.**      On September 21, Lindell moved for a temporary restraining order (TRO) and an order under Federal Rule of Criminal Procedure 41(g) requiring that the government "(1) return . . . the cell phone seized from Mr. Lindell on September 13, 2022; (2) cease all attempts to access data stored on the cell phone; and (3) refrain from accessing any information already taken from the cell phone."  App. 211; R. Doc. 9. The next day, the district court denied Lindell's motion "to the extent it seeks an *ex parte* temporary restraining order directing [the government] to refrain from accessing

---

[3] "Though the Complaint includes a passing reference to a Sixth Amendment violation, no specific counts or allegations advance a claim premised on a Sixth Amendment violation."  Add-5 n.1; R. Doc. 68, at 5 n.1.  And Lindell's contentions on appeal rest solely "on asserted violations of the First and Fourth Amendments."  Br. i.

Appellate Case: 22-3510      Page: 16      Date Filed: 03/15/2023 Entry ID: 5255159

or taking any action with respect to the seized cellphone[.]"  R. Doc. 14, at 5. Construing the TRO motion as a request for a preliminary injunction, the court ordered responsive briefing and held a hearing on October 19.  *See* Add-8; R. Doc. 68, at 8.

**3.**     In a written opinion issued November 3, the district court denied Lindell's requests to preliminarily enjoin the government's investigation and to order the return of his cell phone.[4]  Add-1; R. Doc. 68.  The court determined that Lindell had "not met [his] burden to support the exercise of equitable powers to enjoin an ongoing criminal investigation and ha[d] otherwise failed to satisfy the showing necessary to justify such extraordinary relief."  *Id.* at 2.  In reaching that conclusion, the court found that Lindell "ha[d] not demonstrated that the Government acted in callous disregard of [his] constitutional rights," *id.* at 22—"the 'foremost consideration' in determining whether a court should exercise its equitable jurisdiction" at the pre-indictment stage, *ibid.*— because, *inter alia*, he had failed to show that "the Government threaten[ed] retaliation for [Lindell's] speech or affiliation," *id.* at 26.  Moreover, the court noted that Lindell's requests were inconsistent with the "'sound and well-established principle that a court should not exercise its equitable powers to interfere with or enjoin an ongoing criminal investigation when the defendant will have the opportunity to challenge any defects in the prosecution in the trial court or on direct appeal.'"  *Id.* at 19 n.5; *see also id.* at 32-34.

---

[4] The court also found that "the Government has demonstrated a compelling interest in the ongoing criminal investigation that outweighs [Lindell's] right of access," Add-2; R. Doc. 68, at 2, and therefore denied Lindell's motion for access to the sealed materials supporting the warrant, *id.* at 8-19.  He has not appealed that determination.

## SUMMARY OF ARGUMENT

**I.** Each of two well-established lines of authority—the exacting burdens for obtaining preliminary injunctive relief and the judiciary's particular disinclination to interfere with the executive's enforcement of federal criminal law during an ongoing investigation or prosecution—independently forecloses Lindell's request that this Court halt the government's investigation into his conduct.

In *Younger* v. *Harris*, 401 U.S. 37 (1971), the Supreme Court held that federal courts generally "should not act to restrain a [state] criminal prosecution." *Id.* at 43-44. Later decisions have extended that rule to preclude pre-indictment interference in federal cases as well, out of respect for the separation of powers and recognition that the Federal Rules of Criminal Procedure provide criminal defendants with adequate opportunities to litigate their constitutional claims if charges materialize. Lindell has not shown that his case falls into either of the narrow exceptions to that prohibition: He does not challenge the validity of any speech-restrictive statute, nor can he show clear error in the district court's rejection of his theory that "the Government [is] threatening retaliation for [his] speech or affiliation." Add-26; R. Doc. 68, at 26.

Though the *Younger* rule alone compels affirmance, the district court's exercise of its discretion was likewise consistent with the traditional four-factor test applicable to preliminary-injunction motions. Lindell has not established a likelihood of prevailing on the merits of his challenge to the warrant, which—he implicitly concedes—complies with Federal Rule of Criminal Procedure 41(e)(2)(B) by adhering to the two-step

5

electronic-review process that has been approved by uniform appellate authority. He has also failed to identify any irreparable injury independent of (nonexistent) constitutional violations, and his continued public advocacy in the months since the search belies any suggestion that his speech has been chilled by the investigation. Finally, the public's interest in the effective and efficient enforcement of federal law counsels against the disruptive relief that Lindell seeks.

II. For substantially the same reasons that *enjoining* the investigation is unwarranted, *impeding* the investigation—by mandating the premature relinquishment of lawfully seized evidence—is likewise unjustified. Because Lindell has not established any violation of his rights under the First or Fourth Amendment, he has *a fortiori* failed to demonstrate that the government acted in "callous disregard" of those rights. Indeed, the record evidence conclusively refutes that allegation: The government filed an extensive and detailed probable-cause affidavit, obtained a warrant from a neutral and detached magistrate judge, executed the search with courtesy and professionalism, and adopted, on its own initiative, a filter-team protocol to safeguard any privileged communications encountered during its review. Even if Lindell could tenably characterize this course of conduct as "callous disregard," he has not shown that the seizure of his cell phone—the content of which was backed up to remote storage just days before the search and presumably remains in his possession—has worked an irreparable harm that would justify an extraordinary invocation of equitable jurisdiction. The district court thus properly exercised its discretion, and this Court should affirm.

6

## ARGUMENT

## I. The District Court Appropriately Denied Lindell's Extraordinary Request to Preliminarily Enjoin an Ongoing Federal Criminal Investigation.

Pursuant to its duty to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, the government is engaged in an ongoing investigation concerning possible violations of multiple federal criminal statutes. As part of that investigation, the government obtained a warrant from a federal magistrate judge and seized evidence within the ambit of that judicial authorization. Lindell, the subject of the warrant, now asks this Court to halt the government from investigating his conduct and compel the relinquishment of evidence it has gathered. That exceptional course is unwarranted.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter* v. *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The party seeking a preliminary injunction bears the burden of establishing the necessity of this equitable remedy." *Gen. Motors Corp.* v. *Harry Brown's, LLC*, 563 F.3d 312, 316 (8th Cir. 2009). "Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc.* v. *C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).

While the burden of demonstrating an entitlement to preliminary injunctive relief is demanding in the mine-run case, a second principle counsels against exercising

Appellate Case: 22-3510    Page: 20    Date Filed: 03/15/2023 Entry ID: 5255159

equitable jurisdiction here—specifically, the "familiar rule that courts of equity do not ordinarily restrain criminal prosecutions." *Douglas* v. *City of Jeannette*, 319 U.S. 157, 163 (1943). That principle reflects "the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger*, 401 U.S. at 43-44. As this Court has recognized, "the *Younger* standard and the general standard for injunctive relief are closely related, being based on similar equitable principles." *Lewellen* v. *Raff*, 843 F.2d 1103, 1113 (8th Cir. 1988).

Accordingly, two distinct but covalent lines of authority undercut Lindell's preliminary-injunction motion: the abstention from equitable intervention in criminal prosecutions instructed by *Younger*; and the traditional disinclination to preliminary relief counseled by this Court's precedents. The district court did not abuse its discretion by adhering to those principles in denying Lindell's motion.

## A. Standard of Review

"'A district court has broad discretion when ruling on requests for preliminary injunctions,'" *Safety-Kleen Sys., Inc.* v. *Hennkens*, 301 F.3d 931, 935 (8th Cir. 2002), and this Court "review[s] the denial of a preliminary injunction for abuse of [that] discretion," reversing only "'where the district court rest[ed] its conclusion on clearly erroneous factual finding[s] or erroneous legal conclusions,'" *Turtle Island Foods, SPC* v. *Thompson*, 992 F.3d 694, 698-699 (8th Cir. 2021). "The abuse-of-discretion standard

8

means 'the court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Novus Franchising, Inc.* v. *Dawson*, 725 F.3d 885, 895 (8th Cir. 2013). This Court likewise "'review[s] the application of the *Younger* abstention doctrine for abuse of discretion.'" *Plouffe* v. *Ligon*, 606 F.3d 890, 893 (8th Cir. 2010).

## B. Pursuant to *Younger*, Lindell Cannot Use a Civil Action to Collaterally Attack an Ongoing Criminal Investigation.

The clear aim of Lindell's lawsuit is to interfere with an ongoing criminal investigation.[5] But "[p]rospective defendants cannot, by bringing ancillary equitable proceedings, circumvent federal criminal procedure," including federal criminal investigations. *Deaver* v. *Seymour*, 822 F.2d 66, 71 (D.C. Cir. 1987); *see also Manafort* v. *U.S. Dep't of Just.*, 311 F. Supp. 3d 22, 26 (D.D.C. 2018) ("It is a sound and well-established principle that a court should not exercise its equitable powers to interfere with or enjoin an ongoing criminal investigation when the defendant will have the opportunity to challenge any defects in the prosecution in the trial court or on direct appeal."). Lindell's claims fall squarely within this prohibition.

---

[5] Before the district court, Lindell repeatedly denied that he was seeking to enjoin the government's investigation. *See, e.g.*, R. Doc. 54, at 4 ("The Motion does <u>not</u> ask the Court to enjoin any criminal investigation, or to enjoin any hypothetical indictment or prosecution of anyone." (emphasis in original)); R. Doc. 74, at 40 ("Finally, I just want to comment . . . as it relates to the *Younger/Deaver* doctrine that the Government has raised, claiming that we are attempting to interfere with and/or enjoin the entire Government process of investigation. That's not what we're doing."). Lindell takes the opposite position before this Court. *See* Br. 31 ("This Court should enter an Order enjoining the investigation"). He has offered no explanation for this inconsistency.

Appellate Case: 22-3510    Page: 22    Date Filed: 03/15/2023 Entry ID: 5255159

### 1. Since *Younger*, Federal Courts Have Consistently Declined to Enjoin Ongoing Criminal Investigations and Prosecutions.

In *Younger*, the Supreme Court cautioned that courts of equity "should not act to restrain a criminal prosecution" so long as "the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." 401 U.S. at 43-44. In a criminal case, that "adequate remedy" exists by virtue of the right to present defenses in any eventual criminal action. *See id.* at 49. Channeling to the criminal trial the litigation of asserted defects in the investigation and prosecution "prevent[s] erosion of the role of the jury and avoid[s] a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted." *Id.* at 44.

Although *Younger* involved a federal civil suit seeking to disrupt a state criminal proceeding, courts have held that its rule equally prohibits judicial intervention in *federal* criminal investigations and proceedings. In *Deaver*, for example, a former White House official filed a civil complaint alleging constitutional defects in the independent counsel's office and sought to preliminarily enjoin a federal ethics investigation undertaken by that office. 822 F.2d at 66-67. Concluding that the lawsuit "constituted an impermissible preemptive civil challenge to a criminal proceeding," the D.C. Circuit affirmed the district court's denial of relief. *Ibid.* The appellate court observed that, although *Younger* arose in the context of a state prosecution, "in no case that we have been able to discover has a federal court enjoined a federal prosecutor's investigation or presentment of an indictment." *Id.* at 69. The court reasoned that the federal

Appellate Case: 22-3510     Page: 23     Date Filed: 03/15/2023 Entry ID: 5255159

criminal proceeding "afford[s] defendants, after indictment, a federal forum in which to assert their defenses—including those based on the Constitution." *Ibid.* Specifically, "Congress has established a comprehensive set of rules governing federal criminal prosecutions"—the Federal Rules of Criminal Procedure—which provide "adequate . . . opportunities for defendants to challenge shortcomings in prosecutorial authority." *Id.* at 71. The court noted that Rule 12 "permits any defendant to raise by motion, after indictment but before trial, a defense based on 'defects in the institution of the prosecution,'" which therefore "suggests that [plaintiff]'s constitutional challenge is not to be raised in a preindictment civil injunctive action." *Id.* at 70. Then-Chief Justice Rehnquist denied a subsequent stay request on similar grounds: "There will be time enough for [plaintiff] to present his constitutional claim to the appellate courts if and when he is convicted of the charges against him." *Deaver* v. *United States*, 483 U.S. 1301, 1303 (1987) (Rehnquist, C.J., in chambers).

In the decades since *Deaver*, "numerous courts" have echoed its application of the *Younger* rule beyond state prosecutions and "indicated that federal courts should also refrain from interfering in ongoing *federal*-court prosecutions." *Broussard* v. *Hollenhorst*, No. 22-cv-0342, 2022 WL 748470, at *5 (D. Minn. Mar. 11, 2022), aff'd, No. 22-1774, 2022 WL 10557060 (8th Cir. Sept. 9, 2022); *see, e.g.*, *In re Al-Nashiri*, 835 F.3d 110, 126-127 (D.C. Cir. 2016) (explaining that the rule applies beyond "court systems that are wholly separate from the federal judicial establishment," and noting that "the availability of legal remedies in Article III courts has historically *barred* criminal

Appellate Case: 22-3510    Page: 24    Date Filed: 03/15/2023 Entry ID: 5255159

defendants from receiving pretrial equitable relief"); *Stolt-Nielsen, S.A.* v. *United States*, 442 F.3d 177, 187 (3d Cir. 2006) ("Separation-of-power concerns . . . counsel against using the extraordinary remedy of enjoining the Government from filing the indictments" where plaintiffs "have a practical and efficient—and indeed complete—legal remedy available to them, i.e., access to a federal forum post-indictment"); *Ceglia* v. *Zuckerberg*, 600 F. App'x 34, 37 (2d Cir. 2015) ("[A] court may civilly enjoin a criminal prosecution only 'when absolutely necessary for protection of constitutional rights,' and only 'under extraordinary circumstances, where the danger of irreparable loss is both great and immediate.'" (quoting *Younger*, 401 U.S. at 45)). Accordingly, "[i]n almost all federal criminal prosecutions, injunctive relief . . . will not be appropriate. Federal courts traditionally have refused, except in rare instances, to enjoin federal criminal prosecutions." *United States* v. *McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016).

## 2. Because Lindell Will Have an Adequate Federal Forum to Raise Any Defects in the Institution of a Future Prosecution, the Present Litigation Falls Squarely Within the *Younger* Rule.

As in *Deaver*, this Court need not reach the merits of Lindell's assorted constitutional claims because, "[e]ven were [the Court] disposed to agree entirely with [Lindell's] constitutional argument[s], . . . he has no right to an injunction restraining" an ongoing federal criminal investigation or any future prosecution. 822 F.2d at 68. Like any other citizen, Lindell is entitled to the full panoply of constitutional, statutory, and procedural protections afforded to those facing criminal jeopardy. And like any other citizen, he may raise those claims if he is charged with a criminal offense. *See In*

12

*re Sealed Case*, 829 F.2d 50, 62 n.60 (D.C. Cir. 1987) ("[C]ourts do not, except in very limited circumstances ... entertain the claim of a person subject to a criminal investigation that the investigation is unlawful and must therefore be enjoined").

In the event that the government ever prosecutes him, Lindell will have ample opportunity to litigate any concerns regarding the government's investigation. *See Deaver*, 822 F.2d at 69 ("[F]ederal prosecutor[s] typically bring[] cases only in federal court, thereby affording defendants, after indictment, a federal forum in which to assert their defenses—including those based on the Constitution"). In particular, "Rule 12(b)[(3)] of the Federal Rules of Criminal Procedure permits any defendant to raise by motion, after indictment but before trial," a variety of "defense[s], objection[s], or request[s]." *Id.* at 70. That Rule expressly contemplates both of the constitutional claims that Lindell presses here: his contention that the warrant failed to comply with the Fourth Amendment (Br. 19-25), *see* Fed. R. Crim. P. 12(b)(3)(C) (authorizing post-indictment, pretrial motion for "suppression of evidence"); and the allegation that he has been targeted in retaliation for his political activism (Br. 10-19); *see* Fed. R. Crim. P. 12(b)(3)(A)(iv) (authorizing post-indictment, pretrial motion alleging "a defect in instituting the prosecution" on the basis of "selective or vindictive prosecution").

Rule 12(b)(3) thus provides Lindell with a mechanism for raising his arguments in any future criminal action. He offers no explanation as to why that mechanism— the same one available to every criminal defendant—would be inadequate to vindicate his rights.

13

### 3. No Exception Permits Pre-Indictment Equitable Relief Here.

On rare occasions, this Court and others have found that federal injunctions may be appropriate to restrain state criminal proceedings "where the threatened prosecution chilled exercise of First Amendment rights" and the plaintiff lacked timely and effective access to a federal forum. *Deaver*, 822 F.2d at 69. But that exception is narrowly tailored to "'extraordinary circumstances.'" *Broussard*, 2022 WL 748470, at *6. And for good reason: Allowing plaintiffs to freely evade the well-established rule precluding interference in criminal investigations simply by asserting a First Amendment violation would both vitiate the *Younger* principle and render superfluous Rule 12(b)(3)(A)(iv)'s process for raising and adjudicating claims of "selective or vindictive prosecution," *see supra* p. 13. Accordingly, appellate courts have applied this exception in only two circumstances: where a plaintiff challenges the constitutionality of a speech-restrictive statute under which he has been repeatedly prosecuted; and where the district court reached a clear factual finding that the prosecution was instituted solely to retaliate for or suppress the plaintiff's protected speech. Lindell's claims satisfy neither criterion.

### a. Lindell Does Not Challenge the Constitutionality of Any Criminal Statute.

The primary exception to the *Younger* doctrine arises where a plaintiff seeks relief from future prosecution under a statute that encroaches on his First Amendment rights—particularly where the plaintiff is at continued risk of *repeated* prosecution. *See, e.g.*, *Wooley* v. *Maynard*, 430 U.S. 705, 710-712 (1977) (concerning a New Hampshire

statute making it a crime to obscure the words "Live Free or Die" on state-issued license plates). This limited exception applies where, absent immediate federal-court intervention, an individual would be forced to choose between "'intentionally flouting state law'" and "'forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in (another) criminal proceeding.'" *Id.* at 710. In *Wooley*, the Supreme Court held that injunctive relief was appropriate where the plaintiff had been subject to "three successive prosecutions . . . in the span of five weeks" and was likely to be prosecuted again. *Id.* at 712. The Court recognized that "[t]his is quite different from a claim for federal equitable relief when a prosecution is threatened for the first time" because "[t]he threat of repeated prosecutions in the future against both [the plaintiff] and his wife, and the effect of such a continuing threat on their ability to perform the ordinary tasks of daily life . . . is sufficient to justify injunctive relief." *Ibid.*

Similarly, in *Dombrowski* v. *Pfister*, 380 U.S. 479 (1965), plaintiffs sought an injunction preventing state officials "from prosecuting or threatening to prosecute [them] for alleged violations of" two Louisiana anti-Communist laws. *Id.* at 482. Notably, the plaintiffs had previously been "arrested by Louisiana state and local police and charged with violations of the two statutes" and subsequently obtained judicial relief in the normal course when "a state judge quashed the arrest warrants as not based on probable cause" and "granted a motion to suppress the seized evidence on the ground that the raid was illegal." *Id.* at 487-488. When "Louisiana officials continued, however, to threaten prosecution" after the plaintiffs had successfully availed

15

themselves of typical procedural protections, the Supreme Court found that the resultant "continuing threat of prosecution portend[ing] further arrests and seizures" warranted equitable relief. *Id.* at 488-489. In reaching that conclusion, the Court relied on its precedents relaxing the typical standing threshold where "*statute[s]* regulating expression . . . have an overbroad sweep," and held that "the abstention doctrine is inappropriate for cases such as the present one where . . . *statutes* are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities." *Id.* at 486, 489-490 (emphases added).

Here, Lindell is not challenging the constitutionality of any criminal statute identified as part of this investigation, *see supra* p. 2 (listing statutes)—much less one that regulates speech or expression. Instead, he alleges (Br. 6) only that "the issuance and execution of the warrant" violates his First Amendment rights. Nor does Lindell show the kind of repetitive prosecutions under a speech-regulating statute that the Supreme Court deemed critical in *Wooley* and *Dombrowski*. In fact, Lindell has not been prosecuted at all and thus cannot demonstrate the inadequacy of the federal forum he would be afforded in the event such charges materialize in the future. In sum, this is not a case where a plaintiff has alleged that—absent injunctive relief in civil court—he will be subject to certain and repeated prosecution under an unconstitutional speech-restricting statute. This *Younger* exception is thus inapplicable. *Cf. United States* v. *Stone*, 394 F. Supp. 3d 1, 15 (D.D.C. 2019) (denying injunctive relief where "defendant is not being prosecuted for violating a law that specifically restricts free expression").

### b. As the District Court Correctly Found, Lindell Has Not Plausibly Alleged—Much Less Established—That the Investigation Is Retaliatory.

In addition to the narrow carve-out for repeated state prosecutions under speech-restrictive statutes, this Court has held that equitable relief may be available where a state criminal defendant makes "[a] showing that a prosecution was brought in retaliation for or to discourage the exercise of [his] constitutional rights." *Lewellen*, 843 F.2d at 1109. Here, however, the district court carefully examined Lindell's allegations and found that he had not established a case of "the Government threatening retaliation for speech or affiliation." Add-26; R. Doc. 68, at 26. Because the record amply supports that finding, no clear error occurred, and Lindell is not entitled to relief under the exception recognized in *Lewellen. Cf. Sleep No. Corp.* v. *Young*, 33 F.4th 1012, 1016 (8th Cir. 2022) ("'[F]actual findings [underlying a preliminary-injunction decision are] examined for clear error[.]'").

### i. Lindell's Reliance on *Lewellen* Is Misplaced.

*Lewellen* addressed whether a federal district court appropriately enjoined a state prosecution that the court found, based on extensive record evidence, to have been undertaken by state officials in retaliation for a Black attorney's representation of a Black defendant. Following the declaration of a mistrial against Roy Lewellen's client, the local sheriff and prosecutors charged Lewellen and his client with witness bribery and conspiracy. 843 F.2d at 1108. Lewellen filed suit in federal court alleging that the officials had "conspired to and did investigate and prosecute him because of his race

and to retaliate against him for exercising his constitutional rights." *Ibid.* Lewellen subsequently adduced "the testimony of eight witnesses at the preliminary injunction hearing," including his own narrative of the events leading to the mistrial; the recollection of a local businessman "that Sheriff May said, in effect, that criminal charges might be brought against Lewellen because the prosecutors were displeased by Lewellen's conduct of the defense"; and the attestation of another attorney to "the disparate treatment black attorneys were subjected to by [the prosecutors in Lewellen's case]." *Id.* at 1110-1112.[6]

This evidence led "the district court [to] ma[k]e two critical factual findings that persuaded it to issue the preliminary injunction": first, that "'Lewellen ha[d] demonstrated that the criminal prosecution . . . was brought in bad faith for the purpose of retaliating for the exercise of his constitutionally protected rights'"; and second, that "'the criminal charges instituted against Lewellen would not have been filed absent the desire to retaliate against Lewellen for exercising his federally protected rights.'" *Id.* at 1110. Because, "based on [its] review of the record, [this Court could ]not say that the[se findings we]re clearly erroneous," it affirmed the district court's exercise of equitable jurisdiction and entry of a preliminary injunction. *Ibid.*

---

[6] The district court also observed that "the scheduling of Lewellen's criminal case for trial . . . took place twenty-four (24) days prior to the [November 1986] General Election," in which Lewellen was running "for state office against a political ally of Sheriff May"—"scheduling [that] was calculated to impede and impair [Lewellen's] First Amendment rights." *Lewellen*, 843 F.2d at 1110-1111.

Appellate Case: 22-3510     Page: 31     Date Filed: 03/15/2023 Entry ID: 5255159

In Lindell's case, by contrast, the district court could not identify even a plausible allegation of bad faith in the government's investigation—much less the compelling showing of retaliatory prosecution that *Lewellen* found to justify equitable relief. As the district court observed, Lindell's "only specific argument is that enforcement of the warrant 'would inhibit and deter Mr. Lindell and his associates from continuing their public-interest First Amendment activity.'" Add-25; R. Doc. 68, at 25. Lindell had not, however, pointed to any evidence indicating that the government obtained and executed the warrant (or, more broadly, undertook its investigation) to accomplish that result. Instead, the court noted that Lindell had, "[a]t best, . . . allege[d] that the Attorney General 'threatened criminal and civil actions against those who pursue audits of voting tabulations *if those audits run afoul of federal laws*.'" *Id.* at 26 (quoting, with emphasis, Lindell's complaint). The court found that the Attorney General's statement "is not the Government threatening retaliation for speech or affiliation. It is the Government threatening criminal actions against people who are alleged to have violated federal law in their efforts to pursue audits of voting tabulations." *Ibid.*

Lindell thus cannot rely on *Lewellen* to bypass the *Younger* principle. Where "[t]he allegations in Lewellen's complaint painted a picture of pervasive racism and discriminatory treatment of blacks in the Lee County court system," *Lewellen*, 843 F.2d at 1110, the allegations in Lindell's complaint consisted of three anodyne public statements by Cabinet officials, none of which mentioned him by name. Where Lewellen presented extensive "testimony and . . . documentary evidence over a six-day

19

[hearing]" to substantiate his allegations, *ibid.*, Lindell called no witnesses and offered no proof of bad faith by the federal agents investigating him. And where this Court affirmed the disposition in *Lewellen* because it perceived no clear error in the district court's "critical factual findings," *ibid.*, the same deference forecloses relief in Lindell's case, in which the district court expressly rejected his contention that "the Government [was] threatening retaliation for speech or affiliation," Add-26; R. Doc. 68, at 26.

### ii. Lindell's Counterarguments Are Unpersuasive.

On appeal, Lindell principally reiterates his theory that "[t]he decisions to launch the investigation and to request the warrant, coupled with the threatening public statements by cabinet officials, are evidence of a broad campaign to punish, threaten, and intimidate those who exercise their First Amendment rights," Br. 15, and claims that the district court "ignored" these allegations, Br. 10 ("The district court ignored . . . paragraphs 47 and 48[,] alleg[ing] that the Director of National Intelligence and the Secretary of Homeland Security publicly characterized those who advance 'a narrative[] of fraud in the recent general election' as domestic terrorists."); *see also* Br. 11 ("Lindell's *Lewellen* claim was focused principally on the investigation and the warrant, which the district court did not take into consideration."). Not so: The court clearly grasped Lindell's theory and simply focused on the strongest support he had adduced. *See* Add-25-26; R. Doc. 68, at 25-26 (acknowledging Lindell's "argu[ment] that 'the Warrant was executed as part of a systematic effort to intimidate Mr. Lindell and those who share his beliefs and have associated with him from exercising their First Amendment rights

20

to express concern about the integrity of our voting system'" and identifying the Attorney General's statement as the "best" allegation Lindell had put forward).

On the merits, the district court correctly concluded that Lindell's barebones allegations fell well short of establishing bad faith on the government's part. Citing the *existence* of the investigation and the warrant as "evidence" (Br. 15) that the investigation and the warrant were undertaken in bad faith is mere question-begging. Nor does the trio of statements quoted in Lindell's complaint suggest any impropriety. As the district court recognized, the Attorney General's warning that civil and criminal liability may attach to unlawful conduct is an unremarkable instance of the Nation's chief federal law-enforcement officer "threatening criminal actions against people who are alleged to have violated federal law." Add-26; R. Doc. 68, at 26; *cf. Bordenkircher* v. *Hayes*, 434 U.S. 357, 364 (1978) ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."). Lindell's other two "threatening public statements"—reports by the Director of National Intelligence and the Secretary of Homeland Security concerning domestic extremism, *see* App. 1, ¶¶ 47-48; R. Doc. 1, ¶¶ 47-48—were made by officials without the power to bring criminal prosecutions or any apparent connection to this investigation. And none of the excerpted statements in Lindell's complaint expressly mentions him, his business, or his associates.

21

Lindell also asserts (Br. 16) that "the Department's refusal to prosecute the Colorado Secretary of State" for her actions in connection with the 2020 election creates an "unavoidable" inference "that the investigation . . . was launched to punish and intimidate" Lindell and his associates. This is "[a] selective-prosecution claim," which "asks a court to exercise judicial power over a 'special province' of the Executive." *United States* v. *Armstrong*, 517 U.S. 456, 464 (1996). And it lacks merit. "The Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *Ibid.* As a result, "[t]he presumption of regularity supports" their prosecutorial decisions; and, "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States* v. *Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926). Lindell's speculation (Br. 13, 16-17) about the scope of the government's investigation and other involved persons is not "clear evidence" rebutting this presumption.[7] And it certainly is not so pellucid as to compel preliminary equitable relief at the investigative stage—rather than, for instance, in a pretrial motion under Rule 12(b)(3)(A)(iv) asserting "selective . . . prosecution," which a future court would be able to adjudicate with the benefit of an actual indictment. *See supra* p. 13.

---

[7] Pursuant to longstanding Department of Justice policy, the government will offer no further comment on the conduct of uncharged persons referenced in Lindell's brief. *See generally* Justice Manual § 9-27.760; *see also In re Smith*, 656 F.2d 1101, 1106-1107 (5th Cir. 1981) (There is "no legitimate governmental interest served" by a public attribution of wrongdoing to an uncharged party, "[r]egardless of what criminal charges may . . . b[e] contemplated by the [government] against th[at party] for the future.").

Appellate Case: 22-3510     Page: 35     Date Filed: 03/15/2023 Entry ID: 5255159

Finally, Lindell repeatedly faults (*e.g.*, Br. 7) the district court for "fail[ing] . . . to address [his] First Amendment argument based on *Lewellen*." But the court *did* address the gravamen of that claim in its determination that Lindell had not shown that "the Government [is] threatening retaliation for speech or affiliation." Add-26; R. Doc. 68, at 26. And, although the court did not discuss *Lewellen* in its opinion, this silence is understandable because Lindell's motion for preliminary relief and supporting memorandum also neglected to cite *Lewellen*. *See* App. 211; R. Docs. 9, 10. Rather, Lindell referenced *Lewellen* only fleetingly in his *reply* brief, in support of the contention that courts may enjoin a retaliatory prosecution "'regardless of whether valid convictions conceivably could be obtained.'" R. Doc. 54, at 18, 20-21; *cf. Mahaney* v. *Warren County*, 206 F.3d 770, 771 n.2 (8th Cir. 2000) ("Claims not raised in an initial brief are waived, and we generally do not consider issues raised for the first time . . . in a reply brief."). In any event, the court's well-founded rejection of Lindell's allegation of a retaliatory federal investigation renders irrelevant *Lewellen*'s analysis of the appropriate remedy for a retaliatory state prosecution.

## C. Lindell Has Not Demonstrated a Likelihood of Prevailing on the Merits of Any of His Claims.

For the reasons discussed above, the district court correctly applied the *Younger* doctrine in declining to exercise extraordinary equitable jurisdiction over an ongoing federal criminal investigation, and that ground alone compels affirmance. But if this Court finds it necessary to proceed to the traditional preliminary-injunction framework,

23

the result is the same, as Lindell has not shown a likelihood of prevailing on either his First or Fourth Amendment claims. *See Home Instead, Inc.* v. *Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (identifying "the probability of success factor" as "the most significant" factor); *CDI Energy Servs.* v. *W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009) ("[T]he absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied.").[8]

## 1. The Warrant Complies with the Fourth Amendment.

The district court correctly determined that Lindell had not demonstrated a likelihood of success on his challenge to the warrant. Add-22-25; R. Doc. 68, at 22-25.

A warrant complies with the Fourth Amendment when it (1) is "issued by [a] neutral, disinterested magistrate[]"; (2) is based on a showing of "probable cause to believe that 'the evidence sought will aid in a particular apprehension or conviction' for

---

[8] Aside from the merits, Lindell contends (Br. 25) that "[t]he district court erred as a matter of law in concluding that [he] cannot assert a claim directly on the Constitution." The district court cited a District of Minnesota decision (affirmed by this Court, 598 F. App'x 475) for "the familiar principle that 'a party cannot assert a direct cause of action for a constitutional violation.'" Add-31-32; R. Doc. 68, at 31-32 (quoting *Sanvee* v. *Hennepin Cnty. Hum. Servs.*, No. 10-cv-527, 2012 WL 4128388, at *14 (D. Minn. Aug. 13, 2012), R. & R. adopted, 2012 WL 4120507 (D. Minn. Sept. 19, 2012)). But the court analyzed the substance of Lindell's First and Fourth Amendment allegations anyway—and found them uniformly lacking. *See* Add-22-26; R. Doc. 68, at 22-26. Accordingly, this Court need not address the circumstances in which a cause of action may be predicated directly on a provision of the Bill of Rights, as that weighty constitutional question has no bearing on the appropriate disposition here. *See Alma Motor Co.* v. *Timken-Detroit Axle Co.*, 329 U.S. 129, 136 (1946) ("If two questions are raised, one of non-constitutional and the other of constitutional nature, and a decision of the non-constitutional question would make unnecessary a decision of the constitutional question, the former will be decided.").

Appellate Case: 22-3510    Page: 37    Date Filed: 03/15/2023 Entry ID: 5255159

a particular offense"; and (3) "'particularly describe[s] "the things to be seized,"' as well as the place to be searched." *Dalia* v. *United States*, 441 U.S. 238, 255 (1979). Neither of the first two criteria are meaningfully controverted here: The warrant was issued by a federal magistrate judge, who found—on the basis of an "80-page affidavit describ[ing] in considerable detail the nature, scope, and direction of the Government's investigation," Add-4; R. Doc. 68, at 4—probable cause to believe that records and information contained in Lindell's cell phone would likely constitute evidence of three enumerated offenses, *see* R. Doc. 10-3, at 4.

The warrant also identified, with particularity, the place to be searched and the items to be seized. Attachment A specified the precise location—Lindell's person. R. Doc. 10-3, at 3. Attachment B authorized law enforcement to seize the "physical cellular telephone" (identified by a specific call number), as well as 24 categories of records and information within the phone that constitute evidence of the three enumerated offenses. *Id.* at 4-7. The records and information subject to seizure were further limited by a date range ("since November 1, 2020") and a nexus to seven listed individuals. *Id.* at 4. As this Court and others have repeatedly held, a warrant containing such granular specifications amply satisfies the Fourth Amendment's particularity requirement. *See, e.g.*, *United States* v. *Fiorito*, 640 F.3d 338, 346-347 (8th Cir. 2011) (upholding a warrant that authorized a search of the defendant's "'[e]ntire files'" because it also included an "illustrative list" of relevant documents to be seized); *United States* v. *Horn*, 187 F.3d 781, 788 (8th Cir. 1999) (holding that "the words '[r]ecords,

25

documents, receipts . . .' were sufficiently particular to preclude the exercise of any illegal discretion by the executing officers"); *see also United States* v. *Kuc*, 737 F.3d 129, 132-133 (1st Cir. 2013) (holding that a warrant with a broader formulation—"'[a]ll records . . . and tangible objects that constitute evidence, fruits, and instrumentalities of violations of [specified criminal statutes] including, without limitation,' certain enumerated categories of items"—satisfied the particularity requirement); *United States* v. *Adjani*, 452 F.3d 1140, 1148-1149 (9th Cir. 2006) (holding that a computer warrant with a similar formulation satisfied the particularity requirement).

Lindell raises two objections on appeal. First, he asserts (Br. 19-21) that the warrant qualifies as "a general warrant because it seized all data collected on Lindell's cellphone over a period of two years without a particularized description of what items are to be seized and a demonstration of probable cause as to all items." As Lindell seems to acknowledge, however, this aspect of the warrant is a function not of any case-specific determinations but instead of the Federal Rules of Criminal Procedure, with which the warrant undisputedly complies. *See infra* pp. 27-31. Second, Lindell complains (Br. 21-25) that the warrant "lacks the necessary procedural safeguards to assure that his rights guaranteed by the First and Fourth Amendments will not be violated." But the government has complied with well-recognized standards for the review of electronically stored information, and the subject of a search warrant is not entitled to micromanage the investigation into his conduct. *See infra* pp. 31-34.

26

### a.    Because the Warrant Indisputably Complies with Rule 41, Lindell Has No Likelihood of Success on His Fourth Amendment Claim.

Federal Rule of Criminal Procedure 41(e)(2)(B) "acknowledges the need for a two-step process" for the warranted seizure of electronically stored information, under which "officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant." *United States* v. *Beckmann*, 786 F.3d 672, 680 n.6 (8th Cir. 2015); *accord* Fed. R. Crim. P. 41, Advisory Committee's Notes (2009 amend.) (explaining that the two-step process is "inherent in searches for electronically stored information" because "electronic storage media commonly contain such large amounts of information that it is often impractical for law enforcement to review all of the information during execution of the warrant at the search location."). At the first step, the warrant "authorize[s] the seizure of electronic storage media"—here, Lindell's cell phone. Fed. R. Crim. P. 41(e)(2)(B). At the second step, "the warrant authorizes a later review of the media" to locate files that contain evidence of the enumerated crimes—here, the three federal statutes identified in the warrant. *Ibid.*; *see* R. Doc. 10-3, at 4.

Lindell does not dispute that the warrant complies with Rule 41 but contends (Br. 20) that the "two-step procedure [codified in that Rule] is . . . at odds with the text of the Fourth Amendment." Though his constitutional challenge to Rule 41 is likewise meritless, *see infra* pp. 28-31, Lindell's implicit concession that the warrant complies with the Federal Rules of Criminal Procedure is alone fatal to his likelihood of demonstrating

Appellate Case: 22-3510     Page: 40     Date Filed: 03/15/2023 Entry ID: 5255159

a Fourth Amendment violation. While "'Rule 41 and the Fourth Amendment are not coextensive,'" *United States* v. *Schoenheit*, 856 F.2d 74, 77 (8th Cir. 1988), this Court has "h[e]ld that compliance with the provisions of Rule 41 . . . adequately protects the individual's right of privacy guaranteed by the Fourth Amendment," *United States* v. *Hanon*, 428 F.2d 101, 104 (8th Cir. 1970) (en banc); *cf. United States* v. *Kelley*, 652 F.3d 915, 918 (8th Cir. 2011) ("[B]oth the warrant and its execution were reasonable under the Fourth Amendment; indeed, they complied with Federal Rule 41."). Accordingly, Lindell's apparent agreement that the warranted search in this case complied with Rule 41 forecloses his Fourth Amendment claim, and this Court need proceed no further.[9]

In any event, Lindell's criticisms of Rule 41 itself are misplaced. This Court and its sibling circuits have consistently approved the two-step process for the warranted seizure and review of electronic evidence, both before and after that process was codified in the 2009 amendment to Rule 41. *See United States* v. *Bach*, 310 F.3d 1063, 1065-1068 (8th Cir. 2002) (constitutionally reasonable for provider to produce "all of the information" from an email account to the government, which would then review for responsive records); *see also, e.g.*, *United States* v. *Grimmett*, 439 F.3d 1263, 1268-1270

---

[9] That is especially true in this preliminary posture, where Lindell must show that his argument is likely to succeed on the merits. The two-step process codified by Rule 41(e)(2)(B), like the rest of the Federal Rules of Criminal Procedure, was promulgated by the Supreme Court. *See* 28 U.S.C. § 2072(a). Lindell is thus left to argue that the Supreme Court adopted a rule in violation of the Fourth Amendment. The government is not aware of any case (and Lindell identifies none) finding that a plaintiff was likely to prevail on the merits of such a claim.

(10th Cir. 2006) (holding that a warrant for the search of "'any and all'" computer hardware and software authorized both the seizure and subsequent review of the defendant's computer files); *Guest* v. *Leis*, 255 F.3d 325, 335 (6th Cir. 2001) ("Because of the technical difficulties of conducting a computer search in a suspect's home, the seizure of the computers, including their content, was reasonable in these cases to allow police to locate the offending files."); *United States* v. *Hay*, 231 F.3d 630, 637-638 (9th Cir. 2000) (holding that officers were justified in removing computers for off-site search "because of the time, expertise, and controlled environment required for a proper analysis"); *United States* v. *Upham*, 168 F.3d 532, 535 (1st Cir. 1999) ("As a practical matter, the seizure and subsequent off-premises search of the computer and all available disks was about the narrowest definable search and seizure reasonably likely to obtain the images [sought]."). As the Sixth Circuit has explained, "[t]he federal courts are in agreement that a warrant authorizing the seizure of a defendant's home computer equipment and digital media for a subsequent off-site electronic search is not unreasonable or overbroad, as long as the probable-cause showing in the warrant application and affidavit demonstrate a 'sufficient chance of finding some needles in the computer haystack.'" *United States* v. *Evers*, 669 F.3d 645, 652 (6th Cir. 2012).

Against this longstanding consensus, Lindell cites (Br. 20-21) a single unpublished district-court order critiquing "[t]he way in which the government used the 'two-step' warrant" in that particular case and suggesting, in *dicta*, that the government's seizure of a suspect's entire email account amounted to "a modern-day general

29

warrant." *United States* v. *Moulder*, No. 23-cr-27, 2022 WL 3644893, at *4 (D. Minn. Aug. 24, 2022). Setting aside the factual distinctions[10] between that case and this one, the characterization of a Rule 41(e)(2)(B) two-step warrant as a "general warrant" is ahistorical. The general warrants familiar to the Framers "specified only an offense— typically seditious libel—and left to the discretion of the executing officials the decision as to which persons should be arrested and which places should be searched." *Steagald* v. *United States*, 451 U.S. 204, 220 (1981); *see also Wheeler* v. *City of Lansing*, 660 F.3d 931, 941 (6th Cir. 2011) ("[G]eneral warrants that fail to describe with particularity the things to be searched for and seized create a danger of unlimited discretion in the executing officer's determination of what is subject to seizure and a danger that items will be seized when the warrant refers to other items." (quotations omitted)). A warrant imposing specific temporal and subject-matter limitations on the evidence to be collected, *see supra* p. 25, does not become a general warrant simply because reviewing agents must separate responsive and non-responsive records.

Indeed, in the analogous context of physical documents, there is no dispute that a warrant may authorize officers to review broad collections of records to determine which are relevant to the specified offenses. "In searches for papers, it is certain that

---

[10] For example, the *Moulder* court observed that "[c]ertain procedural safeguards built into the warrant could have satisfied the Fourth Amendment," including "segregat[ing] investigators who were performing the search from those who were conducting the investigation." 2022 WL 3644893, at *5. Here, the government has built in such a "safeguard[]" through its use of a filter team. *See infra* pp. 31-34.

Appellate Case: 22-3510    Page: 43    Date Filed: 03/15/2023 Entry ID: 5255159

some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized." *Andresen* v. *Maryland*, 427 U.S. 463, 482 n.11 (1976); *see also United States* v. *Ulbricht*, No. 14-cr-68, 2014 WL 5090039, at *14 (S.D.N.Y. Oct. 10, 2014) (two-step warrants are not "general warrants" because "[i]t has long been perfectly appropriate to search the entirety of a premises or object as to which a warrant has issued based on probable cause, for specific evidence as enumerated in the warrant, which is then to be seized."). That rule is sensible, as officers cannot determine if a record—whether paper or electronic—falls within the scope of the warrant without first reviewing it. Adopting Lindell's argument would turn every warrant to search a large collection of records into a general warrant. *Cf. Grimmett*, 439 F.3d at 1269-1270 (a warrant to search "'any [computer] equipment'" and "'any and all computer software'" was "not an impermissible general search" because a computer search "'may be as extensive as reasonably required to locate the items described in the warrant'"). Because that outcome is irreconcilable with uniform appellate authority approving the two-step approach, he is unlikely to prevail on his Fourth Amendment claim.

> ### b. The Government's Filter-Team Protocol Obviates Lindell's Stated Concerns with the Scope of Its Review, and He Is Not Entitled to Additional Unspecified "Procedural Safeguards."

Lindell contends (Br. 22) that the warrant "lacks the necessary procedural safeguards" to protect his constitutional rights. He does not specify what procedural

31

safeguards are, in his view, "necessary" but absent here. In any event, his claim is wrong twice over: The government is *not* required to adopt special protocols when reviewing lawfully seized electronic data, but it *has* done so in this case in the form of a filter team.

The Fourth Amendment is not so "extreme to require that . . . the court must set forth precisely the procedures to be followed by the executing officers." *Dalia*, 441 U.S. at 258. Lindell has cited no decision of this Court requiring any specific protocols for the review of electronic data seized pursuant to Rule 41. To the contrary, while "acknowledg[ing] that there may be times that a search methodology or strategy may be useful or necessary," this Court has "decline[d] to make a blanket finding that the absence of a search methodology or strategy renders a search warrant invalid per se." *United States* v. *Cartier*, 543 F.3d 442, 447-448 (8th Cir. 2008). Indeed, no federal circuit court currently requires such protocols, and several have expressly rejected arguments that searches of electronic evidence must employ a particular methodology (*e.g.*, keyword searching). *See, e.g.*, *United States* v. *Ulbricht*, 858 F.3d 71, 101-102 (2d Cir. 2017) (rejecting defendant's argument that warrants for Google and Facebook accounts should require keyword searches), abrogated on other grounds by *Carpenter* v. *United States*, 138 S. Ct. 2206 (2018); *United States* v. *Crespo-Ríos*, 645 F.3d 37, 43-44 (1st Cir. 2011) (holding that "government agents cannot simply search certain folders or types of files for keywords" because they could miss relevant evidence); *Adjani*, 452 F.3d at 1149-1150 (cautioning that restricting computer search to specific search terms "would likely have failed to cast a sufficiently wide net to capture the evidence sought").

32

Moreover, even if the government were required to employ unspecified search protocols to the subject's satisfaction, Lindell cannot demonstrate "that he was prejudiced by any search of unrelated files." *Cartier*, 543 F.3d at 447. Lindell contends (Br. 23) "that there was a need to limit the examination of data collected on his cellphone because it contains privileged communications with his attorneys, communications privileged under the First Amendment, and business and personal [communications]." Recognizing the potential intermingling of relevant evidence with privileged communications, the government has taken the prophylactic step of implementing a filter-team protocol to safeguard privileged materials and segregate them from review by the investigative team. *See* Add-29; R. Doc. 68, at 29 (noting that "the Government has implemented filter protocols to safeguard any attorney-client privileged materials that may exist on the cellphone, in order to segregate them from review by the investigat[ive] team").

Although this Court has not directly passed on the question, several of its sibling circuits have approved the use of a walled-off government filter team to review large troves of seized documents. In *United States* v. *Jarman*, 847 F.3d 259 (5th Cir. 2017), for instance, the Fifth Circuit upheld the filter team's screening for privileged materials—a mechanism that, in the court's view, was "designed to protect [the] privileged information." *Id.* at 266. Similarly, in *In re Grand Jury Subpoenas*, 454 F.3d 511 (6th Cir. 2006), the Sixth Circuit explained that, where "government officials have already obtained the physical control of potentially-privileged documents through the exercise

33

of a search warrant[,] . . . the use of the taint team to sift the wheat from the chaff constitutes an action respectful of, rather than injurious to, the protection of privilege." *Id.* at 522-523. In addition, the Second, Third, Seventh, Ninth, Tenth, and Eleventh Circuits have either approved of or recognized and declined to criticize the use of government filter teams to screen materials for privilege before items are released to the investigators in the case. *See, e.g.*, *S.E.C.* v. *Rajaratnam*, 622 F.3d 159, 183 & n.24 (2d Cir. 2010); *Search of Elec. Commc'ns in the Acct. of chakafattah@gmail.com at Internet Serv. Provider Google, Inc.*, 802 F.3d 516, 530 (3d Cir. 2015); *United States* v. *Proano*, 912 F.3d 431, 437 (7th Cir. 2019); *United States* v. *Christensen*, 828 F.3d 763, 799 (9th Cir. 2015); *United States* v. *Ary*, 518 F.3d 775, 780 (10th Cir. 2008); *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235, 1252 (11th Cir. 2021), cert. denied, 143 S. Ct. 88 (2022).[11] Aside from the *ipse dixit* that "[a] filter team cannot cure a violation of the Fourth Amendment's particularity and probable cause requirements," Br. 23, Lindell offers no reason that the filter team employed here is inadequate to protect his interest in any privileged communications stored on his cell phone, nor does he suggest that any other procedure would yield superior results.

---

[11] This Court sits in the same camp, having previously acknowledged, without disapproval, the government's use of "a 'taint team' [to] redact[] privileged conversations" between a prisoner and his attorney. *United States* v. *Howard*, 540 F.3d 905, 906 (8th Cir. 2008). And multiple district courts in this Circuit have held that the government acted "appropriately" by "creating a filter team (or taint team) . . . to identify and screen attorney-client privileged information." *United States* v. *Manzi*, No. 4:19-cr-3094, 2022 WL 874598, at *1 (D. Neb. Mar. 24, 2022); *see also, e.g.*, *United States* v. *Milk*, No. 16-cr-50149, 2020 WL 6255653, at *6 (D.S.D. Oct. 23, 2020).

Appellate Case: 22-3510    Page: 47    Date Filed: 03/15/2023 Entry ID: 5255159

## 2. The Seizure of Lindell's Cell Phone Did Not Violate His First Amendment Rights.

For the reasons discussed *supra* pp. 14-23, Lindell's contention (Br. 10-19) that the warrant violates his First Amendment rights—*i.e.*, because it was "calculated to punish Lindell and to intimidate citizens who might dare to raise questions about the conduct of elections"—lacks merit. Rather than repeating the same arguments refuting Lindell's theory of retaliation, the government will focus on his claim that the district court gave short shrift to his "asserti[on of] his own associational right" (Br. 18-19).

Without doubt, Lindell, like any other citizen, enjoys the First Amendment rights to associate with others and to petition the government for redress of grievances. At the same time, "[t]he [F]irst [A]mendment does not protect against investigation of suspected criminal activity." *Pleasant* v. *Lovell*, 876 F.2d 787, 803 (10th Cir. 1989). The government's investigatory interests in seizing and searching an electronic device, pursuant to a warrant and within the bounds of the Fourth Amendment, are not overridden by Lindell's right to free association. *See Reps. Comm. for Freedom of Press* v. *Am. Tel. & Tel. Co.*, 593 F.2d 1030, 1051 (D.C. Cir. 1978) ("The broad scope of acceptable government investigation, so necessary to the secure enjoyment of [a]ll liberties, unavoidably places a burden on [a]ll citizens."). Indeed, First Amendment rights are "[s]ubject to the general and incidental burdens that arise from good faith enforcement of otherwise valid criminal and civil laws that are not themselves solely directed at curtailing the free flow of information." *Ibid.* "Properly administered, the

preconditions for a warrant—probable cause, specificity with respect to the place to be searched and the things to be seized, and overall reasonableness—should afford sufficient protection against the [First Amendment] harms that are assertedly threatened by warrants." *Zurcher* v. *Stanford Daily*, 436 U.S. 547, 565 (1978); *see Gordon* v. *Warren Consol. Bd. of Educ.*, 706 F.2d 778, 781 n.3 (6th Cir. 1983) ("[A] good faith law enforcement investigation does not violate First Amendment rights, even though it may be directed at communicative or associative activities.").[12]

The district court correctly applied these principles. True, as Lindell recounts (Br. 18), "[t]he opinion below contended that Lindell may only assert his own First Amendment rights, not those of individuals who are not named parties." *See* Add-25 n.7; R. Doc. 68, at 25 n.7 ("Plaintiffs may only assert their own First Amendment rights—not the rights of unnamed associates who are not party to these proceedings."). But that is a correct statement of the law: Lindell cannot act as the representative of all "those who share his beliefs," as he has sometimes suggested. R. Doc. 54, at 13; *see also, e.g.*, App. 1, ¶ 50; R. Doc. 1, ¶ 50 ("These official pronouncements were intended to

---

[12] These precedents contradict Lindell's claim (Br. 24) that the government must satisfy a "heightened standard . . . where the seizure implicates records protected by the First Amendment." The Supreme Court says otherwise: "[A]n application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally." *New York* v. *P.J. Video, Inc.*, 475 U.S. 868, 875 (1986). Accordingly, courts have long "disagree[d]" with the contention that the Fourth Amendment's standards for searches and seizures change when a "criminal investigation . . . interferes with . . . First Amendment interests." *United States* v. *Rubio*, 727 F.2d 786, 791 (9th Cir. 1983).

Appellate Case: 22-3510    Page: 49    Date Filed: 03/15/2023 Entry ID: 5255159

intimate Americans, including Mr. Lindell and his associates, who are actively involved in supporting audits of elections."); *id.* ¶ 60 (attempting to assert the anonymity interest of "many others who have associated with [Lindell] to advance their beliefs about election fraud and the need for election integrity").

Nor can Lindell properly assert (Br. 18) a vicarious "chilling effect" on behalf of those who might be "discouraged from associating with him in his advocacy or would be discouraged from continuing to do so." Rather, Lindell's associational right is limited to his own freedom to *attempt* to collaborate with others. He cannot invoke as a cognizable injury the hypothetical discomfort that unnamed third parties may feel at the prospect of associating with a person under criminal investigation—particularly where Lindell was the one who created this purported associational injury by publicizing the warrant in the first instance. *See Wade* v. *Goodwin*, 843 F.2d 1150, 1152 (8th Cir. 1988) ("Alleging speculative apprehensiveness as to future misuse of information resulting in direct harm is a subjective claim and '[a]llegations of a subjective "chill" are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'"); *cf. United States* v. *Search of Law Off., Residence, & Storage Unit Alan Brown*, 341 F.3d 404, 414-415 (5th Cir. 2003) (declining to countenance plaintiff's argument "that he will suffer irreparable harm because of the reputational damage he would suffer from being indicted"); *Deaver*, 822 F.2d at 69 ("Although it is surely true that an innocent person may suffer great harm to his reputation and property by being erroneously accused of a crime, all citizens must submit to a criminal prosecution

brought in good faith so that larger societal interests may be preserved.").  The district court thus appropriately cabined the constitutional analysis when it determined that "[t]his is not like cases . . . involving the indiscriminate collection of charities' donor information, or member records of groups engaged in advocacy activities, amid threats of reprisal or violence for the members' or donors' affiliation"—all of which directly threatened the members or donors themselves.  Add-25-26; R. Doc. 68, at 25-26.

## D.  The Remaining Preliminary-Injunction Factors Likewise Foreclose Relief.

The remaining *Dataphase* factors also weigh against a preliminary injunction.  Lindell has not established any irreparable injury from the continuation of the government's investigation—and certainly not one that outweighs the strong public interest in the effective and efficient enforcement of federal criminal law.

### 1.  Lindell Has Not Established Irreparable Injury.

To establish irreparable injury, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd.* v. *F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996).  Lindell's sole argument (Br. 27-28) is that "his First Amendment rights have been and continue to be violated" and "[t]he very violation of the First Amendment constitutes irreparable injury."  Where, as here, the moving party pins its irreparable-injury showing entirely on the existence of a constitutional violation and then fails to show a likelihood of such a violation, it has also necessarily failed to establish a threat of irreparable harm.  *See Powell* v. *Noble*, 798

38

F.3d 690, 702 (8th Cir. 2015) (Where plaintiff is "unlikely to succeed in showing his First Amendment rights have been violated," he also "has not shown a threat of irreparable harm that warrants preliminary injunctive relief").

Elsewhere in his brief, Lindell gestures at the "chilling effect" that First Amendment violations can occasion. *See, e.g.*, Br. 16, 27. But a quick scan of publicly available news reports belies the suggestion that Lindell's speech has been chilled. In the six months after federal agents executed the search, Lindell has launched a campaign for the chairmanship of a national political party;[13] discussed the upcoming presidential race at a political conference;[14] and persuaded a California county to cancel its contract with a voting-system vendor[15]—all while continuing to run his online television network, FrankSpeech.com. Lindell thus remains a prolific contributor to "the 'open marketplace of ideas protected by the First Amendment.'" *Iowa Right To Life Comm., Inc.* v. *Tooker*, 717 F.3d 576, 599 (8th Cir. 2013). He has suffered no impairment of his constitutional rights nor any other injury that would justify equitable relief.

---

[13] Jared Gans, *Mike Lindell says 'God willing,' he will challenge Ronna McDaniel for RNC chair*, THE HILL (Nov. 25, 2022), https://thehill.com/homenews/campaign/3750392-mike-lindell-says-god-willing-he-will-challenge-ronna-mcdaniel-for-rnc-chair/.

[14] Cheryl Teh, *Mike Lindell called Ron DeSantis a 'Trojan Horse' for the left in a rant at CPAC*, BUSINESS INSIDER (Mar. 3, 2023), https://www.businessinsider.com/mike-lindell-ron-desantis-trojan-horse-cpac-2023-3.

[15] Jessica Garrison, *With unfounded fraud claims swirling, red California county dumps Dominion voting machines*, L.A. TIMES (Mar. 1, 2023), https://www.latimes.com/california/story/2023-03-01/shasta-cuts-tied-with-dominion-amid-unfounded-voting-fraud-claims.

Appellate Case: 22-3510     Page: 52     Date Filed: 03/15/2023 Entry ID: 5255159

## 2. The Balance of Equities and the Public Interest Strongly Favor the Government.

The balance of harms and the public interest—which "merge" when a plaintiff seeks injunctive relief against the government, *Nken* v. *Holder*, 556 U.S. 418, 435 (2009)—likewise favor affirmance. Lindell's argument on the balancing test again relies on the assumption that his constitutional rights have been violated. *See* Br. 28-29 ("The protection of individual constitutional rights serves the public interest. . . . The interest in protecting freedom of speech and association in this case plainly outweighs the Government's interest."). Because Lindell is not likely to prevail on his constitutional claims, he necessarily fails these factors as well.

The public, by contrast, has a significant "interest in effective law enforcement." *Roviaro* v. *United States*, 353 U.S. 53, 59 (1957); *Barnes* v. *Dormire*, 251 F.3d 767, 769 (8th Cir. 2001) (same). Permitting individuals to enjoin the government from investigating criminal conduct through civil litigation would "unnecessarily impair the performance of a core executive constitutional function." *Armstrong*, 517 U.S. at 465. The public also has an important "interest in the *prompt* resolution of criminal cases." *United States* v. *Williams*, 511 F.3d 1044, 1054 (10th Cir. 2007) (emphasis added); *see Cobbledick* v. *United States*, 309 U.S. 323, 325 (1940) ("To be effective, judicial administration must not be leaden-footed. Its momentum would be arrested by permitting separate reviews of the component elements in a unified cause. These considerations of policy are especially compelling in the administration of criminal justice."). That interest, too,

40

would be compromised if Lindell were allowed to delay the government's investigation for an indefinite period while litigating his sundry constitutional claims. Indeed, the Supreme Court has recognized that "'[e]xamining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *Armstrong*, 517 U.S. at 465. All those reasons militate against the relief that Lindell seeks here.

## II. The District Court Correctly Denied Lindell's Motion for the Return of Property Seized Pursuant to the Warrant.

Lindell raises a cursory claim (Br. 29-30) that the district court erred by failing to order the immediate relinquishment of his cell phone pursuant to Federal Rule of Criminal Procedure 41(g), which permits "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property [to] move for the property's return." For largely the reasons already discussed, his arguments are unavailing.

When a plaintiff seeks the return of seized property prior to the filing of criminal charges, such a motion "is more properly considered a suit in equity rather than one under the Rules of Criminal Procedure," and "[f]ederal courts have recognized an independent cause of action for return of property based on the general equitable jurisdiction of the federal courts." *Black Hills Inst. of Geological Rsch.* v. *U.S. Dep't of Just.*, 967 F.2d 1237, 1239 (8th Cir. 1992). This Court has emphasized that "[t]his remedy should be exercised cautiously and subject to general equitable principles." *Ibid.*

Appellate Case: 22-3510     Page: 54     Date Filed: 03/15/2023 Entry ID: 5255159

Indeed, "[t]hese remedies are extraordinary, and they must be used with restraint." *Matter of Search of 4801 Fyler Ave.*, 879 F.2d 385, 389 (8th Cir. 1989); *accord Trump* v. *United States*, 54 F.4th 689, 697 (11th Cir. 2022) ("Only the narrowest of circumstances permit a district court to invoke equitable jurisdiction [over a motion for return of property]. Such decisions 'must be exercised with caution and restraint,' as equitable jurisdiction is appropriate only in 'exceptional cases where equity demands intervention.'").

Accordingly, courts consider (1) "whether the [seizure] involved a callous disregard for constitutional rights," (2) "whether the party seeking return has an individual interest in and need for the property," (3) "whether the party has an adequate remedy at law," and (4) "whether the property would be irreparably damaged by a failure to return." *Black Hills*, 967 F.2d at 1239-1240; *see also Trump*, 54 F.4th at 697 (describing Eleventh Circuit's identical framework as "an exacting test"). Further, "when the owner of seized property seeks injunctive relief . . . while the case remains in the investigative stage (i.e. before criminal charges are brought), the district court must also balance the government's interest in retaining the property against the owner's right to get it back." *Black Hills*, 967 F.2d at 1240; *cf.* Fed. R. Crim. P. 41, Advisory Committee's Notes (1989 amend.) ("If the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable.").

## A.    Standard of Review

In a standard appeal of a decision concerning return of property under Rule 41(g), "[t]his [C]ourt reviews 'the district court's legal conclusions de novo and its

Appellate Case: 22-3510     Page: 55     Date Filed: 03/15/2023 Entry ID: 5255159

findings of fact for clear error.'" *Jackson* v. *United States*, 526 F.3d 394, 396 (8th Cir. 2008). Where, however, the motion precedes indictment and thus invokes equitable powers, this Court "must determine whether the district court abused its discretion" by exercising (or not) jurisdiction. *4801 Fyler Ave.*, 879 F.2d at 388; *accord* Lindell Br. 4 ("Test for return of property and callous disregard reviewed for abuse of discretion.").

### B. Lindell Has Not Demonstrated a Callous Disregard of His Constitutional Rights.

The first factor—whether a "callous disregard" of the movant's Fourth Amendment protection against unreasonable searches and seizures has occurred—is "the 'foremost consideration' for a court when deciding whether it may exercise its equitable jurisdiction in this context." *Trump*, 54 F.4th at 698. "Because the vast majority of subjects of a search warrant have not experienced a 'callous disregard' of their constitutional rights, this factor ensures that equitable jurisdiction remains extraordinary. Otherwise, 'a flood of disruptive civil litigation' would surely follow. . . . This restraint guards against needless judicial intrusion into the course of criminal investigations—a sphere of power committed to the executive branch." *Ibid.*

For the reasons stated *supra* pp. 14-23, 35-38, Lindell has not established any violation of the First Amendment—much less a "callous" one.[16] And Lindell's

---

[16] In any event, this Court's precedent "holds that such jurisdiction is proper only upon a showing of callous disregard of the *fourth amendment*[.]" *4801 Fyler Ave.*, 879 F.2d at 387 (emphasis added). Lindell has pointed to no decision of this Court holding that a *First Amendment* violation supports the exercise of equitable jurisdiction to order the pre-indictment return of property seized in compliance with the Fourth Amendment.

43

perfunctory contention (Br. 30) that "[t]he Government[] disregard[ed] . . . his Fourth Amendment rights by the over-seizing of sensitive data" cannot overcome the substantial record evidence demonstrating the government's good faith in obtaining the warrant, executing the search, and reviewing the seized electronic information.

As discussed, the seizure of Lindell's phone complied with both the Fourth Amendment and the more exacting requirements of Rule 41. But even a defect in the warrant would not constitute "callous disregard" in these circumstances. This Court's decision in *4801 Fyler Ave.*, *supra*, is instructive. There, as here, "[t]he federal agents [conducting the search] first obtained a warrant from a [federal j]udge." 879 F.2d at 388. There, as here, the warrant application included "a lengthy and detailed affidavit describing a broad range of illegal activity to establish probable cause." *Ibid.*; *cf.* Add-4; R. Doc. 68, at 4 (finding that "[t]he Government's 80-page affidavit describes in considerable detail the nature, scope, and direction of [its] investigation"). There, as here, "the officers acted in objective good faith" in relying on the warrant. *4801 Fyler Ave.*, 879 F.2d at 388; *cf.* Add-23; R. Doc. 68, at 23 (finding that "the agents responsible for its execution acted in objective good faith"). And there, this Court concluded that the movant was "unable to show that the government acted in callous disregard of its fourth amendment rights" and thus could not compel the return of its property. *4801 Fyler Ave.*, 879 F.2d at 388. The same result should obtain here.[17]

_____

[17] Indeed, the circumstances of this case are, if anything, even more solicitous of Lindell's rights than those highlighted in *4801 Fyler Ave.* Lindell publicly praised the

Appellate Case: 22-3510     Page: 57     Date Filed: 03/15/2023 Entry ID: 5255159

## C.    The Other Factors Also Favor the Government.

Although Lindell's failure to "show[ a] callous disregard of the fourth amendment" precludes the relief he seeks, *4801 Fyler Ave.*, 879 F.2d at 387, he likewise cannot satisfy the remaining prerequisites.

1.    Lindell will not suffer irreparable harm absent the immediate return of his cell phone.  In this context, irreparable harm "must be actual and not theoretical," *Packard Elevator* v. *I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986), and it must be "certain and great and of such imminence that there is a clear and present need for equitable relief," *Roudachevski* v. *All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011).  "Simple unsupported allegations . . . or speculations as to future harm are not sufficient to establish irreparable injury." *4801 Fyler Ave.*, 879 F.2d at 388.

Lindell catalogues (Br. 30) his alleged harms in one sentence: "The return of attorney-client and other privileged communications with his network of associates, and business records for the period in which there was no back-up are essential to the efficient operation of his businesses and for the pursuit of his objective to publicize the need to address election fraud and to eliminate computerized voting systems."

None of these asserted injuries is "irreparable," "certain," "great," and "imminen[t]."  With respect to his "privileged communications," the government's

---

agents who executed the search for having been "very gracious" during the encounter. R. Doc. 50-1, at 14:31-14:50.  And following the seizure, the government employed— on its own initiative—a resource-intensive filter protocol to protect any privileged communications that might be stored on Lindell's cell phone. *See supra* p. 33.

filter protocols will safeguard such materials and segregate them from review by the investigative team. *See supra* p. 33; *cf. Trump* v. *United States*, No. 22-13005, 2022 WL 4366684, at *8 (11th Cir. Sept. 21, 2022) (declining to find that plaintiff would be harmed by government review of sensitive information because "permitting the United States to retain the documents does not suggest that they will be released"). With respect to any business ramifications, "Lindell himself has admitted that the contents of his cellphone were backed up only days before the warrant was executed," and "[h]e thus should have access via backup to all but a few days' worth of business information," Add-29; R. Doc. 68, at 29; moreover, a movant's "[s]imple unsupported allegations of business disruption . . . are not sufficient to establish irreparable injury," *4801 Fyler Ave.*, 879 F.2d at 388; *see also Deaver*, 822 F.2d at 68-69 (rejecting plaintiff's contention that "the 'continuing destruction of his business'" allegedly traceable to the pending prosecution constituted a cognizable injury). And with respect to his "objective to publicize the need to address election fraud and to eliminate computerized voting systems," Lindell's ubiquitous presence on television and at political gatherings, *see supra* p. 39, forecloses any suggestion that the warranted seizure of his cell phone has deprived him of a platform to "publicize" his views.

**2.** Similarly, Lindell cannot establish a pressing need for the particular device presently in government custody. Nothing prevents Lindell from acquiring a replacement cell phone and loading it with all the content of the seized phone that was backed up to remote cloud storage days before the execution of the search. Notably,

that content would include any "communications with his attorneys and associates" that he claims (Br. 30) "[h]e needs . . . to continue his advocacy."

**3.** Finally, Lindell has an adequate remedy at law. In other cases seeking the pre-indictment return of seized property, this Court "has recognized that, in most situations, the remedy of a post-indictment motion to suppress is an adequate remedy." *Wilansky* v. *United States*, 326 F. Supp. 3d 784, 793 (D. Minn. 2018); *4801 Fyler Ave.*, 879 F.2d at 389 (movant has an adequate remedy to challenge the search through a motion to suppress should criminal proceedings be instituted). As the Supreme Court has explained, "[t]he Constitution protects property owners . . . by interposing, *ex ante*, the 'deliberate, impartial judgment of a judicial officer' . . . and by providing, *ex post*, a right to suppress evidence improperly obtained and a cause of action for damages." *United States* v. *Grubbs*, 547 U.S. 90, 99 (2006). Lindell offers no basis for this Court to interpose an additional forum in which every subject of every search warrant may litigate a proprietary claim in the midst of an ongoing investigation. *See Trump*, 54 F.4th at 694 (noting that such a departure would "drastically expand the availability of equitable jurisdiction for every subject of a search warrant").

\*  \*  \*

The government obtained a valid warrant for Lindell's phone, and Lindell is not entitled to its return until after the government's investigation and any resulting prosecution have concluded. *See United States* v. *Christie*, 717 F.3d 1156, 1167 (10th Cir. 2013) ("[L]awfully seized property bearing evidence relevant to trial 'should be returned

to its rightful owner once the criminal proceedings have terminated,' not before."). Indeed, Rule 41(g) "is not intended to deny the United States the use of evidence permitted by the fourth amendment and federal statutes." Fed. R. Crim. P. 41, Advisory Committee's Notes (1989 amend.). And because Lindell is not entitled to an exercise of the Court's equitable jurisdiction to enjoin an ongoing federal criminal investigation, he is likewise not entitled to an order requiring the government's premature relinquishment of evidence lawfully seized as part of that investigation.

## CONCLUSION

For the foregoing reasons, this Court should affirm the disposition below.

Respectfully submitted,

KENNETH A. POLITE, JR.
    Assistant Attorney General

LISA H. MILLER
    Deputy Assistant Attorney General

*s/ Joshua K. Handell*

JOSHUA K. HANDELL
    Attorney, Appellate Section
    Criminal Division, Ste. 1515
    United States Department of Justice
    950 Pennsylvania Avenue N.W.
    Washington, DC 20530
    (202) 305-4244
    joshua.handell@usdoj.gov

JONATHAN E. JACOBSON
    Attorney, Public Integrity Section

FRANK LIN
    Attorney, Computer Crime and
        Intellectual Property Section

March 14, 2023

Appellate Case: 22-3510    Page: 61    Date Filed: 03/15/2023 Entry ID: 5255159

# CERTIFICATE OF COMPLIANCE

**1.** This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 12,970 words (excluding those portions exempted by Rule 32(f)), as verified by the word-count feature of Microsoft Word 2019.

**2.** This brief complies with the type-size and type-face requirements of Rules 32(a)(5) and (6) because it has been prepared in 14-point Garamond font.

**3.** This brief has been scanned for viruses with the most recent version of McAfee Endpoint Security, version 10.50, which is continuously updated, and according to that program, is free of viruses.

*s/ Joshua K. Handell*

JOSHUA K. HANDELL
    Attorney, Appellate Section
    Criminal Division, Ste. 1515
    United States Department of Justice
    950 Pennsylvania Avenue N.W.
    Washington, DC 20530
    (202) 305-4244
    joshua.handell@usdoj.gov

# CERTIFICATE OF SERVICE

I certify that on March 14, 2023, I caused the foregoing brief to be served upon

the filing users identified below through the Court's CM/ECF system:

Patrick M. McSweeney
Christopher I. Kachouroff
Lyndsey L. Bisch
McSweeney, Cynkar & Kachouroff, PLLC
13649 Office Place, Suite 101
Woodbridge, VA 22192
(804) 937-0895
patrick@mck-lawyers.com

Alan Dershowitz
Harvard Law School
1575 Massachusetts Avenue
Cambridge, MA 02138
(617) 495-4621
alandersh@gmail.com

Kurt Olsen
Olsen Law, P.C.
1250 Connecticut Ave. N.W., Ste. 700
Washington, DC 20036
(202) 408-7025

*Counsel for Plaintiffs-Appellants Michael Lindell and MyPillow, Inc.*

s/ *Joshua K. Handell*
JOSHUA K. HANDELL
    Attorney, Appellate Section
    Criminal Division, Ste. 1515
    United States Department of Justice
    950 Pennsylvania Avenue N.W.
    Washington, DC 20530
    (202) 305-4244
    joshua.handell@usdoj.gov