**No. 22-3510**

## United States Court of Appeals
### For the Eighth Circuit

MICHAEL J. LINDELL,
MYPILLOW, INC.,

*Plaintiffs-Appellants,*

v.

UNITED STATES OF AMERICA,
MERRICK GARLAND,
in his official capacity as
Attorney General of the United States,
THE UNITED STATES ATTORNEY
FOR THE DISTRICT OF MINNESOTA, and
CHRISTOPHER WRAY,
in his official capacity as
Director of the Federal Bureau
of Investigation,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Minnesota
No. 22-cv-2290

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

PATRICK M. MCSWEENEY
CHRISTOPHER I. KACHOUROFF
LYNDSEY L. BISCH
McSweeney, Cynkar &
Kachouroff, PLLC
13649 Office Place, Suite 101
Woodbridge, Virginia 22192
(804) 937-0895

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

I.  LINDELL HAS ESTABLISHED THAT HE IS LIKELY TO PREVAIL ON HIS CONSTITUTIONAL CLAIMS .......................................................... 1

A.  Lindell presented a *prima facie* case that the Government has violated his First Amendment Rights**........................................................................1**

1.  Neither the *Younger* abstention doctrine nor the separation of powers doctrine bars courts from enjoining ongoing criminal proceedings undertaken to retaliate for or to discourage the exercise of First Amendment rights. ....................................................................... 1

2.  Lindell showed that the Government's motivation in retaliating against him by launching the investigation and executing the search and seizure warrant was to punish him for his participation in the making and publishing of the forensic image of the Mesa County election management system server. ............................................................ 3

3.  The Government's argument that Lindell's First Amendment rights were not violated because the warrant was part of a good faith enforcement of criminal laws is without merit because the warrant violates the Fourth Amendment. .................................................................................... 9

4.  The Government has no basis for its contention that Lindell must challenge the constitutionality of a criminal statute..................................... 10

5.  Lindell claims retaliation, not selective enforcement. ................................. 10

6.  A post-indictment remedy cannot cure a First Amendment violation..... 11

7.  Lindell may assert his own association rights. ............................................. 12

B.  Lindell presented a *prima facie* case that the government violated his fourth amendment rights**.........................................................................13**

1.  Lindell demonstrated that the warrant violated the particularity requirement of the Fourth Amendment..................................................... 13

2.  A filter team cannot cure violations of the Fourth Amendment............. 17

II.  LINDELL HAS SUFFERED IRREPARABLE INJURY....................................... 18

i

III.   THE BALANCE OF THE EQUITIES FAVORS LINDELL ......................... 18

CONCLUSION ........................................................................................... 19

Appellate Case: 22-3510     Page: 3     Date Filed: 04/07/2023 Entry ID: 5263063

## Cases

*Ackerman v. State of Iowa,*
   19 F.4th 1045 (8th Cir. 2021) .......................................................................... 4, 9

*Anderson v. Schultz,*
   871 F.2d 762 (8th Cir. 1989) ............................................................................ 2, 9

*Andresen v. Maryland,*
   427 U.S. 463 (1976) ............................................................................................ 17

*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011) ............................................................................................ 13

*Benner v. St. Paul Pub. Schools, ISD #625,*
   380 F.Supp.3d 860 (D.Minn. 2019) .................................................................. 7

*Broussard v. Hollenhorst,*
   No. 22-cv-0342, 2022 WL 748470 (D.Minn. Mar. 11, 2022),
   *aff'd,* No. 22-1774, 2022 WL 10557060 (8th Cir. Sept. 9, 2022) ................... 1

*Burke v. Boeing Co.,*
   42 F.4th 706 (7th Cir. 2022) .............................................................................. 11

*Cody v. Weber,*
   256 F.3d 764 (8th Cir. 2001) .............................................................................. 19

*Community -Service Broadcasting of Mid-America, Inc. v. FCC,*
   593 F.2d 1102 (1978) ............................................................................................ 6

*Crawford-El v. Britton,*
   93 F.3d 813 (D.C.Cir. 1996), *vacated on other grounds,* 520 U.S. 1273 (1997) ................. 7

*Cullen v. Fliegner,*
   18 F.3d 96 (2d Cir. 1994) ...................................................................................... 2

*Deaver v. Seymour,*
   822 F.2d 66 (D.C. Cir. 1987) ............................................................................... 3

*Fifth Third Bancorp. v. Dudenhoeffer,*
   573 U.S. 409 (2014) ............................................................................................ 11

Appellate Case: 22-3510    Page: 4    Date Filed: 04/07/2023 Entry ID: 5263063

*Groh v. Ramirez,*
    540 U.S. 551 (2004) ................................................................ 14

*Hartman v. Moore,*
    547 U.S. 250 (2006) .................................................................. 4

*Housing Works, Inc. v. City of New York,*
    72 F.Supp.2d 402 (S.D.N.Y. 1999) ........................................... 4

*In re Al-Nashiri,*
    835 F.3d 110 (D.C.Cir. 2016) .................................................... 3

*In re Kunstler,*
    914 F.2d 505 (4th Cir.1990) ...................................................... 2

*Kinney v. Weaver,*
    367 F.3d 337 (5th Cir. 2004) ..................................................... 2

*Lacey v. Maricopa Cnty.,*
    693 F.3d 896 (9th Cir. 2012) ..................................................... 4

*League of Women Voters v. Hargett,*
    400 F.Supp.3d 706 (M.D.Tenn. 2019) ..................................... 11

*Leonard v. Ala. St. Bd. of Pharmacy,*
    61 F.4th 902 (11th Cir. 2023) .................................................... 2

*Lewellen v. Raff,*
    843 F.2d 1103 (8th Cir. 1988) .......................................... 2, 3, 9, 10

*Marcus v. Iowa Pub. Television,*
    97 F.3d 1137 (8th Cir. 1996) ................................................... 12

*Mendocino Envtl. Ctr. v. Mendocino Cnty.,*
    192 F.3d 1283 (9th Cir. 1999) ................................................. 19

*NAACP v. Alabama ex rel. Patterson,*
    357 U.S. 449 (1958) ................................................................ 16

*Phelps v. Hamilton,*
    59 F.3d 1058 (10th Cir. 1995) ................................................... 2

iv

*Pollard v. Roberts,*
   283 F.Supp. 248 (E.D.Ark.), *aff'd,* 393 U.S. 14 (1968) ................................................... 13

*Privitera v. Cal. Bd. of Med. Qual. Assur.,*
   926 F.2d 890 (9th Cir. 1991) ................................................... 2

*Riley v. California,*
   573 U.S. 373 (2014) ................................................... 14

*Riley v. Nat'l Fed. of the Blind of N. C.,*
   487 U.S. 781 (1988) ................................................... 9

*Roberts v. U.S. Jaycees,*
   468 U.S. 609 (1984) ................................................... 12

*Roman Catholic Diocese of Brooklyn v. Cuomo,*
   141 S.Ct. 63 (2020) ................................................... 18

*Sibbach v. Wilson & Co., Inc.,*
   312 U.S. 1 (1941) ................................................... 17

*Smart v. Bd. of Trustees of Univ. of Ill.,*
   334 F.3d 432 (3d Cir. 1994) ................................................... 2

*Smith v. Meese,*
   821 F.2d 1484 (1987) ................................................... 2, 3

*Stanford v. Texas,*
   379 U.S. 476 (1975) ................................................... 14, 17

*Torres v. Madrid,*
   141 S.Ct. 989 (2021) ................................................... 14

*United States v. Allery,*
   139 F.3d 609 (8th Cir. 1998) ................................................... 7, 9

*United States v. Jones,*
   565 U.S. 460 (2012) ................................................... 14

*United States v. Moulder, No. 23-cr-27,*
   2022 WL 3644893, at *4 (D.Minn. Aug. 24, 2022) ................................................... 17-18

Appellate Case: 22-3510    Page: 6    Date Filed: 04/07/2023 Entry ID: 5263063

*United States v. P.H.E., Inc.,*
  965 F.2d 848 (10th Cir. 1992) ............................................................. 2

*Watkins v. United States,*
  354 U.S. 178 (1957) ............................................................................. 6

*Watson v. Rozum,*
  834 F.3d 417 (3d Cir. 2013) ................................................................. 4

*Whole Woman's Health v. Smith,*
  896 F.3d 362 (5th Cir. 2018) ............................................................... 6

*Worrell v. Henry,*
  219 F.3d 1197 (10th Cir. 2000) ........................................................... 2

*Younger v. Harris,*
  401 U.S. 37 (1971) ............................................................................... 1

*Zurcher v. Stanford Daily,*
  436 U.S. 547 (1978) ........................................................................... 10

## Statutes

18 U.S.C. § 1028(a)(7) ......................................................................... 11

18 U.S.C. § 1030(a)(5)(A) .................................................................... 11

18 U.S.C. § 371 ................................................................................... 11

52 U.S.C. §20701 ............................................................................. 5, 11

F. R. Crim.P. 41 ..........................................................................15, 16, 17

Rule 41 .............................................................................................. 18

## Constitutional Provisions

U.S. Const. Amend. I ...................................................................1, 3, 10, 12

Appellate Case: 22-3510     Page: 7     Date Filed: 04/07/2023 Entry ID: 5263063

U.S. Const. Amend. IV ......................................................................................... 13

**<u>Other Authorities</u>**

Adam M. Gershowitz, *The Post-Riley Search Warrant: Search Protocols and Particularity in Cell Phone Searches,* 69 VAND. L. REV. 585, 591 (2016) .............................................. 18

Appellate Case: 22-3510    Page: 8    Date Filed: 04/07/2023 Entry ID: 5263063

Appellants Michael J, Lindell and MyPillow, Inc. (collectively, "Lindell") submit this Reply Brief in answer to Appellees' Response Brief.

# I. LINDELL HAS ESTABLISHED THAT HE IS LIKELY TO PREVAIL ON HIS CONSTITUTIONAL CLAIMS

## A. Lindell presented a *prima facie* case that the Government has violated his First Amendment Rights

The Government does not dispute that to establish the likelihood of success on the merits of a claim on a motion for preliminary injunction, Lindell need only present a *prima facie* case for that claim. Opening Br. at 10. Lindell has done so with respect to his First Amendment claim.

### 1. Neither the *Younger* abstention doctrine nor the separation of powers doctrine bars courts from enjoining ongoing criminal proceedings undertaken to retaliate for or to discourage the exercise of First Amendment rights.

The Government is mistaken that the decision in *Younger v. Harris,* 401 U.S. 37 (1971) prohibits federal courts from enjoining ongoing **federal** criminal proceedings. Gov't Br. at 9-20. But *Younger* does not apply to federal criminal proceedings. *Broussard v. Hollenhorst,* No. 22-cv-0342, 2022 WL 748470, *6 (D.Minn. Mar. 11, 2022), *aff'd,* No. 22-1774, 2022 WL 10557060 (8th Cir. Sept. 9, 2022) ("This action does not involve *Younger* abstention itself…."). The court in *Broussard* reasoned that because of "the close connection between *Younger* abstention and the abstention the Court applies here, the Court sees little reason why the rationale underlying the stay-abstention distinction should not apply here.". *Broussard* involved a federal

1

prosecution for illegally distributing controlled substances and no claim that the defendant was being punished for exercising his First Amendment rights. *Broussard* is inapposite.

In *Lewellen v. Raff,* 843 F.2d 1103 (8th Cir. 1988), this Court rejected the argument that *Younger* supported abstention of the state criminal proceeding in that case, stating:

> A showing that a prosecution was brought to retaliate for or to discourage the assertion of constitutional rights "will justify an injunction regardless of whether valid convictions could be obtained."

*Id.,* at 1109-10. The Government contends that courts have consistently declined to enjoin criminal proceedings. Gov't Br. at 10. Those contentions are at odds with the decisions of the numerous federal courts in other circuits that have adopted the same test as established in *Lewellen.*[1]

The Government's reliance on *Deaver v. Seymour,* 822 F.2d 66 (D.C. Cir. 1987) is misplaced. Gov't Br. at 9-14. Unlike *Lewellen* and this case, no First Amendment violation was asserted in *Deaver.* The injury in *Deaver* was "incidental to every criminal

---

[1] *E.g., Kinney v. Weaver,* 367 F.3d 337, 361-62 (5th Cir. 2004); *Worrell v. Henry,* 219 F.3d 1197,1212 (10th Cir. 2000); *Phelps v. Hamilton,* 59 F.3d 1058, 1066 (10th Cir. 1995); *Smart v. Bd. of Trustees of Univ. of Ill.,* 334 F.3d 432, 434 (3d Cir. 1994); *United States v. P.H.E., Inc.,* 965 F.2d 848, 851 (10th Cir. 1992); *Cullen v. Fliegner,* 18 F.3d 96, 103-04 (2d Cir. 1994); *Privitera v. Cal. Bd. of Med. Qual. Assur.,* 926 F.2d 890, 898 (9th Cir. 1991); *Smith v. Meese.* 821 F.2d 1484, 1490-91 (11th Cir. 1987); *but see Leonard v. Ala. St. Bd. of Pharmacy,* 61 F.4th 902, 911 (11th Cir. 2023) (no constitutional right claimed); *In re Kunstler,* 914 F.2d 505, 510 (4th Cir.1990) (no showing of bad faith prosecution). *Lewellen* has been followed in this circuit in *Anderson v. Schultz,* 871 F.2d 762 (8th Cir. 1989).

2

proceeding brought lawfully and in good faith." *Id.* at 72 (Ginsburg, J., concurring). *Deaver* is plainly inapposite.

The rationale of the *Lewellen* opinion that the interest of plaintiffs in exercising their constitutional rights supersedes the interests of federalism, comity, and equity provides the analytical approach that this Court should adopt in deciding whether Lindell's interest in exercising his First Amendment rights supersedes the concern about separation of powers that may be implicated by this case. 843 F.2d at 1109-10. The Eleventh Circuit squarely rejected the separation-of-powers argument raised by the Government here. *Smith v. Meese,* 821 F.2d 1484, 1489-93 (1987); *see also In re Al-Nashiri,* 835 F.3d 110, 128 (D.C.Cir. 2016) (injunction of federal prosecution permitted on showing of "extraordinary circumstances" and "great, immediate, and irreparable injuries"). The *Lewellen* exception to the *Younger* doctrine is based on virtually identical factors. 843 F.2 at 1109.

> **2. Lindell showed that the Government's motivation in retaliating against him by launching the investigation and executing the search and seizure warrant was to punish him for his participation in the making and publishing of the forensic image of the Mesa County election management system server.**

The Government contends that Lindell has neither alleged nor established that the investigation is retaliatory. Gov't Br. at 17. Its argument is at odds with the applicable principles adopted by the Supreme Court and this Court. The requirements for establishing a *prima facie* case of retaliation are that Lindell must show that the

3

conduct that allegedly prompted the retaliation was constitutionally protected and that his conduct was a substantial or motivating factor in the Government's adverse action. *Ackerman v. State of Iowa,* 19 F.4th 1045, 1058 (8th Cir. 2021). To demonstrate a First Amendment violation, Lindell must allege and prove that the Government punished him for or chilled the exercise of his freedom of speech, his freedom of association, his freedom of the press, and his right to petition for the redress of grievances. *Hartman v. Moore,* 547 U.S. 250, 256 (2006); *Lacey v. Maricopa Cnty.,* 693 F.3d 896, 936-37 (9th Cir. 2012).

Lindell plainly alleged and demonstrated a pattern of conduct by the Government directed at those who question the legitimacy of the 2020 presidential election. Opening Br. at 10-12; App-47-49; R.Doc. 1, ¶¶ 47-49, 52. 54App-. 30, ¶ 21; R.Doc. 10-4, at ¶ 21 App- 84-85, 116; R.Doc. 75, at 41-42, 73: *see Watson v. Rozum,* 834 F.3d 417, 424 (3d Cir. 2013); *Housing Works, Inc. v. City of New York,*72 F.Supp.2d 402, 426 (S.D.N.Y. 1999), *appeal dismissed as moot,* 203 F.3d 176 (2d Cir. 2000) (pattern formed a basis for claim). Lindell is perhaps the most prominent advocate for election audits. The Government threatened to treat "election deniers" as enablers of domestic violence by spreading "narratives of fraud in the recent general election." App-10, ¶¶47-49; R.Doc. 1, ¶¶47-49. Attorney General Garland issued a statement threatening potential investigation and prosecution of those who pursue election audits. App-10, ¶ 49; R.Doc. 1, ¶ 49. The investigation and the issuance of  search and seizure warrant

4

for Lindell's cellphone were the most immediate and gravest of the Government's retaliatory conduct. App-11, ¶52.

The Government does not dispute that it launched the investigation that led to the issuance of the warrant in this case based on the making and publishing of the forensic images of the Mesa County, Colorado election management system ("EMS") server. App. 27, ¶ 7;R.Doc.10-4, ¶7. It retaliated because Lindell and his associates alerted the public to Colorado Secretary of State Jena Griswold's violation of the federal statute mandating the preservation of election records for 22 months, as well as evidence of election irregularities, especially the conclusions of cyber experts who reported that an unauthorized computer program that enabled tampering with ballot tabulations had been installed on the Mesa County EMS server. App.38-39;R.Doc. 39-1, at 9-10.

Lindell established that the Government had decided to undertake the investigation in bad faith because it chose to pursue him and those who preserved the election records, as 52 U.S.C. §20701 mandates, instead of prosecuting the Colorado Secretary of State Jena Griswold for violating that statute by directing all local election officials to install the Dominion Trusted Build Update that deleted records of the 2020 election, including Dominion's unauthorized software program. App-38-39; R.Doc. 39-1, at 9-10. Lindell also showed that he had been under surveillance without a warrant so that he could be located during an out-of-state hunting trip and detained

5

by FBI agents at a fast-food restaurant in Mankato, Minnesota and served with the search warrant. App-29, ¶ 13; R.Doc. 10-4, ¶13.

The actions of the Government described in the Complaint and Lindell's declaration caused a chilling effect. The District of Columbia Circuit has described that effect, as follows:

> Chilling effect is, by its very nature, difficult to establish in concrete and quantitative terms; the absence of any direct actions against individuals assertedly subject to a chill can be viewed as much as proof of the success of the chill as of any need for concern . . . . The absence of such concrete evidence, however, does not mandate dismissal of the claim out of hand; rather, it is the task of the court to evaluate the likelihood of any chilling effect . . . .

*Community -Service Broadcasting of Mid-America, Inc. v. FCC,* 593 F.2d 1102, 1118 (1978). The mere issuance of the warrant likely had a chilling effect in this case. *See Watkins v. United States,* 354 U.S. 178, 197-98 (1957); *Whole Woman's Health v. Smith,* 896 F.3d 362, 373 (5th Cir. 2018). The test in retaliation cases is whether the actions of the Government "would chill or silence a person of ordinary firmness from future First Amendment activities." *Crawford-El v. Britton,* 93 F.3d 813, 826 (D.C.Cir. 1996), *vacated on other grounds,* 520 U.S. 1273 (1997). Lindell met that test.[2]

---

[2] In footnote 5 of its brief, the Government points to statements made by Lindell's trial counsel that Lindell was not seeking an injunction, Those remarks should be viewed in connection with Lindell's motion for return of property, which should not have been stayed or rejected on abstention grounds. Counsel consistently requested an injunction based on *Lewellen* retaliation in the same hearing or filing as an alternative argument. App. 84-85, 116;R.Doc.75, at 41-42, 73; R.Doc. 10, at 3-4.

6

The district court applied an erroneous test of the sufficiency of Lindell's Complaint and declaration to establish a *prima facie* case of a First Amendment violation. Opening Br. at 11-12; Add-26-27; R.Doc. 68, at 26-27. Lindell's assertions must be sufficient to allow a jury to infer from either direct or circumstantial evidence that the Government has been motivated by retaliatory factors. *United States v. Allery,* 139 F.3d 609, 611 (8th Cir. 1998); *Benner v. St. Paul Pub. Schools, ISD #625,* 380 F.Supp.3d 860, 908 (D.Minn. 2019). Committees of the U.S. House of Representatives have recently undertaken investigations of the arguable politicization of the Government's law enforcement functions. A majority of candidates for the House of Representatives in 2020 pledged to voters that they would hold oversight hearings regarding the retaliatory practices of the Department of Justice.[3] It was clear error and an abuse of discretion for the district court not to conclude that a reasonable jury could find that the investigation in this case was prompted by a retaliatory motivation. *See id.*

The combined effect of the statements of the three cabinet officers, the launch of the investigation, and the issuance of the warrant to Lindell could plausibly

---

[3] *E.g.,* https://www.oversight.house.gov/blog/comer-in-wsj-get-ready-for-republican-oversight. The shift of control of the House of Representatives that occurred as a result of the 2022 congressional elections was the result, in part, of the campaign promises of Republican candidates to investigate what they claimed was a politicization of the FBI and the Department of Justice. https://www.npr.org/2022/11/04/1134449665/republicans-investigation-fbi-doj-midterms.

7

persuade a reasonable jury that Lindell's exercise of his First Amendment rights was chilled. The district court's Opinion and Order confined its consideration of Lindell's assertions and proof to Attorney General Garland's statement and concluded that it was "not the Government threatening retaliation for speech or affiliation." Add-26; R.Doc. 68, at 26. That allowed Garland's statement to be considered out of the context of the systematic campaign of the current administration to threaten and punish its critics. The pattern of misusing federal law enforcement to intimidate those who raise questions about the 2020 election in which the administration gained power became evident early in 2021. App-10; R.Doc.1, ¶¶ 47-49. That was an abuse of discretion because a reasonable jury could conclude that Garland's statement, the statements of other cabinet officers, and the decisions to investigate and issue the warrant were motivated by an intent to intimidate or punish those, including Lindell, who questioned the outcome of the 2020 presidential election. *Unites States v. Allery,* 139 F.3d at 611.

The Government argues that Lindell's claim does not establish a *Lewellen* claim because the Government's actions that he claims were retaliatory do not rise to the level of retaliation experienced by the plaintiff in *Lewellen.* Govt. Br. at 17-23. That is not the test for establishing a *prima facie* claim of retaliation. The appropriate test is whether a plaintiff has demonstrated actions by the Government to punish him for exercising his constitutional rights. *Ackerman,* 19 F.4th at 1058. The injury to Lindell's First Amendment rights is at least as "great, immediate, and irreparable" as the injury

8

to the plaintiff's due process rights in *Lewellen*. 843 F.2d at 1109; *see Anderson v. Schultz,* 871 F.2d 762, 765 (8th Cir. 1988). The reason for granting relief to a plaintiff whose First Amendment rights have been violated is that the highest value is attached to guaranteeing those rights. *See Riley v. Nat'l Fed. of the Blind of N. C.,* 487 U.S. 781, 795 (1988)("[T]he First amendment does not permit the State to sacrifice speech for efficiency.")

> **3. The Government's argument that Lindell's First Amendment rights were not violated because the warrant was part of a good faith enforcement of criminal laws is without merit because the warrant violates the Fourth Amendment.**

In response to Lindell's argument that the warrant violated his First Amendment rights, the Government argues that good faith enforcement of criminal laws does not violate the First Amendment. Gov't Br. at 35, citing *Zurcher v. Stanford Daily,* 436 U.S. 547, 565 (1978). That proposition must be qualified by the statement in the *Zurcher* opinion quoted by the Government: "**Properly administered**, the preconditions for a warrant—probable cause, specificity with respect to the place to be searched and **the things to be seized,** and overall reasonableness—should afford sufficient protection against the [First Amendment] harms that are assertedly threatened by warrants." *Id.* (emphasis added). The warrant served on Lindell was not properly administered because it did not identify the things to be seized with particularity. By refusing to acknowledge that deficiency, the Government is asking

9

the Court to do what the *Zurcher* Court refused to do, namely, reconstruct the Fourth Amendment. *Id.* at 550.

### 4. The Government has no basis for its contention that Lindell must challenge the constitutionality of a criminal statute.

Contrary to the Government's argument, it is not necessary for Lindell to challenge the constitutionality of a criminal statute to establish a *Lewellen* claim. Gov't Br. at 14-15. He was merely required to assert a violation of his First Amendment rights. Indeed, there was no challenge to a criminal statute in *Lewellen*.

### 5. Lindell claims retaliation, not selective enforcement.

The Government mistakenly maintains that Lindell is asserting a selective enforcement claim and not a retaliation claim. Gov't Br. at 22. Lindell's claim is not about discriminatory treatment and Secretary of State Griswold is not a similarly situated individual. As detailed, *supra,* at 5-6, Lindell's claim is that the Government acted in bad faith to retaliate against him and others who participated in making and publishing a forensic image of the Mesa County EMS server while refusing to prosecute Secretary Griswold for directing local election officials to delete election records on that server in violation of 52 U.S.C. §20701. App-, at 33-43; R.Doc. 10, at 33-43.

Three federal criminal statutes are listed in Attachment B of the warrant: 18 U.S.C. §§ 371 (conspiracy), 18 U.S.C. § 1028(a)(7) (identity theft), and 18 U.S.C. § 1030(a)(5)(A) (intentional damage to a protected computer). Launching the

10

investigation based on those statutes is further evidence of the Government's bad faith. Even if those who participated in preserving the election records by making the forensic image of the server arranged to have a cyber expert attend a meeting controlled by the Secretary using the credentials of another individual and somehow caused damage to the Mesa County EMS, they were caught in a double-bind situation in which they were forced to violate a law or take alternative actions that might expose them to criminal prosecution. *See Fifth Third Bancorp. v. Dudenhoeffer,* 573 U.S. 409, 423 (2014) ("rock and a hard place"): *Burke v. Boeing Co.,* 42 F.4th 706, 739 (7th Cir. 2022); *League of Women Voters v. Hargett,* 400 F.Supp.3d 706, 728-29 (M.D.Tenn. 2019). She imposed on them an unavoidable choice of either (1) complying with their statutory duty to preserve the election records that she had directed local election officials to delete or (2) violating 52 U.S.C. §20701 by cooperating in installing the Dominion Trusted Build Update that accomplished the deletion, as the Secretary had directed. This was a classic double-bind quandary in which Lindell and his associates were technically guilty of a crime if they arranged for the making of the forensic image and guilty of other crimes if they did not. They chose to preserve the election records.

### 6. A post-indictment remedy cannot cure a First Amendment violation.

The Government argues that Lindell is precluded from seeking an injunction of the criminal proceedings because he has an adequate remedy if he is indicted because he can then move to suppress evidence obtained during the investigation. Gov't Br. at

Appellate Case: 22-3510    Page: 19    Date Filed: 04/07/2023 Entry ID: 5263063

12-13.  As Lindell showed in his Opening Brief at 27-28, a remedy that would be available for a First Amendment violation only if and when the injured party is indicted is not an adequate remedy. *Marcus v. Iowa Pub. Television,* 97 F.3d 1137, 1140 (8th Cir. 1996). *See* discussion of irreparable injury, *infra,* at 16-17.

### 7.  Lindell may assert his own association rights.

The Government failed to rebut Lindell's argument that he is entitled to assert his own right of association where the Government's actions would reveal his sensitive communications with others and expose the identity of those who have joined him, often anonymously, to pursue common objectives. Opening Br. at 18. Without the ability to obtain the support of others, Lindell's exercise of his freedoms of speech and his right to seek redress of grievances is significantly affected. *Roberts v. U.S. Jaycees,* 468 U.S. 609, 622 (1984). Lindell certainly has the right to object on freedom of association grounds to a search that would give the Government access to communications collected on his cellphone. Those whose identity would be exposed "cannot assert that right themselves without defeating their own purpose." *Pollard v. Roberts,* 283 F.Supp. 248, 259 (E.D.Ark.), *aff'd,* 393 U.S. 14 (1968). Regardless of Lindell's ability to assert a claim of a violation of his freedom of association, his retaliation claim is also supported by his assertions of violations of his freedom of speech, freedom of the press, and the right to petition for redress of grievances.

12

### B. LINDELL PRESENTED A *PRIMA FACIE* CASE THAT THE GOVERNMENT HAS VIOLATED HIS FOURTH AMENDMENT RIGHTS

#### 1. Lindell demonstrated that the warrant violated the particularity requirement of the Fourth Amendment.

Lindell asserted that the search and seizure warrant served on him violated the particularity requirement of the Fourth Amendment that the things to be seized be described. Opening Br. at 19-21. In a convoluted word game, the Government argues that describing the **place** to be searched constitutes a description of **the things to seized** and that specifying **categories** of things to be **searched** among the massive number of communications obtained after the seizure of the cellphone satisfies the particularity requirement. Govt. Br. at 24-26. The particularity requirement was adopted, however, to limit the things that can be seized. *See Ashcroft v. al-Kidd,* 563 U,S, 731, 742-43 (2011) ("The principal evil of the general warrant was addressed by the Fourth Amendment's particularity requirement."); *Groh v. Ramirez,* 540 U.S. 551, 558-59 (2004) (describing the limiting effect of the particularity requirement); *Stanford v. Texas,* 379 U.S. 476, 480-85 (1975) (recounting the history and purpose of the Fourth amendment). The Government argues further that the particularity requirement is satisfied when a warrant complies with F.R.Crim.P, 41. Gov't Br. at 25-31. Each of those assertions ignores the plain and unambiguous language of the Warrant Clause:

> [N]o Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the person or **things to be seized.**

(Emphasis added).

The warrant in this case authorized the seizure of Lindell's cellphone and all communications and data stored on his device for two years. That is the equivalent of a warrant that authorizes the seizure and removal from the premises of the entire contents of a residence. Each constitutes a general warrant as it was known to the drafters and ratifiers of the Fourth Amendment. *See Riley v. California,* 573 U.S. 373, 403 (2014); *see generally* L. LEVY, ORIGINS OF THE BILL OF RIGHTS at 158 (1999). Just as the seizure and removal of the entirety of the physical contents of a residence deprives the owner of his right to possess that property and to his privacy, the seizure of Lindell's cellphone resulted in a similar deprivation of property and privacy rights. *Torres v. Madrid,* 141 S.Ct. 989, 1002 (2021) (privacy); *United States v. Jones,* 565 U.S. 460, 465 (2012) (property).

Lindell explained how the warrant failed to satisfy the particularity requirement in his Opening Brief at 19-21. The Government's responses to that explanation are that the warrant's description of the things to be seized does particularize those items and that compliance with the two-step process provided by F. R. Crim.P. 41(c)(2)(B) constitutes compliance with the particularity requirement. Govt. Br. at 28-31.

Because the warrant authorized the seizure of such a massive amount of data stored on the cellphone, which were generally unknown to the Government, the

description of the things to be seized was not and could not be particularized. The Government points to the 24 categories of things listed in Attachment B of the warrant as the description that satisfies the particularity requirement. Govt. Br. at 25. The things to be seized were not limited by those categories because the warrant authorized seizure of all of the data stored on the cellphone. At best, the 24 categories might serve to limit the search, but they do not serve the purpose of describing and limiting the things that were seized.

An example of the district court's abuse of discretion in evaluating Lindell's Fourth Amendment claim, which the Government sidesteps, is found in the following statement in the November 3, 2022, Opinion and Order:

> [T]he search warrant was not an unconstitutional "general warrant," as the Plaintiffs argue . . . . The warrant here specified three offenses, specified the person (Lindell) and place (Plaintiffs' cellphone) to be searched, and the Government is following the familiar two-step process of Rule 41 to search the phone.

Add. 24;R.Doc. 68, at 24. That statement fails to mention the requirement of a particularized description of the things to be seized; nevertheless, the district court concluded that the warrant satisfied "all of the elements" of the Warrant Clause. Add. 23;R.Doc. 68, at 23.

The district court's conclusion that the two-step process of Rule 41(c)(2)(B) provides an adequate substitute for the requirement that the warrant describe the things to be seized is also clear error and an abuse of discretion. Allowing the Government to rummage through communications in its possession which were not

15

particularly described in the warrant and for which no probable cause has been demonstrated violates the very purpose of the Fourth Amendment's particularity requirement.

Lindell's cellphone, which was the place to be searched, served as his virtual office. App-20, ¶ 15; R.Doc. 10-4, ¶ 15. The items within that place, which were the things to be seized, are what should have been particularly described. The warrant, however, allows the Government to seize Lindell's cellphone and everything electronically stored on it, take it to another place, access Lindell's cloud, and rummage through the two years of communications, most of which are unrelated to the criminal statutes referenced in the warrant and protected from disclosure by the freedom of association. *Cf. NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460-62 (1958).

In *Stanford v. Texas,* the Supreme Court ruled that a warrant was a general warrant because it did not describe the things to be seized with reasonable particularity. 379 U.S. 476, 477 (1975). It concluded:

> [I]t was not any contraband of that kind which was ordered to be seized, but literary material—"books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas, and the operations of the Communist party in Texas." The indiscriminate sweep of that language is constitutionally intolerable. To hold otherwise would be false to the terms of the Fourth Amendment, false to its meaning, and false to its history.

*Id.* In the case of Lindell's warrant, the seizure of the cellphone entailed the seizure of every communication and other information collected on that device for two years.

16

Nothing in the warrant, including the 24 categories of information in Attachment B, served to limit the seizure. The effect was an "indiscriminate sweep," which was constitutionally intolerable. This case is distinguishable from *Andresen v. Maryland,* 427 U.S. 463, 482 (1976) in which the seizure was limited by its terms to criminal statutes named in the warrant. Here, the listing of statutes did not serve to limit the seizure of information stored on the cellphone.

Ignoring *Sibbach v. Wilson & Co., Inc.,* 312 U.S. 1 (1941), which held that the rules adopted by the judiciary cannot modify the requirements of the Constitution, the Government argues that a consensus of lower federal courts on the legitimacy of Rule 41 justifies the violation of the particularity requirement that the warrant describe the "things to be seized." Without such a description, the warrant in this case was "a modern-day general warrant." *United States v. Moulder, No.* 23-cr-27, 2022 WL 3644893, at *4 (D.Minn. Aug. 24, 2022); *see* Adam M. Gershowitz, *The Post-Riley Search Warrant: Search Protocols and Particularity in Cell Phone Searches,* 69 VAND. L. REV. 585, 591 (2016). No matter how many other courts have approved the two-step process, the text of the Warrant Clause must govern. The two-step process provided by Rule 41(c)(2)(B) does not comply with the particularity requirement of the Warrant Clause.

### 2. A filter team cannot cure violations of the Fourth Amendment.

The seizure of Lindell's cellphone gives the Government access to two years of communications collected on that device. That constitutes a general warrant. The

Appellate Case: 22-3510     Page: 25     Date Filed: 04/07/2023 Entry ID: 5263063

Government argues that the use of a filter team to screen attorney-client communications stored on Lindell's cellphone will satisfy the requirements of the Fourth Amendment and somehow eliminate the characteristic of the warrant as a general warrant. Gov't Br. at 31-34. This ignores the fact that there are other privileged communications collected on that cellphone, including communications protected by the freedom of association. App. 30, ¶ 21;R.Doc. 10-4, ¶ 21.

## II. LINDELL HAS SUFFERED IRREPARABLE INJURY

The Government failed to rebut Lindell's reliance on *Roman Catholic Diocese of Brooklyn v. Cuomo,* 141 S.Ct. 63, 67 (2020), which held: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Lindell enjoys the right not to be punished and intimidated for the exercise of those freedoms. The fact that Lindell, as "an unusually determined plaintiff," has continued to express his views on matters of public interest despite ongoing intimidation by the Government does not mean that his First Amendment freedoms have not been violated. *Cody v. Weber,* 256 F.3d 764, 771 (8th Cir. 2001); *Mendocino Envtl. Ctr. v. Mendocino Cnty.,* 192 F.3d 1283, 1300 (9th Cir. 1999). He seeks to enjoin further intimidation.

## III. THE BALANCE OF THE EQUITIES FAVORS LINDELL

The Government's claim of an interest in pursuing law enforcement objectives must not be accepted at face value. Its bad faith decision to investigate and the questionable applicability of the statutes cited in the warrant should be considered. *See*

Opening Br. at 16-17 and the discussion, *supra,* at 5-6, 9. The substantial concerns raised about the use of a general warrant and retaliation heavily against the Government. Lindell's interest and that of the public in protecting individual constitutional rights and assuring that the Government abide by the Bill of Rights clearly override the Government's interest in pursuing its investigation, particularly because the Government has not demonstrated in concrete terms how an injunction would undermine its interest.

## IV.    LINDELL ESTABLISHED HIS RIGHT TO THE RETURN OF HIS CELLPHONE

The Government failed to rebut Lindell's argument on this issue.

## CONCLUSION

The Court should enter an Order enjoining the investigation and requiring the return of all seized property to Lindell or, alternatively, reverse the order of the district court denying his Motion for Preliminary Injunction and Return of Property and remand the case for further proceedings.

MICHAEL J. LINDELL
MYPILLOW, INC.

 **/s/ Patrick M. McSweeney**
Patrick M. McSweeney
Christopher I. Kachouroff
Lyndsey L. Bisch
**McSweeney, Cynkar & Kachouroff, PLLC**
13649 Office Place, Suite 101
Woodbridge, VA 22192
(804) 937-0895
patrick@mck-lawyers.com

19

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 4,793 words (excluding those portions exempted by Rule 32(f)), as verified by the word-count feature of Microsoft Word 2019.

2.  This brief complies with the type-size and type-face requirements of Rules 32(a)(5) and (6) because it has been prepared in 14-point Garamond font.

3.  This brief complies with the electronic filing requirements of Eighth Circuit Rule 28A(h). The latest version of Windows Defender has been run on the files containing the electronic version of this brief and the addendum and no virus has been detected.

 /s/ Patrick M. McSweeney
Patrick M. McSweeney
Christopher I. Kachouroff
Lyndsey L. Bisch
MCSWEENEY, CYNKAR & KACHOUROFF, PLLC
13649 Office Place, Suite 101
Woodbridge, VA 22192
(804) 937-0895
patrick@mck-lawyers.com

Appellate Case: 22-3510    Page: 28    Date Filed: 04/07/2023 Entry ID: 5263063

## CERTIFICATE OF SERVICE

I certify that on the date indicated below, I filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will automatically send notification and a copy of the brief to the counsel of record for the parties. I further certify that all parties to this case are represented by counsel of record who are CM/ECF participants.

Executed this 5th day of April 2023.

 /s/ **Patrick M. McSweeney**
Patrick M. McSweeney
Christopher I. Kachouroff
Lyndsey L. Bisch
**MCSWEENEY, CYNKAR & KACHOUROFF, PLLC**
13649 Office Place, Suite 101
Woodbridge, VA 22192
(804) 937-0895
patrick@mck-lawyers.com

Appellate Case: 22-3510     Page: 29     Date Filed: 04/07/2023 Entry ID: 5263063